# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **3:18-CR-279** |
| | : **(JUDGE MARIANI)** |
| **MICHAEL RINALDI,** | : |
| | : |
| **Defendant.** | : |

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **3:18-CR-280** |
| | : **(JUDGE MARIANI)** |
| **MICHAEL RINALDI,** | : |
| | : |
| **Defendant.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are fifteen pre-trial motions filed by Defendant Michael
Rinaldi.

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi,
Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and
Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in
violation of 21 U.S.C. §§ 841 and 846. (*See* 3:18-cr-279, Doc. 37). That same day, the
federal grand jury also returned an indictment charging Defendants Michael Rinaldi, Steven
Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess

with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846. (See 3:18-cr-280, Doc. 1).

The Court thus currently has two criminal actions before it wherein Michael Rinaldi is a named defendant: 3:18-cr-279 and 3:18-cr-280.

On January 16, 2019, at the request of Defendant Rinaldi, the Court held a hearing in accordance with Faretta v. California, 422 U.S. 806 (1975) and United States v. Peppers, 302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Defendant Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant Rinaldi understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent herself. Following this colloquy, the Court determined that Mr. Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding pro se and therefore granted Mr. Rinaldi's request to represent himself. The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

Since December of 2018, Defendant Rinaldi has filed a number of pro se pretrial motions which are currently pending before this Court, including the following motions which the Court will address herein:[1]

---

[1] As previously explained, Michael Rinaldi is a defendant in two criminal cases: 3:18-cr-279 and 3:18-cr-280. Defendant filed the same motions and accompanying briefs in both 3:18-cr-279 and 3:18-cr-

2

- Motion to Dismiss the Indictment (Doc. 76)
- Motion to Dismiss "Pursuant to F.R. Crim. P. 12(B)" (Doc. 77)
- "Request for a Bill of Particulars" (Doc. 80)
- "Motion to Challenge the Authenticity and Chain of Custody of the Government's Exhibits" (Doc. 82)
- Motion to Compel Discovery (Doc. 85)
- "Request to Compel" (Doc. 89)
- "Motion for Early Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure" (Doc. 103)
- Motion for "Pretrial Hearing to Determine Existence of Conspiracy" (Doc. 105)
- Motion for Hearing on Admissibility of Statements of Alleged Co-Conspirators (Doc. 107)
- Motion "Pursuant to Rules 404(b) and 609 of Federal Rules of Evidence" (Doc. 109)
- Motion to "Preserve and Disclose Notes, Reports, and Evidence" (Doc. 111)
- Motion for Disclosure Pursuant to Federal Rule of Evidence 807 (Doc. 113)
- Motion to Produce Memorializing of Government Interviews (Doc. 115)
- "Motion to Join in the Motion of Co-Defendants" (Doc. 124)
- Motion for Severance (Doc. 155)

For the following reasons, the Court will deny each of Defendant's motions. [2]

## II. ANALYSIS

### A. Motion to Dismiss the Indictment

Rinaldi's first motion moves to dismiss the indictment on the basis that he "is not the

Michael Rinaldi named in the indictment and that the United States District Court does not

---

280. Unless otherwise stated, for purposes of clarity, the Court's citation to specific document numbers reference the document number set forth in the first case filed at docket number 3:18-cr-279.

[2] On February 22, 2019, Rinaldi also filed a "Notice of Appeal" (Doc. 136), stating that he "intend[s] to appeal the decision" of Magistrate Judge Saporito wherein the Magistrate Judge denied Defendant's request for pretrial release. However, no appeal of this decision has been filed in either 3:18-cr-279 or 3:18-cr-280. It therefore does not appear at this time that Defendant has appealed the Magistrate Judge's decision or that he has requested a new detention hearing before this Court. To the extent that Defendant may have been requesting the transcript of the proceeding, that transcript was placed of record by the Government on May 3, 2019 (Doc. 150-7).

3

have 'in personam' jurisdiction over him." (Doc. 76, at 1; *id*. at 2). Rinaldi further contends

that there is no case or controversy before this Court and that the United States lacks

standing to bring this action against him. (*Id*. at 3-4). In Rinaldi's Reply brief, he clarifies his

assertion that he "is not the Michael Rinaldi named in the indictment" by explaining that his

"name is not MICHAEL RINALDI" and that "[a]ll capital letters denotes a corporate entity"

and he "is not a corporate entity and has not entered into any agreements with the

corporate United States." (Doc. 152, at 2).

Each of Rinaldi's assertions are without merit. Similar arguments premised on a

defendant's claim that he or she is a "sovereign citizen" have been repeatedly rejected by

Courts. In *United States v. Young*, the Third Circuit rejected Defendant's argument "that the

District Court 'lacked jurisdiction to hear, convict, or bring any case in this fraudulently

contrived Constructive Trust Case Matter'" where Defendant "generally refer[red] to her

status as a foreign sovereign immune from suit." 735 F.App'x 793, 795 (3d Cir. 2018). The

Circuit explained that there was "no merit to her challenge [and t]he District Court had

jurisdiction to adjudicate this criminal action under 18 U.S.C. § 3231." *Id*. at 795-796 (citing

*United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's

claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a

'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts.")).

*See also, United States v. Matthews*, 2011 WL 183979, *2 (M.D. Pa. 2011) (in analyzing a

motion brought pursuant to 28 U.S.C. § 2255, finding that defense counsel was not

4

ineffective for failing to challenge the Court's jurisdiction where Petitioner asserted that he was "a citizen and inhabitant of the 'Sovereign Republic of Pennsylvania' and that [the] Court lacked jurisdiction over his criminal case."); *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003) ("A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law."). In addition, 18 U.S.C. § 547 permits each United States attorney, within his district, to "prosecute for all offenses against the United States", 18 U.S.C. § 547(1), therefore granting the United States Attorney the lawful power to bring a criminal indictment against an individual.

In addressing arguments largely identical to those raised by Rinaldi, the Court in *United States v. Ellis*, undertook an extensive analysis in explaining why each of these arguments were without legal merit.

> to the extent *pro se* defendant has requested and intends to request such services [of a paralegal and private investigator] to aid him in presenting a motion to dismiss based on this court's Article III jurisdiction to hear the case and the United States Attorney for the Western District's "standing" to conduct the prosecution, the motion must be denied because it is based on indisputably meritless legal theory. Although *pro se* defendant has latched on to the notion that to have standing in an Article III civil controversy, the party bring[ing] the action must have a concrete stake in the litigation and have suffered an injury-in-fact, he fails to appreciate the distinctions to be drawn between a criminal case and a civil controversy. And while the broad language appearing in some of the more recent Supreme Court opinions expounding on the limitations of Article III standing would appear at first brush to be irreconcilable with the traditional mechanics employed in conducting criminal prosecutions, dogmatically drawing a corollary conclusion that federal criminal prosecution is outside the jurisdictional reach of Article III is tantamount to the "absurd." *See* Edward Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places,* 97 Mich.L.Rev. 2239 (1999) (to reason and conclude from the

current status of the Court's Article III standing doctrine that "the vast majority of federal criminal prosecutions are not 'cases' or 'controversies' and the United States lacks standing to initiate them [would,] ... [o]f course, [amount to] an absurd result.").

2007 WL 2028908, *1 (W.D.Pa. 2007). The *Ellis* Court further explained that

> ... lest there be any question about this court's authority to exercise jurisdiction over defendant's prosecution, one need only survey the vast array of authority conceding that "the term 'cases' in Article III includes criminal prosecutions, while the term 'controversies' does not." Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places,* 97 Mich.L.Rev. at 2249 & n. 56 (collecting scholarly works in support). And while one can question the ramifications of this truism on the soundness of current Article III standing doctrine, that does not change the accepted principle the "[i]n criminal cases (and perhaps more generally in Article III 'cases'), the judiciary is enforcing the sovereign's law rather than umpiring a preexisting dispute [and] [t]hus, criminal prosecutions demonstrate that, at least when exercising jurisdiction over the 'cases' enumerated in Article III, nothing in Article III limits the use of the federal judicial power to enforcement of the rights of individuals or prohibits the use of the federal judicial power to enforce the majoritarian sovereign will." *Id.* at 2251.
>
> Nor can the authority of the United States attorney to prosecute offenses against the laws of the United States be seriously questioned. Through the passage of the Judiciary Act of 1789 Congress long ago gave officials acting under the authority of the Attorney General exclusive authority to control the resolution of all grand jury indictments charging federal crimes and permitted this authority to be exercised within each local district. *See* Harold J. Krent, *Executive Control over Criminal Law Enforcement: Some Lessons from History,* 38 AMULR 275, 293-96 (Winter, 1989). And the congressional directive to exercise this discretionary authority continues to this day and has a direct application to defendant's prosecution. *See* 28 U.S.C. § 547(1) ("... each United States attorney, within his district, shall-(1) prosecute for all offenses against the United States ..."); *see also* 28 U.S.C. § 541(a) ("The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.").
>
> . . . .

To suggest, as *pro se* defendant has implied, that the United States attorney needs an injury-in-fact or a personal stake in the outcome of the prosecution in order to exercise this core executive duty in addition to the constitutional authority granted by Article II is a proposition without any legislative, executive, or judicial support in the two-hundred and eighteen plus years that have passed since the passage of the Judiciary Act of 1789. In fact, the uniform consensus is to the contrary. See Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine is Looking for Answers in all the Wrong Places,* 97 Mich.L.Rev. at 2251 ("In short, if-as all concede-the United States can prosecute crimes in the federal courts, then a 'case' within the meaning of Article III must include litigation that is based on nothing more than the 'harm to the common concern for obedience to law,' and the 'abstract ... injury to the interest in seeing that the law is obeyed.'").

*Id.* at * 2-3. The Court thereafter reiterated the existence of a "long-standing congressional recognition of the United States attorney's constitutional obligation to prosecute offenses against the laws of the United States and the uniform scholarly acknowledgment that such Justice Department employees properly may do so pursuant to Article II's commitment to the executive branch to enforce the interest of the sovereign in seeking to vindicate the general public interest in compliance with the law." *Id.* at *3.

For the afore-mentioned reasons, Defendant's Motion to Dismiss the Indictment (3:18-cr-279, Doc. 76; 3:18-cr-280, Doc. 75) will be denied.

## B. Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)

Rinaldi next asserts that the indictment "is insufficient and violates the constitutional mandate that all elements of an offense be included in the indictment." (Doc. 77, at 1). Specifically, Rinaldi contends in each case that the indictment "does not allege an affect on

commerce" and that absent this effect on commerce, "the conduct at issue is purely local and does not constitute a crime against the United States." (*Id.*).

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to . . . ensur[e] that legally deficient charges do not go to a jury." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011)). "However, the scope of a district court's review at the Rule 12 stage is limited . . . a district court must accept as true the factual allegations set forth in the indictment." *Id.* (internal citations omitted). At this stage, "an indictment [is] sufficient so long as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007)).

"Usually, a recitation of the statutory language satisfies the first requirement, so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy. And typically, a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements. In

8

short, detailed allegations are unnecessary." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (internal citations and quotation marks omitted).

In the Third Circuit, a defendant may contest the sufficiency of an indictment on the basis that it fails to state an offense in two ways. *Stock*, 728 F.3d at 292. "First, a defendant may contend that an indictment is insufficient on the basis that it does not satisfy the first requirement in that it 'fails to charge an essential element of the crime.'" *Id.* (citing *Huet*, 665 F.3d at 595). Second, a defendant may argue that "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Id.*

Rinaldi's arguments challenge the indictments under the first method. However, they are without merit as the indictments adequately set forth the elements of the offenses charged under 21 U.S.C. §§ 841 and 846. Rinaldi's motion is premised on an assertion that "effect on commerce" is a "critical jurisdictional element" and that absent this element, "the conduct at issue is purely local and does not constitute a crime against the United States." (Doc. 77, at 1; *id.* at 2). As the indictments in 3:18-cr-279 and 3:18-cr-280 do not specifically state that the crime charged against Rinaldi or his co-defendants under §§ 841 and 846 affected interstate commerce, Rinaldi contends the Indictments must be dismissed.

To establish a violation under § 846, the Government must prove beyond a reasonable doubt (1) That two or more persons agreed to distribute/possess with the intent to distribute/manufacture/possess a controlled substance; (2) That the defendant was a party to or member of that agreement; and (3) That the defendant joined the agreement or

9

conspiracy knowing of its objective(s) to distribute/possess with the intent to distribute/ manufacture/possess a controlled substance and intending to join together with at least one other alleged conspirator to achieve that/those objective(s); that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that/those objective(s). Third Circuit Model Criminal Jury Instruction 6.21.846B. In addition, under § 841, the Government must prove (1) That the defendant possessed a mixture or substance containing a controlled substance; (2) That the defendant possessed the controlled substance knowingly or intentionally; (3) That the defendant intended to manufacture/distribute the controlled substance; and (4): That the controlled substance was the substance alleged by the Government. *Id*. at 6.21.841A. There is no element in either statute or the relevant case law requiring proof of an effect on interstate commerce.

Courts have repeatedly rejected the suggestion that an effect on interstate commerce is a necessary element of a crime under §§ 841 and 846 which must be set forth in an indictment. Preliminarily, Courts have held that the Comprehensive Drug Abuse Prevention and Control Act of 1970 does not violate the Commerce Clause, even where the alleged activity only occurs intrastate. As explained by the Second Circuit, "[b]ecause narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant." *United States v. Genao*, 79 F.3d 1333, 1336 (2d Cir. 1996). In *Genao*, the Court explained that the "Supreme Court has . . . expressly held that Congress

10

may regulate activity that occurs wholly within a particular state if the activity has a sufficient nexus to interstate commerce." *Id.* at 1335 (citing *Fry v. United States,* 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975); *Perez v. United States,* 402 U.S. 146, 156-157, 91 S.Ct. 1357, 1362-1363, 28 L.Ed.2d 686 (1971); *Houston, E. & W. Texas Ry. Co. v. United States,* 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914)). *See also, United States v. Montes-Zarate,* 552 F.2d 1330, 1331 (9th Cir. 1977) ("It is unclear whether the appellant is challenging the constitutionality of 21 U.S.C. § 841(a), or whether the appellant is contending that proof of an interstate nexus is required in order to establish jurisdiction of the subject matter. In either event, the contention fails. We agree with the other circuits that have considered the problem that the statute is constitutional and that no proof of interstate nexus is required in order to establish jurisdiction."); *United States v. Peterson,* 194 F.App'x 786, 788 (11th Cir. 2006) ("[Defendant] contends that Congress' power to enact criminal laws pursuant to the Commerce Clause does not reach his conduct because his crime was a local street-corner sale that did not directly utilize the instrumentalities or channels of interstate commerce. However, the Controlled Substances Act does not leave to the courts the task of determining whether a particular drug sale affects interstate commerce."); *United States v. Leshuk,* 65 F.3d 1105, 1111-1112 (4th Cir. 1995); *United States v. Smith,* 2006 WL 3544715, *3-4 (M.D. Pa. 2006). Courts that have thus specifically addressed whether an effect on interstate commerce must be set forth as an element in the indictment have rejected this argument. *See e.g. United States v. Orr,* 136 F.App'x 632, 637 (5th Cir. 2005) ("According to

11

[the defendant], the district court lacked jurisdiction because the Government did not establish a nexus between the offense and interstate commerce. Congress' regulation of controlled substance offenses under 21 U.S.C. §§ 841 and 846 is permissible under the Commerce Clause and showing an interstate commerce nexus is not required.")(citing *United States v. Lopez,* 459 F.2d 949, 953 (5th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972)).

For these reasons, Defendant's motions to dismiss the indictments pursuant to Federal Rule of Criminal Procedure 12(b) (3:18-cr-279, Doc. 77; 3:18-cr-280, Doc. 76) will be denied.

## C. Request for a Bill of Particulars

Rinaldi further requests that the Court "direct the government to provide a bill of particulars" as the indictments purportedly do "not provide him with enough information for him to properly prepare a defense to the charges." (Doc. 80, at 1). Rinaldi asserts that the Government has provided "limited discovery", but that this discovery for both criminal cases was provided together, thereby preventing him from knowing "which evidence is pertinent to which indictment." (*Id.* at 1-2). Although Rinaldi requests the Government provide him with a Bill of Particulars, in the alternative, he requests that "the discovery be separated into two separate packages or for the government to acknowledge that their position is that the same discovery is applicable to both cases." (*Id.* at 2).

12

Federal Rule of Criminal Procedure 7 provides in relevant part that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The rule further provides that "[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense. . . ." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971). "A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.'" *Id.* at 64 (quoting *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)). However, a bill of particulars is not designed to inquire into the legal or evidentiary support proffered by the Government with regard to whether a defendant committed a specific criminal act. *See United States v. Leonelli*, 428 F.Supp. 880 (S.D.N.Y. 1977). "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).

"An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. An

13

indictment must allege more than just the essential elements of the offense." *Vitillo*, 490 F.3d at 321 (internal citations and quotation marks omitted).

In addition, "[t]he Third Circuit has . . . emphasized that the need for a bill of particulars is obviated in those cases where the Government supplements a detailed charging document with substantial discovery. In ruling on a request for a bill of particulars, the court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment." *United States v. Hayes*, 2007 WL 3085998, *1 (M.D.Pa. 2007) (citing *United States v. Urban,* 404 F.3d 754, 772 (3d Cir. 2004); *United States v. Kenny,* 462 F.2d 1205, 1212 (3d Cir. 1972)).

"[T]he granting of a bill of particulars remains a discretionary matter with the trial court." *Addonizio*, 451 F.2d at 64. "The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id.*

Rinaldi's arguments are unavailing where the indictments in both criminal cases adequately describe the nature of the alleged conspiracies, the specific statutes allegedly violated, the identity of his co-defendants, the identity of the controlled substances at issue, the quantity of the controlled substance involved in the conspiracy (in 3:18-cr-279), and the specific time frame wherein these conspiracies allegedly occurred.

Notably, Rinaldi does not assert in his motion why either indictment is insufficient, but rather rests his argument exclusively on the issue of discovery that has, or has not, been provided to him. This argument is inappropriate in a motion whose purpose is directed at determining whether one or both of the indictments themselves are too vague and indefinite to inform Rinaldi of the nature of the charges brought against him such that he may adequately prepare his defense. In addition, the Government asserts that it "has provided extensive discovery to the defendant, and assisted in accommodating his ability to review the materials while incarcerated" and "has turned over all intercepted communications from the investigations as well as affidavits and reports." (Doc. 150, at 14). In response to a separate motion filed by Rinaldi, the Government has also represented that it "will comply with the rules and laws governing discovery, and will produce all materials required, including that which is required under Brady, Giglio, the Jencks Act, and Rule 16" and that "Defendant has already been provided with extensive discovery, and if and when more discoverable evidence becomes available, it will be provided in a timely manner." (Id. at 59).

Thus, as demonstrated by the record, Defendant has been apprised of the charges against him and knows the nature of the offenses that were allegedly committed within a specific time frame. Rinaldi has not established the specific need for a bill of particulars that the law requires for its issuance. This is particularly the case in light of the Government's stated compliance with the discovery mandates of Brady and Federal Rule of Criminal Procedure. 16. Finally, it is both impractical and unnecessary for the Government separate

15

the discovery "into two separate packages or for the government to acknowledge that their position is that the same discovery is applicable to both cases" (Doc. 80, at 2) where the Government has properly noted that "[m]uch of the evidence produced may prove relevant to both cases" (Doc. 150, at 14). Defendant's motions for a bill of particulars (3:18-cr-279, Doc. 80; 3:18-cr-280, Doc. 79) will therefore be denied.

## D. Motion to Challenge the Authenticity and Chain of Custody of the Government's Exhibits (Doc. 82)

Rinaldi next "challenge[s] the authenticity and the chain of custody of all of the government's exhibits." (Doc. 82, at 1). Specifically, Rinaldi lists the following evidence/exhibits: "the audio recordings and the substance that were referenced by the D.E.A. in their investigative report prepared on 5-18-18"; the "substance seized from Dwayne Brown on 8-8-18"; "[a]ny phone conversations resulting from phone taps of target phones #1 and #2"; "$18,010.00 in United States currency seized from George Kokenyei"; and "anything seized from the addresses of 8B Birchwood Court, 143 Blackman Street and 776 N. Pennsylvania Avenue." (*Id.* at 1-2). Despite Rinaldi's request, and enumeration of the afore-mentioned evidence/exhibits, he fails to provide any explanation or argument as to why he believes this evidence or exhibits may be inauthentic or subject to a challenge with respect to the chain of custody. However, in Rinaldi's Reply brief, he clarifies that he "was only giving the U.S. Attorney and this court advance notice that he intends to challenge the authenticity and chain of custody of the government's exhibits" as required "under the Rules of Evidence." (Doc. 152, at 18). Therefore, in light of Defendant's acknowledgment that his

16

filings were not motions, but rather only notice of what he intends to do, the Court will deny Defendant's motions (3:18-cr-279, Doc. 82; 3:18-cr-280, Doc. 81) as improperly asserted prior to trial and premature.

## E. Motion to Compel Discovery

In Rinaldi's "Motion to Compel Discovery", Defendant admits that he has received "limited discovery" but moves to compel further discovery. (Doc. 85). Although somewhat unclear, it appears that Rinaldi is specifically requesting: (1) "statements" by "CS1", which Rinaldi asserts are *Brady* material and are "exculpatory and will prove [Defendant's] claim that CS1 did not provide any information about Rinaldi or Powell"; (2) "any other *Brady* material, including but not limited to information regarding any investigations of government witnesses and any promises made to government witnesses and any prior records of government witnesses"; and (3) "copies of all documents in the government's possession, such as lab reports and pictures of any tangible exhibits or evidence, such as drugs, money or phones". (*Id.* at 1-2).

The Government counters that Rinaldi's assertion that he has only received "limited discovery" is "false" and states that it "has provided recordings of all intercepted calls, transcripts of all intercepted text messages, reports of surveillance, and the Title III affidavits, applications, and orders", all totaling "multiple compact discs with the wire intercepts as well as over 300 pages of written discovery." (Doc. 150, at 46-47). It additionally asserts that "information provided by CS-1 about the suspected sources are not relevant to Michael

Rinaldi's drug trafficking organization" and that CS-1's statements are not exculpatory and CS-1 "made no statements about or related to Michael Rinaldi." (*Id.* at 47).

In response to the Government's brief in opposition, Rinaldi re-asserts that he has only been provided "limited discovery" and sets forth a list of evidence to which he asserts he has not received and to which is entitled. (Doc. 152, at 18-19).[3]

Under *Brady v. Maryland*, the Government has a continuing obligation to turn over evidence favorable to the Defendant, "where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Giglio v. United States*, the Supreme Court further required that the Government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. *See Giglio v. United States*, 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *U.S. v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). As such, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case" and disclose

---

[3] It is clear that since the time of the filing of this motion, Rinaldi has received additional discovery, some of which he asked for in this motion. *See e.g.* Doc. 152, at 20, stating that he has "never received the sealing orders for the wiretaps". Rinaldi has clearly received those orders in light of his motions to suppress the wiretaps due to untimely sealing (3:18-cr-279, Doc. 161; 3:18-cr-280, Doc. 165) and his "motion for production" (3:18-cr-279, Doc. 197; 3:18-cr-280, Doc. 188).

that information to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing *Brady*, 373 U.S. at 87).

Rinaldi has requested that the Court compel the Government to disclose "*Brady* material, including but not limited to information regarding any investigations of government witnesses and any promises made to government witnesses and any prior records of government witnesses." (Doc. 85, at 2). The Supreme Court in *Giglio* explained that *Brady* requirements include an obligation that the Government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. *Giglio*, 405 U.S. at 154-155. The Third Circuit has explained that due process requires only that *Brady* material be disclosed to the defense "in time for its effective use at trial." *U.S. v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). In *Higgs*, the Circuit found that the *Brady* material at issue:

> was information that [Defendants] could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think [Defendants'] right to a fair trial will be fully protected if disclosure is made the day that the witness testifies. Disclosure at that time will fully allow appellees to effectively use that information to challenge the veracity of the government's witnesses.

*Id.*

Here, the Government states that it is not in possession of any material discoverable under *Brady* and that it will "supplement discovery as and when additional materials become available, and will satisfy *Giglio* requirements at the appropriate time." (Doc. 150, at 47-48).

19

Consistent with its obligations under *Brady* and *Giglio*, the Government further asserts that information regarding government witnesses "will be provided when and if the case is set for trial and the witness list is finalized." (*Id.* at 47).

Thus, in accordance with *Giglio* and Third Circuit precedent, and in light of the information currently before this Court and the Government's representations, it appears that the disclosure of any agreements at the time set forth for such disclosure by the Government will not prevent the defendant from "its effective use at trial." *See U.S. v. Villarman-Oviedo*, 325 F.3d 1, 13 (1st Cir. 2003) (finding that the Government did not violate *Brady*, *Giglio*, or the Jencks Act when it turned over a witness's plea and cooperation agreement four days before trial). In addition, despite Rinaldi's assertion that the "statements" by "CS1" "will prove [Defendant's] claim that CS1 did not provide any information about Rinaldi or Powell", the Government has already conceded this issue and it is not in dispute.

Nonetheless, to the extent that the Government has not already done so, the Court will order the Government to turn over all information that meets the *Brady* and *Giglio* standards for disclosure at the appropriate time, and to fully comply with its duty to learn of any as-yet-unknown evidence properly disclosable under *Brady* and *Giglio*.

Defendant's motions to compel discovery (3:18-cr-279, Doc. 85; 3:18-cr-280, Doc. 84) will thus be denied.

## F. Request to Compel

Rinaldi requests that this Court compel the Government to provide him with "unredacted copies of the phone tap affidavits in the instant case" pursuant to 18 U.S.C. § 2518(9). (Doc. 89, at 1). Rinaldi admits that "[t]he government is entitled to redact the names and identifying information of its informants" but argues it may redact "nothing else." (Doc. 89, at 1; *id.* at 2 ("The only thing the Government may withhold is the informant's identity under the informant's privilege but all other information is subject to disclosure.")). However, Rinaldi asserts that "there is no need for this" because he already knows CS-2's identity and "CS[-]1's information or statements are *Brady* material." (*Id.* at 1-2).

In response to Rinaldi's motion, the Government attaches to its opposition brief "copies of the affidavits, applications, and orders for both wiretaps with only the identifying information of the informants, including certain details of criminal history, redacted." (Doc. 150, at 49) (*see* Docs. 150-1 to 150-6). Rinaldi's Reply brief confirms that he now "was provided with a less redacted copy of the wiretap affidavit." (Doc. 152, at 21). A review of the documents submitted by the Government, copies of which were received by Defendant, demonstrate the following:

- The Wiretap Order, signed by the undersigned on July 3, 2018 (Doc. 150-1), contains no redactions.

- The Affidavit of Thomas Kaluzny in Support of the Application for an Order Authorizing the Interception of Wire and Electronic Communications, signed by the

21

undersigned on July 3, 2018 (Doc. 150-2) and totaling 70 pages, only contains redactions on pages 17-18. The redactions on these pages consist of: the date CS-1 was arrested and the arresting officer; the date on which CS-2 began providing information to the DEA, the years in which CS-2 was arrested and by whom; and several of the charges for which CS-2 was arrested and/or the sentences imposed for those crimes.

- The Application by the Assistant United States Attorney, signed by the Government and the undersigned on July 3, 2018 (Doc. 150-3), contains no redactions.

- The Wiretap Order, signed by the undersigned on July 31, 2018 (Doc. 150-4), contains no redactions.

- The Affidavit of Thomas Kaluzny in Support of the Application for an Order Authorizing the Interception of Wire and Electronic Communications, signed by the undersigned on July 31, 2018 (Doc. 150-5) and totaling 106 pages, contains redactions on pages 19-21. The redactions on these pages again consist of: the date CS-1 was arrested and the arresting officer; the date on which CS-2 began providing information to the DEA, the years in which CS-2 was arrested and by whom, and several of the charges for which CS-2 was arrested and/or the sentences imposed for those crimes.

- The Application by the Assistant United States Attorney, signed by the Government and the undersigned on July 31, 2018 (Doc. 150-6), contains no redactions.

Notably, in the Affidavits, the minimal information redacted by the Government also does not include the majority of the information relating to the charges for which the Confidential Sources were arrested or the sentences consequently imposed. The limited redactions all consist only of information which could be used to readily identify CS-1 and CS-2, even in the absence of their names.

Rinaldi's assertion that the information in the Affidavits need not be redacted because he already purportedly knows the identity of CS-2 is speculative and without any legal support. Although the Court recognizes that "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the [informer's] privilege is no longer applicable", *United States v. Roviaro*, 353 U.S. 53, 60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), Rinaldi has not provided any basis for his assertion as to the identity of CS-2 or why he believes he is correct in his assertion, and the Government will not be compelled to verify or deny Rinaldi's unsupported statement.

Nor has Rinaldi set forth any basis for his conclusory assertion that "CS#1's information or statements are *Brady* material." This is particularly so where the Government has represented that "CS-1 has no relevant information to Rinaldi's present charges, and would not be called to testify at trial" (Doc. 150, at 50).

In *Roviaro*, the Supreme Court found that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353

U.S. at 60-61. Nonetheless, "no fixed rule with respect to disclosure [of the identity of an

informant] is justifiable." Instead,

[t]he problem is one that calls for balancing the public interest in protecting the
flow of information against the individual's right to prepare his defense. Whether
a proper balance renders nondisclosure erroneous must depend on the
particular circumstances of each case, taking into consideration the crime
charged, the possible defenses, the possible significance of the informer's
testimony, and other relevant factors.

*Id.* at 62.

In *McCray v. Illinois*, the Supreme Court again addressed the privilege against

disclosure of the identity of persons supplying the Government with information concerning

the commission of crimes and set forth the reason for this privilege:

Communications of this kind ought to receive encouragement. They are
discouraged if the informer's identity is disclosed. Whether an informer is
motivated by good citizenship, promise of leniency or prospect of pecuniary
reward, he will usually condition his cooperation on an assurance of anonymity
– to protect himself and his family from harm, to preclude adverse social
reactions and to avoid the risk of defamation or malicious prosecution actions
against him. The government also has an interest in nondisclosure of the
identity of informers. Law enforcement officers often depend upon professional
informers to furnish them with a flow of information about criminal activities.
Revelation of the dual role played by such persons ends their usefulness to the
government and discourages others from entering into a like relationship.

That the government has this privilege is well established and its soundness
cannot be questioned.

*McCray v. Illinois*, 386 U.S. 300, 308, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (quoting 8

Wigmore, Evidence § 2374 (McNaughton rev. 1961)).

A defendant has the burden of setting forth and establishing a specific need for disclosure of the identity of the confidential informant. *See United States v. Jiles*, 658 F.2d 194, 197-198 (3d Cir. 1981) (stating that "the first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure", and that this burden to show the need for disclosure is on the defendant, and the "second part of the '*Roviaro* test' requires a balancing of the [Defendant's] interest in disclosure against the Government's interest in maintaining the confidentiality of its informant."). In meeting its burden, the defendant may not merely rely on speculation or vague assertions. *See U.S. v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) ("[Defendant's] argument, as to why the identity of the informant here would be useful, is vague. '[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity.' So far as appears, the informant's role in this case was nothing more than that of allegedly providing the police with probable cause for conducting their search. . . . The evidence of [Defendant's] guilt consisted primarily of the physical evidence seized during the search. Where an informant's role was in validating a search, disclosure of his identity is not required. [Defendant] has failed to present a convincing argument that the informant played any more important role in the Government's case or in his defense." (internal citations omitted)); *Jiles*, 658 F.2d at 197 ("The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*."); *United States v. Brenneman*, 455 F.2d 809, 811

(3d Cir. 1972) (Finding unpersuasive Defendant's "speculation that testimony or information from the informant might have been used to impeach or cross-examine [a witness] and 'might even have led to the [defendant's] being able to raise the issue of entrapment'".).

Although Rinaldi cites *United States v. Freeman*, 2008 WL 879966 (E.D.Pa. 2008) in support of his position that the Government can only withhold an informant's identity and no other information, it must be noted that this unpublished Eastern District case has never been cited by any Court within this Circuit. In addition, *Freeman* does not support Rinaldi's argument. There, the Court "conclude[d] that the Government may redact from a wiretap application information that is protected by the informer's privilege prior to disclosing the application to a defendant" but declined to allow the Government "to redact from the wiretap applications information concerning a separate and ongoing investigation." *Freeman*, 2008 WL 879966 at *3-4. The Court thus ordered that the Government "may redact only those portions necessary to protect the identity of any confidential informants." *Id*. at *1. Whatever persuasive authority the decision in *Freeman* presents (and this Court is skeptical that it presents any), it has no application here where the *Freeman* Court did nothing more than prevent the Government from redacting information from wiretap applications related to a separate criminal investigation. That ruling has no application here where none of the redacted information pertains to any separate and ongoing investigations.

Here, Rinaldi has done no more than provide speculative and vague assertions as to why he is entitled to fully unredacted copies of the Affidavits and has failed to meet his

burden of setting forth and establishing a specific need for disclosure of the identity of the confidential informants as set forth in *Jiles*. In addition, *Freeman* is in accordance with *Roviaro*, *McCray*, and *Jiles*, and their progeny, in that it specifically recognized that the Government may redact those portions of a wiretap necessary to protect the identity of any confidential informants. The limited information redacted in the wiretaps at issue in this case is specifically related to protecting the identity of CS-1 and CS-2 and therefore properly withheld at this time.

In addition, the Government is only statutorily required to provide Defendant with a copy of the court order and accompanying application no later than 10 days prior to trial.

Pursuant to 18 U.S.C. § 2518(9)

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

18 U.S.C. § 2518(9). Thus, to the extent that the court order and application do not contain other information which may be subject to disclosure at any earlier time, the Government is under no obligation to provide the defendant with the information he requests any earlier than statutorily required, absent a court order. Here, the Government has asserted, and this

27

Court has no reasons to doubt, that "[i]f CS-2 is called to testify [at trial], Rinaldi will receive

a full criminal history and all Jencks materials in a timely manner." (Doc. 150, at 50).

For these reasons, Rinaldi's "Request to Compel" (3:18-cr-279, Doc. 89; 3:18-cr-280,

Doc. 90) will be denied.

## G. Motion for Early Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure

Defendant next moves for the Court to order the Government to disclose Jencks

material no later than 30 days prior to trial. (Doc. 103, at 3). Specifically, Rinaldi requests

the following material:

- "Any statement written by a witness; and signed, adopted or approved by the witness; or substantially verbatim transcript made contemporaneously with witness' oral statement including FBI 302s or equivalent witness interviews; or witness' grand jury testimony." (Doc. 103, at 1).
- "Any and all rough notes of DEA agents, and other law enforcement agents who were working with Federal Authorities." (*Id.*).
- "'Case Summary Memos' from agents involved in the investigation" (*Id.* at 2).
- "Any notes used by the witnesses when testifying before the grand jury." (*Id.*).
- "The prosecutor's notes of witness interviews regardless of whether the notes has [*sic*] been read back to the witness for corrections and/or otherwise adopted by the witness." (*Id.*).
- "Diaries or notebooks kept by witnesses." (*Id.*).

Although Defendant appears to recognize that neither the Jencks Act nor Federal

Rule of Criminal Procedure 26.2 require the Government to disclose the requested material

30 days prior to trial (*see* Doc. 104, at 1) he argues that early disclosure of this material is

permissible and that such disclosure is necessary so that Defendant is not "compelled to

move for a continuance of trial pursuant to F.R.Cr.P. 26.2(d)" and to "avoid unnecessary

28

delay prior to cross examination" (Doc. 103, at 2-3), as well as "the need to avoid undue

surprises" (Doc. 104, at 1).

The Federal Rules provide that

[a]fter a witness other than the defendant has testified on direct examination,
the court, on motion of a party who did not call the witness, must order an
attorney for the government or the defendant and the defendant's attorney to
produce, for the examination and use of the moving party, any statement of the
witness that is in their possession and that relates to the subject matter of the
witness's testimony.

Fed. R. Crim. P. 26.2(a). The Jencks Act further provides that "no statement or report in the

possession of the United States which was made by a Government witness or prospective

Government witness (other than the defendant) shall be the subject of subpoena, discovery,

or inspection until said witness has testified on direct examination in the trial of the case."

18 U.S.C. § 3500(a). The Jencks Act also requires that:

After a witness called by the United States has testified on direct examination,
the court shall, on motion of the defendant, order the United States to produce
any statement . . . of the witness in the possession of the United States which
relates to the subject matter as to which the witness has testified.

*Id*. at § 3500(b). A "statement" is defined in the Jencks Act as follows:

(1) a written statement made by said witness and signed or otherwise adopted
or approved by him;
(2) a stenographic, mechanical, electrical, or other recording, or a transcription
thereof, which is a substantially verbatim recital of an oral statement made by
said witness and recorded contemporaneously with the making of such oral
statement; or
(3) a statement, however taken or recorded, or a transcription thereof, if any,
made by said witness to a grand jury.

*Id*. at § 3500(e).

29

Thus, with respect to prior statements of witnesses that the Government intends to call at the time of trial, both the Jencks Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct examination at trial.[4] As the Third Circuit made clear, "[t]he blunt command of the [Jencks Act] together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial." *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). *See also, United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D. Pa. 2010) (denying Defendant's motion for early production of material under the Jencks Act and finding that, where the Government had agreed to provide the Jencks material three days prior to trial, "[i]t is not within the power of the District Courts to accelerate" the Government's timetable); *United States v. Eisenberg*, 773 F.Supp. 662, 683 (D.N.J. 1991) (denying Defendant's motion for disclosure of the pretrial statements of a Government witness prior to that witness's testimony, citing to the Jencks Act and Rule 26.2, and finding that although the Government stated that it would disclose any Jencks Act material the day before that witness testified, "it is not required to

---

[4] Federal Rule 26.2 also applies to statements given at a suppression hearing and at various other hearings. *See* Fed. R. Crim. P. 26.2(g). As Rinaldi's motion only addresses the receipt of Jencks material prior to trial, the Court limits its analysis herein to this specific request. However, the Government shall fully comply with its duty under Jencks and Rule 26.2(g) in the event that it is required for a purpose other than for trial.

do so."); *United States v. D'Elia*, 2007 WL 2458487, *7 (M.D. Pa. 2007) (denying Defendant's motion under the Jencks Act and Rule 26.2 to require the Government to disclose Jencks Act material at least thirty days prior to trial).

In addition, Defendant's request for (1)"[a]ny and all rough notes of DEA agents, and other law enforcement agents who were working with Federal Authorities"; (2) "'Case Summary Memos' from agents involved in the investigation"; and (3) "[t]he prosecutor's notes of witness interviews regardless of whether the notes has [*sic*] been read back to the witness for corrections and/or otherwise adopted by the witness" (Doc. 103, at 1-2), are all expressly shielded from discovery under Federal Rule of Criminal Procedure 16(a)(2), which states that "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are not subject to pretrial discovery or inspection. Fed. R. Crim. P. 16(a)(2).[5]

Furthermore, Defendant is not entitled to "[a]ny notes used by the witnesses when testifying before the grand jury." (Doc. 103, at 2). With respect to grand jury material, it "is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. Rule 6(e) of the Federal Rules of Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury." *In re Grand*

---

[5] These requests by Defendant largely mirror the evidence requested in Defendant's Motion "to Preserve and Disclose Notes, Reports, and Evidence" (Doc. 111), addressed *infra*, and the Court incorporates herein its reasoning below.

*Jury Matter,* 682 F.2d 61, 63 (3d Cir. 1982) (internal citations omitted). Thus, a "party moving for court-ordered disclosure [of grand jury proceedings] bears a heavy burden of proving to the court that 'the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Eisenberg,* 773 F.Supp. at 707 (quoting *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979)). "The most significant factor which a party seeking disclosure must show is 'particularized need' for the information." *United States v. Giampa,* 904 F.Supp. 235, 287 (D.N.J. 1995). "The Supreme Court has repeatedly stressed the wide discretion given district courts in evaluating whether disclosure of grand jury materials would be appropriate. *See, e.g., United States v. John Doe, Inc. I,* 481 U.S. 102, 116, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987)." *United Kingdom v. United States,* 238 F.3d 1312, 1320 (11th Cir. 2001). Here, Rinaldi has not demonstrated any particularized need for any of the specific information he requests relating to the grand jury proceedings and thus the grand jury notes requested are expressly prohibited by the policies in set forth *supra.*

Finally, although Rinaldi has requested that the Court order early disclosure of "[d]iaries or notebooks kept by witnesses" (Doc. 103, at 2), Defendant fails to offer any case law in support of his assertion that he is entitled to early disclosure of this information. Here, once again, the Court finds that the Government is not required to disclose Jencks

Act material in the form of "diaries or notebooks kept by witnesses" until that witness has testified on direct examination in the trial of the case.

Nonetheless, the Government has represented that it "will voluntarily agree to disclose witness identities and provide Jencks statements and any criminal histories of witnesses at a reasonable time before trial." (Doc. 150, at 52). In light of Defendant's *pro se* status, the Court strongly suggests that the Government disclose the afore-mentioned information no later than 7 calendar days prior to trial, but notes that the Government is under no legal obligation to do so.

Accordingly, Defendant's Motions for Early Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure (3:18-cr-279, Doc. 103; 3:18-cr-280, Doc. 102) will be denied.

## H. Motion for "Pretrial Hearing to Determine Existence of Conspiracy"; Motion for "Hearing on Admissibility of Statements of Alleged Co-Conspirators"

Rinaldi next moves for this Court to hold a pretrial hearing to determine the existence of a conspiracy. (Doc. 105). In his supporting brief, Rinaldi asserts that Federal Rule of Evidence 104 requires that "the determination of the admissibility of a co-conspirator's declarations must be made preliminarily." (Doc. 106, at 1). Rinaldi further requests that "should [the Court] refuse to grant a full evidentiary hearing . . . the Court should require the Government to make a pre-trial offer of the evidence it intends to present to establish the existence of a conspiracy" between Rinaldi "and the declarant and that the declarations were made in furtherance of that conspiracy." (*Id.* at 2). The Government counters that "a

33

pretrial hearing is an unnecessary waste of time and resources" and urges this Court to deny Defendant's motion (Doc. 150, at 54). The Government further correctly notes that a hearing prior to trial is not required (*id.* at 53), an assertion admitted by Rinaldi in his supporting brief (Doc. 106, at 2).

Similarly, in a separate motion, Rinaldi also moves for a hearing "to determine [the] admissibility of any statements of [*sic*] testimony of alleged co-conspirators, which the Government intends to introduce, pursuant to Federal Rule of Evidence 801(d)(2)(E). . . ." (Doc. 107), which the Government asserts is "substantially redundant" of the motion for a hearing to determine the existence of a conspiracy (Doc. 150, at 55).

Under Federal Rule of Evidence 801(d)(2)(E), statements "made by [a] party's coconspirator during and in furtherance of the conspiracy" are not hearsay. However,

> [b]efore admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy."

*Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

"[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Id.* at 176. This burden of proof is "unrelated to the burden of proof on the substantive issues, be it a criminal case or a civil case." *Id.* at 175 (internal citations omitted). Rather, it derives from Federal Rule of Evidence 104(a), which requires the court to make preliminary determinations as to the

admissibility of evidence; "[t]he preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." *Id.* at 175.

In order to make this preliminary determination, the court may – but, in the exercise of its discretion, need not – conduct a preliminary hearing to determine the existence of a conspiracy. *See United States v. Ammar*, 714 F.2d 238, 247 (3d Cir. 1983) ("We cannot say that in the circumstances of this case the district court erred [when it refused to hold a pre-trial hearing] or that its refusal to hold a pre-trial hearing under Fed. R. Evid. 104 was an abuse of discretion."); *United States v. Bledsoe*, 2006 WL 3098770, \*5 (W.D. Pa. 2006) ("[T]he control of the order of proof at trial is a matter committed to the discretion of the trial judge and it is well-settled that a pretrial ruling or Rule 401 hearing need not be conducted in every case where the government seeks to introduce co-conspirator statements against a defendant.") (internal citations and quotations omitted).

In the present cases, the Court concludes that a pretrial hearing would be inappropriate, as such a hearing would create a needlessly duplicative mini-trial. Both cases involve allegations of a conspiracy extending over the course of approximately a month and involving three and four defendants (3:18-cr-279, 3:18-cr-280 respectively), two of whom have entered into plea agreements. A preliminary hearing in both cases would involve the same types of proof as would be offered at trial in order to determine what role, if

any, Rinaldi played in the alleged conspiracies, which could potentially involve a great deal of interrelated testimony on the part of the co-defendants and other witnesses.

Accordingly, the Court finds that the better approach is that adopted by the Third Circuit in *United States v. Continental Group, Inc.*, 603 F.2d 444 (3d Cir. 1979), in which the Circuit concluded that, "given the large amount of interrelated testimony to be considered," the district court's decision to admit co-conspirator declarations subject to a subsequent proof of the existence of a conspiracy by a preponderance of the evidence "was not inconsistent with the sound exercise of its discretion." *Id.* at 457; *see also United States v. Manamela*, 463 Fed. App'x 127, 133 (3d Cir. 2012) (re-affirming *Continental Group* and noting that, while the approach condoned therein presents a "danger of prejudice," when "the conspiracy may become clearly defined only after the testimony of several witnesses, we will uphold the district court's decision to admit co-conspirator statements subject to a later connection"). Therefore, the Government will be allowed to offer co-conspirator statements at trial, so long as it later proves by a preponderance of the evidence that a conspiracy existed. Of course, the Court adopts this procedure with the understanding that, if the Government does not make the requisite showing of the existence of a conspiracy by the time that it rests its case, there may be grounds for a mistrial.

Consequently, Rinaldi's Motions for a "Pretrial Hearing to Determine Existence of Conspiracy" (3:18-cr-279, Doc. 105; 3:18-cr-280, Doc. 104) and Motions for a "Hearing on

Admissibility of Statements of Alleged Co-Conspirators" (3:18-cr-279, Doc. 107; 3:18-cr-280, Doc. 106) will be denied.

## I. Motion "Pursuant to Rules 404(b) and 609 of Federal Rules of Evidence"

Rinaldi's next moves the Court to direct the Government to disclose "prior to the start of trial" any evidence under Federal Rules of Evidence 404(b) and 609 relating to himself, any co-defendant, and any co-conspirator "regardless of whether said co-conspirator(s) was charged or named in the indictment." (Doc. 109, at 1-2). Aside from a request that he receive the information "prior to the start of trial", Rinaldi does not specifically set forth a certain amount of time prior to trial when he wants the evidence disclosed to him.

Pursuant to Rule 404, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. at 404(b)(2). "On request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and . . . do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." Id.

The Rules of Evidence do not set forth a specific time frame within which the Government must provide Rule 404(b) evidence. Rather, "[w]hat constitutes reasonable

notice in advance of trial [pursuant to Rule 404(b)] is determined by the circumstances and complexity of the prosecution." *United States v. Johnson*, 218 F.Supp.3d 454, 462 (W.D.Pa. 2016)(internal quotation marks omitted). Courts have thus frequently found that the Government must disclose Rule 404(b) evidence no less than one to two weeks prior to trial. *See id.* (ten business days); *Giampa*, 904 F.Supp. at 283 (two weeks); *United States v. Evangelista,* 813 F.Supp. 294, 302 (D.N.J. 1993) (ten business days); *United States v. Woods*, 2008 WL 2622902, \*5 (W.D.Pa. 2008) (five calendar days). *See also, United States v. Kern,* 12 F.3d 122, 124 (8th Cir.1993) (finding magistrate judge's order that "any 'bad act' evidence be disclosed at least fourteen days prior to trial" pursuant to Rule 404(b) "was reasonable"); *United States v. French,* 974 F.2d 687, 694-695 (6th Cir. 1992) (district court's approval of Government's one-week notice to defendant's counsel of its intent to produce "other crimes" evidence was not an abuse of discretion under the circumstances).

Here, in response to the defendant's request for disclosure of evidence pursuant to Rule 404(b), the Government asserts that while "it is unclear exactly what the defendant is asking for" pursuant to Rule 404(b), it "will provide records of criminal convictions for all witnesses that [it] intends to call at trial at a reasonable time before trial." (Doc. 150, at 57). The Government also states that "[t]o the extent [Rinaldi's] motion seeks only notice as required by Rules 404(b) and 609, the government has no objection and will abide by the Rules of Evidence." (Doc. 150, at 57).

The Government's representation that it will provide these records "at a reasonable time before trial" and that it will abide by the Rules of Evidence lacks sufficient specificity to satisfy this Court that it will meet the Rule 404(b) requirements. Rather, the Government will be ordered to produce all Rule 404(b) evidence of which it is aware and that it intends to offer at trial no later than ten calendar days prior to trial.

The Court turns to Defendant's request that the Court compel the Government to disclose any evidence it intends to use pursuant to Federal Rule of Evidence 609. Rule 609, Impeachment by Evidence of a Criminal Conviction, sets forth rules which apply to "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). Although Rule 609(b) provides that if more than ten years have passed since the witness's conviction or release from confinement, whichever is later, the party seeking to introduce the evidence of the conviction must "give[] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use", Fed. R. Evid. 609(b)(2), the text of Rule 609(a) provides no such notice requirement. As a result, "the court can only order the government to provide advanced written notice of its intent to proffer any Rule 609(b) evidence," but not of Rule 609(a) evidence. *See United States v. Beech*, 307 F.R.D. 437, 443 (W.D. Pa. 2015).

Here, the Government, in addressing both Rule 404(b) and 609, provides notice to the defendant that if Rinaldi testifies at trial, the Government intends to introduce evidence on cross-examination of his prior felony conviction(s) and, if Rinaldi denies that

conviction(s), the Government reserves the right to call a rebuttal witness to introduce objective evidence of the conviction(s). (Doc. 150, at 56). The Government concedes that, to comply with Rules 404(b) and 403, it only intends to introduce the fact of the conviction(s), and not the crime of conviction(s). (*Id.*). The Government further asserts that it reserves its right to cross examine any defense witnesses as to prior convictions as allowed under Rule 609.

Nonetheless, should the Government have, or become aware of, any evidence which falls within the ambit of Rule 609(b), it will be required to provide notice of its intent to use such evidence at the same time it provides notice under Rule 404(b) – no later than ten calendar days prior to trial.

Finally, to the extent that Defendant's motion, and specifically his request that the Government disclose any co-conspirators' statements, may also be interpreted as asserting that he is entitled to any statements made by co-conspirators pursuant to Federal Rule of Criminal Procedure 16, "[d]istrict courts of the Third Circuit have consistently held that Rule 16 does not provide for the discovery of a co-conspirator's statement", *United States v. Cheatham*, 500 F.Supp.2d 528, 538 (W.D. Pa. 2007) (collecting cases). *See also*, *United States v. D'Elia*, 2007 WL 2458487, at *6 (M.D. Pa. 2007) ("[The Third Circuit] has indicated a preference that the government prove the existence of the conspiracy and each defendant's connection with it by independent evidence *before admitting hearsay declarations of an alleged coconspirator* at trial. This does not mean, however, that the

government must present the requisite evidence before it actually seeks to admit a coconspirator's hearsay statement into evidence at trial. This Court can take up the matter at the time of trial.") (emphasis in original) (internal citations and quotation marks omitted).

Thus, Defendant's motions pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence (3:18-cr-279, Doc. 109; 3:18-cr-280, Doc. 108) will be denied as set forth herein.

## J. Motion to "Preserve and Disclose Notes, Reports, and Evidence"

Rinaldi further requests that the Court order "that the notes of all investigators, all preliminary drafts of reports, including computer discs, computer generated data and repositories of such notes and preliminary drafts, all spread sheets, or any other physical evidence, derived through the Government's investigations leading to and after the indictment be preserved and made available prior to trial." (Doc. 111).

In response, the Government states that it "has instructed the case agents that any notes and draft reports, to the extent that they exist, are to be preserved and provided to" the Assistant United States Attorney for review. (Doc. 150, at 59). Thus, with respect to Rinaldi's request that the specific information delineated in this motion be preserved, it appears the Government has done so, and Defendant's request on this issue will be denied.

The Court thus turns to when this information, to the extent some or all is relevant to the criminal actions, should be disclosed to Defendant. Rinaldi is entitled to the discovery of the material and information that he requests in so far as it is required under Brady, the Jencks Act and Rule 16. See United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994) ("Rule

41

16 of the Federal Rules of Criminal Procedure delineates the categories of information to

which defendants are entitled in pretrial discovery in criminal cases, with some additional

material being discoverable in accordance with statutory pronouncements and the due

process clause of the Constitution" and explaining what information must be disclosed

pursuant to *Brady* and the Jencks Act.). *See also*, Fed. R. Crim. P. 16(a)(2) (subject to

certain exceptions, Rule 16 "does not authorize the discovery or inspection of reports,

memoranda, or other internal government documents made by an attorney for the

government or other government agent in connection with investigating or prosecuting the

case. Nor does this rule authorize the discovery or inspection of statements made by

prospective government witnesses except as provided in 18 U.S.C. § 3500.").

As summarized by the Third Circuit in *Ramos*:

In *United States v. Vella*, 562 F.2d 275 (3d Cir. 1977) (per curiam), we held that
"the rough interview notes of F.B.I. agents should be kept and produced so that
the trial court can determine whether the notes should be made available to the
[defendant] under the rule of *Brady* ... or the Jencks Act." *Vella*, 562 F.2d at 276.
*See also United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983) (extending
rule to require preservation of rough drafts of agents' reports); *United States v.
Harris*, 543 F.2d 1247 (9th Cir. 1976); *United States v. Harrison*, 524 F.2d 421,
428-29 (D.C.Cir.1975). . . .

In *Vella* and *Ammar*, we explained the requirement for retaining rough notes of
interviews in such unambiguous terms that it would be futile to try to elucidate
further here, for what we meant cannot be stated more clearly. *See Ammar*, 714
F.2d at 259 ("the government must retain and, upon motion, make available to
the district court both the rough notes and the drafts of reports of its agents to
facilitate the district court's determination whether they should be produced");
*Vella*, 562 F.2d at 276 ("rough interview notes should be kept and produced").

*Ramos*, 27 F.3d at 68.

The Government represents that it "will comply with the rules and laws governing discovery, and will produce all materials required, including that which is required under *Brady*, *Giglio*, the Jencks Act, and Rule 16" and will provide any notes and draft reports that contain *Brady* or Jencks material to the defendant. (Doc. 150, at 59).

Here, as to any of the aforementioned evidence which Rinaldi asserts is Jencks material, the Court will deny the motion for disclosure of this information at this time. As explained, *supra*, the Court is without the power to compel the Government to produce the Jencks material until conclusion of direct examination at the trial. *See Murphy*, 569 F.2d at 773; *United States v. Li*, 2017 WL 590275 (M.D. Pa. 2017) (denying the defendant's request for immediate disclosure of notes made by witnesses or made by agents interviewing witnesses to the extent this evidence was Jencks material). Rather, the Government is expected to fully comply with its obligations under the Jencks Act and disclose any such material at the appropriate time.

Similarly, to the extent that any of the information requested herein is subject to *Brady*, the Court notes the Government's representation that it will provide any materials under *Brady* as required (Doc. 150, at 59), and expects the Government to continue to meet its constitutional obligations under *Brady* with respect to any such notes, reports, or other evidence within its possession.

Rinaldi's motions (3:18-cr-279, Doc. 111; 3:18-cr-280, Doc. 110) will therefore be

denied without prejudice and the Government is expected to timely comply with its

responsibilities under *Brady*, the Jencks Act, and all other applicable statutes and case law.

## K. Motion for Disclosure Pursuant to Federal Rule of Evidence 807

Pursuant to Federal Rule of Evidence 807, Defendant next moves for an Order from

the Court directing the Government to disclose any statement it intends to offer into

evidence as well as "the particulars of each such statement, including the name and

address of the declarant." (Doc. 113).

Pursuant to Fed. R. Evid. 807, the "residual exception" rule:

**(a) In General.** Under the following circumstances, a hearsay statement is not
excluded by the rule against hearsay even if the statement is not specifically
covered by a hearsay exception in Rule 803 or 804:

**(1)** the statement has equivalent circumstantial guarantees of
trustworthiness;

**(2)** it is offered as evidence of a material fact;

**(3)** it is more probative on the point for which it is offered than any other
evidence that the proponent can obtain through reasonable efforts; and

**(4)** admitting it will best serve the purposes of these rules and the interests
of justice.

**(b) Notice.** The statement is admissible only if, before the trial or hearing, the
proponent gives an adverse party reasonable notice of the intent to offer the
statement and its particulars, including the declarant's name and address, so
that the party has a fair opportunity to meet it.

Fed. R. Evid. 807. The Third Circuit has repeatedly explained that "'[t]he residual hearsay

exception is to be used only rarely, and in exceptional circumstances, and is meant to apply

only when certain exceptional guarantees of trustworthiness exist and when high degrees of

probativeness and necessity are present.'" *United States v. Lawrence*, 349 F.3d 109, 117

44

(3d Cir. 2003) (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Gp., Inc.*, 247 F.3d 79, 112 (3d Cir. 2001)).

In response to Defendant's request for disclosure of the Government's intention to use hearsay statements pursuant to Rule 807, the Government asserts that it "is aware of no Rule 807 statements it may seek to offer at trial, but should one arise, the government will abide by the Rules of Evidence" (Doc. 150, at 60).

In light of the Government's representation that it is currently unaware of any Rule 807 statements which it may offer at trial, but that it is aware of its obligations under the Rules of Evidence, including 807, the Court will deny Defendant's motions (3:18-cr-279, Doc. 113; 3:18-cr-280, Doc. 112) without prejudice.

## L. Motion to Produce Memorializing of Government Interviews

Rinaldi also requests that the Court "order the production of any tapes, transcripts, notes or memorializing record of interviews taken by the Government, including the DEA, the FBI, the Pennsylvania State Police, the District Attorney's Office of Luzerne County or Wilkes-Barre Police Department of any persons obtained during its investigation." (Doc. 115). In support of his motion, Rinaldi "submit[s] that both *Brady* and Rule 16 as well as the Jencks Act requires immediate disclosure of these items to the Defendant. . . ." (Doc. 116).

Rinaldi's motion to produce memorializing Government interviews is somewhat similar to his prior motion requesting that the Court order "that the notes of all investigators, all preliminary drafts of reports, including computer discs, computer generated data and

45

repositories of such notes and preliminary drafts, all spread sheets, or any other physical evidence, derived through the Government's investigations leading to and after the indictment be preserved and made available prior to trial" (see Doc. 111). However, to the extent that Rinaldi is requesting additional information, the Court again turns to the contours of Rule 16, Jencks, and Brady.

Here, in response to Rinaldi's motion, the Government represents that "to the extent that reports or recordings of interviews fall under Brady or Jencks, the government will make them available at an appropriate time" and that "as to statements made by the defendant, all such statements are already considered mandatory disclosure" and have been produced and, should "any other reports or recordings of the defendant's own statements come to light", they will be produced "in a timely manner before trial." (Doc. 150, at 60-61).

Upon consideration of the Government's representation of what it has turned over and will continue to turn over as necessary and at the appropriate time, the Court will deny without prejudice Defendant's motions (3:18-cr-279, Doc. 115; 3:18-cr-280, Doc. 114) to the extent that it is seeking Brady, Giglio, and Jencks Act materials, subject to the restrictions on when such material must be turned over under Jencks and Brady/Giglio.

## M. "Motion to Join in the Motion of Co-Defendants"

Rinaldi next "joins in all Motions filed by Co-Defendants in this case as said motion may apply to him and incorporates said Motions by reference." (Doc. 124). Because there are no motions pending filed by any of Rinaldi's co-defendants in cases 3:18-cr-279 or 3:18-

cr-280, Rinaldi's motions (3:18-cr-279, Doc. 124; 3:18-cr-280, Doc. 120) will be denied without prejudice to the extent that any co-defendant files a pre-trial motion.

## N. Motion for Severance (Doc. 155)

Rinaldi further requests that this Court sever his cases from that of his co-defendants in both of the criminal proceedings or grant him "some form of alternate relief." (Doc. 155). As a basis for his request, Rinaldi asserts that none of his co-defendants have filed pre-trial motions but rather that each of them continues to request additional time to file such motions. Rinaldi also notes that co-defendant Powell is suffering from cancer and currently undergoing treatment. As a result, Rinaldi's motion for severance arises out of a concern that his co-defendants' filings in this case, or lack thereof, may result in a delay of his trial.

A review of the dockets in both criminal cases reveals that, not only have no co-defendants filed any pre-trial motions, the time for the filing of pre-trial motions has expired as to all defendants. In addition, in 3:18-cr-279, both of Rinaldi's co-defendants have signed plea agreements, thereby rendering Rinaldi the only defendant seeking trial in that case at this time. Furthermore, trial for co-defendant Powell is currently scheduled to commence on January 27, 2020. (*See* 3:18-cr-280, Doc. 158). Thus, at this time, there is no basis for either of Defendant's motions to sever his case from that of his co-defendants.

The Court will therefore deny Defendant's motions for severance (3:18-cr-279, Doc. 155; 3:18-cr-280, Doc. 157).

## III. CONCLUSION

As a result, Defendant Rinaldi's pre-trial motions (3:18-cr-279, Docs. 76, 77, 80, 82, 85, 89, 103, 105, 107, 109, 111, 113, 115, 124, 155) and (3:18-cr-280, Docs. 75, 76, 79, 81, 84, 90, 102, 104, 106, 108, 110, 112, 114, 120, 157) will be denied for the reasons set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge