# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:18-CR-279 |
| | : (JUDGE MARIANI) |
| MICHAEL RINALDI, | : |
| | : |
| Defendant. | : |

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:18-CR-280 |
| | : (JUDGE MARIANI) |
| MICHAEL RINALDI, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Michael Rinaldi's Supplemental Pre-Trial

Motion (3:18-cr-279, Doc. 161; 3:18-cr-280, Doc. 165) requesting that the wiretaps of

himself and his co-defendant Steven Powell be suppressed due to the Government's failure

to timely seal these wiretaps.

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi,

Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and

Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in

violation of 21 U.S.C. §§ 841 and 846. (See 3:18-cr-279, Doc. 37). That same day, the

federal grand jury also returned an indictment charging Defendants Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846. (See 3:18-cr-280, Doc. 1).

The Court thus currently has two criminal actions before it wherein Michael Rinaldi is a named defendant: 3:18-cr-279 and 3:18-cr-280.

On January 16, 2019, at the request of Defendant Rinaldi, the Court held a hearing in accordance with Faretta v. California, 422 U.S. 806 (1975) and United States v. Peppers, 302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Defendant Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant Rinaldi understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent herself. Following this colloquy, the Court determined that Mr. Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding pro se and therefore granted Mr. Rinaldi's request to represent himself. The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

Since December of 2018, Defendant Rinaldi has filed a number of *pro se* pretrial

motions which are currently pending before this Court, including the following:[1]

- Motion to Dismiss the Indictment (Doc. 76)
- Motion to Dismiss "Pursuant to F.R. Crim. P. 12(B)" (Doc. 77)
- "Request for a Bill of Particulars" (Doc. 80)
- Motion to Suppress and for a *Franks* Hearing (Doc. 81)
- "Motion to Challenge the Authenticity and Chain of Custody of the Government's Exhibits" (Doc. 82)
- Motion to Compel Discovery (Doc. 85)
- "Request to Compel" (Doc. 89)
- "Request for Funding and Other Assistance Needed to Prepare a Defense" (Doc. 90)
- "Motion for Early Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure" (Doc. 103)
- Motion for "Pretrial Hearing to Determine Existence of Conspiracy" (Doc. 105)
- Motion for Hearing on Admissibility of Statements of Alleged Co-Conspirators (Doc. 107)
- Motion "Pursuant to Rules 404(b) and 609 of Federal Rules of Evidence" (Doc. 109)
- Motion to "Preserve and Disclose Notes, Reports, and Evidence" (Doc. 111)
- Motion for Disclosure Pursuant to Federal Rule of Evidence 807 (Doc. 113)
- Motion to Produce Memorializing of Government Interviews (Doc. 115)
- "Motion to Join in the Motion of Co-Defendants" (Doc. 124)
- Motion for Severance (Doc. 155)
- "Request to Supplement Pre-Trial Motions" (Doc. 161).
- "Motion for Production" (Doc. 197)

The Court addresses in this Memorandum Opinion Defendant's supplemental pre-

trial motion (Doc. 161) and, for the following reasons, will grant in part and deny in part

Defendant's supplemental motion (*see* 3:18-cr-279, Doc. 161; 3:18-cr-280, Doc. 165).

---

[1] As previously explained, Michael Rinaldi is a defendant in two criminal cases: 3:18-cr-279 and 3:18-cr-280. Defendant filed the same motions and accompanying briefs in both 3:18-cr-279 and 3:18-cr-280. Unless otherwise stated, for purposes of clarity, the Court's citation to specific document numbers reference the document number set forth in the first case filed at docket number 3:18-cr-279.

## II. ANALYSIS

On July 10, 2019, Defendant Rinaldi filed a document entitled "Request to Supplement Pre-Trial Motions and Attached Brief." (Doc. 161). In that document, Defendant stated that he had only recently received the "sealing orders relating to the wiretap recordings in this case" and requested that the Court consider his document as a motion and supplemental brief. In Rinaldi's supplemental filing, he asserts that "the wiretap interceptions ceased on August 8th 2018 when Rinaldi was arrested" but that "the recordings were not sealed until September 10th 2019 [sic]" and sets forth other purported deficiencies in the sealing of the recordings. (Id. at 3). Thus, Rinaldi asserts that "the recordings should be suppressed and all evidence seized as a result of the recordings should be suppressed as fruits of a poisonous tree." (Id. at 7). The Court granted Rinaldi's request that his supplemental brief be considered when evaluating Rinaldi's pre-trial motions and ordered the Government to file a brief in response to the supplemental filing. (Doc. 162). The Government filed a "Brief in Opposition to Defendant's Supplemental Motion to Suppress Wiretap Evidence" (Doc. 192) on August 15, 2019.

The charges against Defendant Rinaldi in both 3:18-cr-279 and 3:18-cr-280 arose from a Drug Enforcement Administration ("DEA") investigation wherein Task Force Officer Thomas Kaluzney was the lead investigator. During this investigation, the DEA obtained two Title III authorization orders: the first on July 3, 2018, to intercept communications from the telephone used by Steven Powell and the second on July 31, 2018, to intercept

4

communications from the telephone used by Michael Rinaldi. Both authorization orders

were signed by the undersigned.

The issue presently before this Court arises from the application of Title III of the

Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510, *et*

*seq.* Title III "regulates the interception of wire, oral, and electronic communications" and

"[e]xcept under extraordinary circumstances . . . electronic surveillance may be conducted

only pursuant to a court order." *United States v. Ojeda Rios*, 495 U.S. 257, 259, 110 S.Ct.

1845, 109 L.Ed.2d 224 (1990) (internal citations omitted).

Pursuant to 18 U.S.C. § 2518(8)(a):

The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter [18 U.S.C. § 2510, *et seq.*] shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a). "The primary thrust of § 2518(8)(a) . . . and a congressional

purpose embodied in Title III in general, . . . is to ensure the reliability and integrity of

evidence obtained by means of electronic surveillance." *Ojeda Rios*, 495 U.S. at 264

5

(internal citations omitted). Section 2518(a) "serves a prophylactic function. It precludes the government from using an electronic surveillance wiretap that has not been timely sealed under judicial supervision." *United States v. Carson*, 969 F.2d 1480, 1497 (3d Cir. 1992).

Violation of § 2518(8)(a) "requires suppression if the sealing was not 'immediate' and if the government fails to provide any 'satisfactory explanation for the delay.'" *United States v. Bansal*, 663 F.3d 634, 651 (3d Cir. 2011) (quoting *Ojeda Rios*, 495 U.S. at 264-268). *See also, United States v. Quintero*, 38 F.3d 1317, 1325 (3d Cir. 1994) ("In *United States v. Ojeda Rios*, 495 U.S. [at 260], the Supreme Court noted that § 2518(8)(a) contains 'an explicit exclusionary remedy for noncompliance with the sealing requirement.' The Supreme Court determined that, pursuant to § 2518(8)(a), a seal had to be 'obtained *immediately* upon expiration of the underlying surveillance order.' *Id.* at 263, 110 S.Ct. at 1849 (emphasis added). In the absence of a timely sealing, the Court interpreted the statute to require that the government supply a satisfactory explanation for its failure to comply with the statute. *Id.*"). "[T]he 'satisfactory explanation' language in § 2518(8)(a) must be understood to require that the Government explain not only why a delay occurred but also why it is excusable." *Ojeda Rios*, 495 U.S. at 265. "In general, satisfactory explanations for delays in sealing should relate directly to the practicalities of obtaining a sealing order as soon as possible after the sealing requirement is triggered." *Carson*, 969 F.2d at 1498.

The Court in *Carson* explained that in *Ojeda Rios*,

> The Supreme Court outlined the contours of its requirement that delays in sealing electronic surveillance tapes must be satisfactorily explained. The

6

> Court observed that there are few cases where the government would be
> unable to put forth any explanation for a sealing delay. *Ojeda Rios,* 495 U.S. at
> 264, 110 S.Ct. at 1850. Therefore, "the Government [must] explain not only
> why a delay occurred but also why it is excusable." *Id.* at 265, 110 S.Ct. at
> 1850. The excuse offered must be "objectively reasonable" and must be the
> actual reason for the delay, "based on the evidence presented and submissions
> made in the District Court," and not merely a *post hoc* rationalization. *Id.* at 267,
> 110 S.Ct. at 1851.

*Carson,* 969 F.2d at 1492. *See also, Quintero,* 38 F.3d at 1325.

"Whether a sealing occurred as soon as practical after the expiration of an order is a question of fact for the district court." *Carson,* 969 F.2d at 1492. "'As soon as practical' means as soon as is reasonably feasible given the administrative procedures which necessarily must be undertaken prior to sealing." *Carson,* 969 F.2d at 1496. If the Court finds that the sealing did not occur as soon as practical, then it must determine whether the government has provided an objectively reasonable and satisfactory explanation for the delay in sealing. *Carson,* 969 F.2d at 1492. *See also, Quintero,* 38 F.3d at 1327-1327 (explaining that to assess whether the government has supplied a satisfactory explanation for the delay in sealing, a Court is required to examine the reasons supplied by the government and the government must prove "'the *actual reason* for the sealing delay rather than an *excuse* for some ulterior purpose or administrative bungle.") (italics in original) (quoting *United States v. Vastola,* 989 F.2d 1318, 1323 (3d Cir. 1993) (hereinafter "*Vastola III*")).

Nonetheless, "[a] recognition that allowances must be made for practical realities is implicit in Title III" and delays in sealing "should be judged by practicality." *Carson,* 969 F.2d at 1490.

The Third Circuit has therefore recognized that "there may be limited special circumstances apart from the administrative practicalities of obtaining a sealing order that would justify some delay." *Carson*, 969 F.2d at 1498. In *Carson*, the Court explained:

there are two kinds of justifiable government delays under the statutory scheme. First, there are the relatively short delays necessitated by the process required to comply with the provisions of the Act; administrative delays for want of a better term. Second, there are the sometimes longer delays attributable to non-administrative, objectively reasonable causes like understandable mistakes of law and interference from unexpected, extrinsic events beyond the government's control.

*Carson*, 969 F.2d at 1488. The Circuit has "emphasize[d] that this first type of delay concerns the short delays *related directly* to readying the tapes for sealing." *Quintero*, 38 F.3d at 1326 n.5 (italics in original) (quoting *Carson*, 969 F.2d at 1489, and citing as examples "gathering the tapes, putting them in boxes and taking the tapes to the supervising judge.").

Furthermore, mistakes of law and mistakes of fact by the Government have both been held to be satisfactory explanations for delay if the mistake is "objectively reasonable" such that the attorney involved acted in the manner that a "reasonably prudent" attorney would to investigate the question involved in a reasonably prudent manner.

"In establishing a reasonable excuse for a sealing delay, the Government is not required to prove that a particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time." *Ojeda Rios*, 495 U.S. at 266. As summarized by the Third Circuit:

8

In *Ojeda Rios,* the Supreme Court held that tapes which were not sealed in a timely fashion under section 2518(8)(a) must be suppressed unless the government offers a satisfactory, "objectively reasonable" explanation for the belated sealing, regardless of the integrity of the tapes. An explanation that the delay was due to the government's misconception of the law could be satisfactory if the misconception, though erroneous, was objectively reasonable and was relied on by the government as the explanation for the delay in the district court.

*Carson*, 969 F.2d at 1483 (internal citations omitted). *See also*, *id.* at 1494 ("We agree with

the district court that a reasonable mistake of law can be a satisfactory explanation for delay

. . ."). Specifically, in *Carson*, the Circuit stated:

The circumstances of this case may show that Robins [the Special Attorney with the Organized Crime and Racketeering section of the Department of Justice] had an affirmative duty to do more than rely on the advice of his superior. Arguably, a reasonable attorney would not have risked the exclusion of the tapes, evidence important to his case, without personally checking the law relating to its admission. It is not always unreasonable for an attorney to rely on a reasoned oral opinion of a supervisor, or even that of a peer with more experience in the area of law in question. Moreover, an attorney working under another lawyer on a case could not be faulted for following instructions, as opposed to advice, from the person in charge of the case or investigation. On the other hand, we do not think that a reasonable attorney can rely on a casual conversation with a peer or supervisor concerning developing law on a complex, controversial subject if an incorrect answer is likely to preclude admission of evidence of vital importance to the case. These questions are essentially fact-bound . . . .

*Carson*, 969 F.2d at 1495. The Third Circuit later summarized that *Carson* held that "an

unreasonable mistake of law does not automatically lead to suppression" and that *Carson*

stands for the proposition that "[w]hen a government attorney's legal conclusion is found to

be unreasonable, the explanation for the delay would still be an objectively reasonable

'mistake of law' if the government can show that its attorney has adequately researched the

9

law or has otherwise acted reasonably." *Vastola III*, 989 F.2d at 1327. If the Court determines that an unreasonable mistake of law was made, the Court must then look to whether the Government's attorney, in making an unreasonable mistake of law, nevertheless conducted himself reasonably under the circumstances, and if so, whether the government can meet its burden of proof of showing that its attorney had adequately researched the law or had otherwise acted prudently. *United States v. Vastola*, 25 F.3d 164, 167 (3d Cir. 1994)(hereinafter "*Vastola IV*")(citing *Vastola III*, 989 F.2d at 1327).

A Government's attorney's research which consists only of "reading and outlining the statute [the Wiretap Act] and reviewing the relevant annotations", standing alone, is not adequate to demonstrate that the attorney was acting as a reasonable attorney. *Vastola IV*, 25 F.3d at 168. Similarly, an attorney's conversations with other attorneys, standing alone, may also be insufficient. *Id.* However, "when an attorney receives confirmation of legal theories from a number of proper sources, each consistent with the next, the attorney can act reasonably in relying on these theories in the course of legal research." *Id.* at 168-169. Thus, the combined impact of these "concurring sources" can create a degree of certainty "which a prudent attorney could have accepted in arriving at an appropriate procedure for sealing." *Id.* at 169.

A Court must also look to the attorney's understanding of the law *at the time of the delay* to determine whether it was objectively reasonable and should examine the attorney's conduct at the time of the delay to determine if the conduct was that of a reasonably prudent

10

attorney. *Vastola IV*, 25 F.3d at 169 n.6. *See also id.* at 169 ("An inquiry into the reasonableness of an attorney's legal research is necessarily fact and time specific. The court must take into account not only the particular methodology employed by the attorney, but also the complexity of the law at the time in question."); *id.* at 168 (finding that when the AUSA "conducted her legal research, no 'red flags' would have appeared to warn her about the need to seal the tapes as the investigation continued but the location of the surveillance changed" and that the Court's "review of the relevant annotations discloses no Third Circuit case which would have definitively clarified this issue, or even notified [the AUSA] of a conflict" but rather that "cases from other circuits could have led her in the opposite direction.").

In addition to the language set forth in *Carson* which "expressly allows reasonable mistakes of law to provide a satisfactory explanation for a delay", a reasonable mistake of fact can also constitute a satisfactory explanation. *Bansal*, 663 F.3d at 652. In determining whether the government's mistake of fact establishes a satisfactory explanation, the Court's analysis "should mirror the reasonable mistake of law inquiry" set forth in *Carson*, *i.e.* the mistake "'is objectively reasonable only when the attorney involved acted as a "reasonably prudent" attorney would to investigate the legal question involved in a reasonably prudent manner.'" *Bansal*, 663 F.3d at 653 (quoting *Carson*, 969 F.2d at 1494).

In *United States v. Quintero*, the Government acknowledged that tapes sealed 20 days after the expiration of the authorization order "'were not sealed as soon as

11

administratively practical'" and the Circuit therefore looked to whether the government

supplied a satisfactory explanation for the sealing delay and whether the tapes were

admissible because the delay was "objectively reasonable." *Quintero*, 38 F.3d at 1324,

1326. In that case, the final surveillance order on a co-conspirator's cellular phone expired

on October 29, 1991, but the tapes were not sealed until November 18, 1991. *Id.* at 1322.

During a hearing on Defendants' motion to suppress the tapes,

> FBI agent Michael McGowan, who headed the investigation, testified that he
> believed "part of the delay" in sealing was because at the end of the October
> authorization period both of the Assistant United States Attorneys ("AUSA"s)
> working on the case "were involved in separate trials." When asked on cross-
> examination what was the other reason for the delay, McGowan testified that "I
> don't know what the Judge's appointment was when he told the U.S. Attorney
> to appear. We don't contact the Judge. We go through the U.S. Attorney's
> office." Later in the hearing, AUSA Carlos Suddath, who was one of the two
> prosecutors working on the case, asserted that McGowan's testimony
> supported the contention that the government had provided a satisfactory
> explanation for the delay. He noted that both he and the other AUSA working
> on the case, Thomas Martir, were occupied with other trials. Suddath agreed
> with the district court that his trial was on the same floor as Judge Giles's
> chambers but explained the delay in sealing by stating that "we also must fit in
> with the Judge's schedule."

*Quintero*, 38 F.3d at 1327 (internal citations to the record omitted). The Government was

thereafter permitted to file a supplemental brief opposing the defendants' motion to

suppress. In the brief,

> [t]he government noted that from October 15 to November 15, 1991, AUSA
> Suddath was on trial before Judge Kelly in a major criminal trial. During the
> "first two weeks" of November 1991 AUSA Martir was involved in "substantial
> pretrial preparation in a complex defense procurement fraud case" which was
> scheduled to begin on December 3, 1991. The government stated that this
> involved a substantial amount of time outside the office as Martir interviewed

12

approximately twenty potential witnesses. In addition, Martir was responsible for two sentencing hearings during the first week in November, a detention hearing during the second week in November, and the preparation of the complaints and arrest warrants for [Defendants] Santiago Gonzalez and Morgado. The government also noted that Judge Giles was unavailable between September 30 and November 4, 1991, because he was sitting by designation in the Virgin Islands.

*Quintero*, 38 F.3d at 1327.

The Circuit in *Quintero*, noting its prior statement in *Carson* that "on occasion [a satisfactory explanation] can be supplied by an extraneous unforeseen emergent situation", first rejected the Government's argument that the workload of the AUSAs was a satisfactory excuse for the delay in sealing, finding that Suddath's trial was foreseeable and that AUSA Martir's caseload was not "unusual". *Id*. at 1328-1329. The Court then also rejected the Government's rationale that the Judge's "unavailability should be considered a satisfactory explanation for part of the delay." *Id*. at 1330. In so doing, the Court admitted that "[t]he courts of appeal which have considered the question of whether a judge's absence can serve as a satisfactory excuse have reached opposite conclusions." *Id*. at 1330. However, even accepting that the issuing judge in this case had been unavailable before November 4, 1991, the Court found that "the fourteen day delay after Judge Giles's return is excessive under the standards of *Ojeda Rios*." *Id*. at 1330. As such, the Court declined to "decide whether the absence of the supervising judge, in and of itself, is sufficient excuse for any delay in sealing." *Id*.

13

In sum, to determine whether one or more of the wire tapes should be suppressed because of a delay in sealing under § 2518(8)(a), the Court must ask two questions. First, whether the tapes were sealed "immediately", *i.e.* "sealed either as soon as was practical after . . . the actual surveillance ended, or as soon as practical after . . . the final extension order expired.'" *Carson*, 969 F.2d at 1491 (quoting *United States v. Vastola*, 915 F.2d 865, 875 (3d Cir. 1990)(hereinafter "*Vastola II*")). If the tapes were sealed "as soon as was practical," the Court's inquiry ends and the tapes at issue need not be suppressed because the government has complied with the sealing requirements of § 2518(8)(a). *Carson*, 969 F.2d at 1491. However, if the tapes were not sealed immediately, the Court must ask the second question: "whether the government has given a satisfactory explanation for the sealing delay that was objectively reasonable." *Carson*, 969 F.2d at 1491 (citing *Ojeda Rios,* 495 U.S. at 267; *Vastola II,* 915 F.2d at 870). Only if the government offers such an explanation can the tapes be admissible. *Id*.

Here, the undersigned signed an order on July 3, 2018, "authorizing the interception of wire and/or electronic communications on [a] cellular telephone" which was "known to be utilized by Steven Antor Powell." (*See* Doc. 150-1). The Government asserts that the "Powell intercepts began on July 6, 2018" and ended on Saturday, August 4, 2018. (Doc. 192, at 3). "By Monday, August 6, 2018, the next business day, DEA Technical Operations began the process of creating the discs and sending them to Scranton." (Doc. 192, at 3-4).

On July 31, 2018, the undersigned also signed an order "authorizing the interception of wire and/or electronic communications on [a] cellular telephone" which was "subscribed to by Duwayne Brown" and "known to be utilized by Michael Rinaldi." (See Doc. 150-4). According to the Government, the "Rinaldi intercepts began on August 1, 2018." (Doc. 192, at 3). Intercepted communications over Rinaldi's phone revealed that Rinaldi and Brown had made arrangements with a source of supply to obtain "a substantial quantity of cocaine, and were also attempting to obtain heroin." (Id. at 4). Following a "hastily arranged [DEA] surveillance operation involving almost every agent and task force officer available from the Scranton office, including TFO Kaluzny and the other case agent, William Langan, along with multiple agents from the Philadelphia office", on August 8, 2018, DEA agents arrested Brown and, subsequent to a "warranted search of Brown's car", later arrested Rinaldi and Andrew Henry. (Id.). Due to Rinaldi's "unplanned arrest" on August 8, 2018, "the target telephone remained unused for an extended period, so agents terminated interception on Thursday, August 9, 2018." (Id. at 4-5). By August 9, 2018, "it was understood that the Rinaldi wire would likely be terminated." (Id. at 5).

The "Powell discs" arrived in Scranton on Thursday, August 9, 2018. (Doc. 192, at 5). The Government asserts that on this same day,

> the undersigned AUSA notified Judy Malave in Judge Mariani's chambers via telephone to discuss the sealing of the discs. By that point, it was understood that the Rinaldi wire would likely be terminated. To the best of the undersigned AUSA's recollection, the decision was made on that call to seal both sets of recordings at the same time, when the Rinaldi discs arrived.

(*Id.*).

Thus, on the afternoon of Monday, August 13, 2018, DEA Task Force Officer Tom Kaluzny emailed the AUSA assigned to this case notifying him that "the Disks for the RINALDI phone were sent today Fed Ex [from Philadelphia], I should have them tomorrow" and requesting that the AUSA schedule an appointment "with the judge tomorrow afternoon . . . to ensure we have the disks." (Email from Tom Kaluzney to AUSA Camoni, Aug. 13, 2018, Doc. 192-1). The Government asserts that on "that same day", it

> telephoned Ms. [Judith] Malave [the undersigned's Courtroom Deputy] to discuss the required periodic reports for the TIII wiretaps ("10-day Reports") and the sealing of the wire discs. A follow-up email provided the 10-day Reports and confirmed that the undersigned would notify Ms. Malave "as soon as the second set of discs arrives so we can set a time to seal them."

(Doc. 192, at 5-6) (*see also*, Doc. 192-2) (email from AUSA Camoni to Judith Malave, dated August 13, 2018).

According to the Government, on Tuesday, August 14, 2018, the AUSA spoke with this Court's Courtroom Deputy, Judith Malave, and was told that the undersigned "could not meet to seal [the wiretaps] until the following Monday, August 20, 2018." (Doc. 192, at 6).[2]

_____

[2] Although the Court makes no credibility determinations and does not doubt that the AUSA is using his best recollection in setting forth the dates of his conversations with Mrs. Malave, medical records reviewed by this Court undisputedly document that Mrs. Malave was not in the office, or otherwise available, on Tuesday, August 14 or Wednesday, August 15, due to a medical procedure performed on August 14, 2018. Thus, it is not possible that Mrs. Malave spoke with the AUSA on the Tuesday at issue or the following Wednesday. Given that the Chambers calendar demonstrates that the undersigned was working in the Federal Courthouse on August 14 and 15, 2018, as do Orders signed and filed those same days in other cases, it is clear that the undersigned was available on August 14 and August 15. Therefore, the only conclusion to be drawn is that the AUSA could not have spoken to Mrs. Malave until, at earliest, her return on Thursday, August 16, despite this Court's availability earlier in that week.

On Friday, August 17, 2018, counsel sent an email to Mrs. Malave stating that "[a]ttached

are the sealing applications and orders for Monday. Please let us know when the Judge

can see us." (Email from AUSA Sean Camoni to Judith Malave, Aug. 17, 2018, Doc. 192-

3). The U.S. Attorney's Office asserts that:

> The Judge was not available on August 20. Over the course of the following
> week, the undersigned AUSA telephoned chambers multiple times to set a time
> to seal the discs, to no avail. The undersigned recalls speaking with Ms. Malave
> and at least one other individual, presumably a clerk. The undersigned does
> not remember being provided a specific reason why the Judge was unavailable
> from August 20 through August 22, though he may have been on vacation.

(Doc. 192, at 6-7). By email dated August 23, 2018, the AUSA emailed the Courtroom

Deputy at 1:36 p.m. requesting: "Any chance we can get a few minutes this afternoon to

seal the wire recordings?" (Email from AUSA Camoni to Judith Malave, dated August 23,

2018, Doc. 192-4). In response, Mrs. Malave stated: "Sorry, Judge not in." (*Id.*). The

AUSA replied: "Ok, I am leaving for vacation after today until 9/4. Can you let me and Sarai

[an Administrative Assistant in the U.S. Attorney's Office] know when it can be done

tomorrow or next week and someone else can stand in for me?" (*Id.*).

In his brief, the AUSA asserts that he

> made arrangements with his assistant to enlist the duty AUSA for the week
> while the undersigned was on vacation so the wires could be sealed as soon
> as the Judge was available. Had Ms. Malave called and said that the Judge
> was available to seal the recordings, an AUSA and TFO Kaluzny would have
> been able to appear immediately to conduct the procedure.
>
> During this period, Deputy Criminal Chief AUSA William Houser was the
> undersigned AUSA's direct supervisor. The undersigned spoke with AUSA
> Houser several times about the difficulty in arranging a time for sealing the

17

wires, and AUSA Houser expressed concern over the delay. Both AUSA Houser and the undersigned, as well as TFO Kaluzny, understood the urgency of sealing the wiretaps. This urgency drove the undersigned to contact chambers every business day from August 17 through August 23. The undersigned returned from vacation on Tuesday, September 4, 2018; Monday, September 3 was Labor Day, and the Courts were closed.

Upon returning from leave, the undersigned AUSA learned that no one from chambers had called, and the recordings were still unsealed. The undersigned AUSA resumed calling chambers daily or nearly daily to request a time to seal the wire discs. On at least one occasion, the undersigned recalls stressing the importance of sealing the discs to a member of chambers staff. On September 10, 2018, Ms. Malave told the undersigned that the Judge was available to seal the discs. The undersigned and TFO Kaluzny met with Judge Mariani in his chambers, the Judge signed the orders and the evidence bags, and TFO Kaluzny sealed the discs inside the bags. The discs have been stored in a secure DEA evidence vault from that date until now.

(Doc. 192, at 7-8).

In the Government's brief, it explains that

During the time period [of] August 8, 2018 through September 10, 2018[,] the undersigned AUSA understood Title 18, U.S.C. § 2518(8)(a) to require that the wire recordings be sealed by the Judge who authorized the Title III warrant. See 18 U.S.C. § 2518(8)(a) ("[S]uch recordings shall be made available *to the judge issuing such order* and sealed under his directions.") (emphasis added). Discussions with [Deputy Criminal Chief] AUSA Houser reinforced that understanding, as AUSA Houser urged the undersigned to continue to contact Judge Mariani's chambers, and did not instruct the undersigned to contact another Judge to seal the discs. At the time, the undersigned had handled one other case involving Title III interceptions, and the recordings in that case were sealed by the same Judge who authorized the wiretaps. None of the DOJ guidance on Title III wiretaps, nor the relevant training the undersigned received, addressed the singular situation of an unavailable judge at the time of sealing.

(*Id.* at 9).

18

Following the two-part analysis set forth in *Carson*, 969 F.2d at 1491, the Government argues that in light of the afore-stated assertions, Defendant's motion to suppress should be denied because "1) the government complied with the statutory requirement by making the wire recordings available to the judge who authorized the intercepts as soon as administratively practical after termination of interception; and 2) even if the AUSA was mistaken about the mechanics of the sealing requirement, any mistakes were objectively reasonable and made in a good faith effort to comply with the sealing requirement." (Doc. 192, at 15).

With respect to the first assertion – that the Government made the wire taps available "as soon as administratively practical" – the Government asserts that it is "unaware of caselaw examining, defining, or interpreting the phrase 'made available'" and that when the discs arrived in Scranton, the AUSA "notified chambers and provided an application and draft order for sealing, and requested time with the Judge to seal the recordings." (Doc. 192, at 15-16). Thus, the Government asserts that "[b]y doing so, the government made the recordings available to the judge who issued the order, and satisfied the statutory requirement. None of the delays from that point on were within the government's control. The undersigned AUSA was led to believe, and has no reason to doubt, that the Judge signed the sealing orders and affected the sealing of the recordings at his first opportunity after the recordings were made available." (*Id.* at 16).

The Government's argument that it made the wiretaps available "as soon as administratively practical" and therefore complied with its statutory obligations takes the statutory language out of context and ignores the specific language of the Courts who have applied § 2518(8)(a). To comply with the language of the statute, the wiretaps must be immediately made available to the judge *and* sealed. *See* 18 U.S.C. 2518(8)(a) ("Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order *and* sealed under his directions.")(emphasis added). The Government cannot evade its duty to ensure the wiretaps are immediately sealed by merely stating that it made the wiretaps available to a judge. Adopting such a position impermissibly moves the burden of "immediate" sealing solely onto the issuing judge and would lead to a wide-disparity in the amount of time which Courts should consider to constitute "immediate." Rather, the statutory language and case law make clear that it is the sealing of the wiretaps that results in compliance with the statute. *See e.g., Quintero*, 38 F.3d at 1325 (explaining that in *Ojeda Rios* the "Supreme Court determined that, pursuant to § 2518(8)(a), a *seal* had to be 'obtained *immediately* upon expiration of the underlying surveillance order.'") (first emphasis added); *Carson*, 969 F.2d at 1492 ("Whether a *sealing* occurred as soon as practical after the expiration of an order is a question of fact for the district court."). A Court's purported unavailability, particularly when its alleged duration is more than several days, goes to the analysis of whether the Government has offered an objectively reasonable and satisfactory explanation

for a delay in sealing, and not, as the Government suggests, whether the sealing was done "as soon as practical." Here, a delay of approximately 37 days between the termination of the Powell wiretaps and the sealing thereof, and a delay of approximately 32 days between the termination of the Rinaldi wiretaps and the sealing thereof, is far too lengthy to be considered "immediate", even if the Court were to accept that the tapes were made available "as soon as practical."[3]

The Court thus moves to the Government's second argument. In the alternative, the Government argues that "if the Court finds that the sealing of the wiretaps was delayed, the government's evidence provides a 'satisfactory explanation' that is objectively reasonable and that justifies the delay." (Doc. 192, at 17).

Preliminarily, when looking at the entirety of the time periods during which the Powell wiretaps and Rinaldi wiretaps remained unsealed, this elapsed length of time, on its face, cuts against the Government's arguments that it has a set forth one or more satisfactory explanations which justify the delay. The Third Circuit has instructed that, while not dispositive, "[t]he length of a sealing delay is a relevant factor in considering whether an explanation is satisfactory." *Carson*, 969 F.2d at 1498. Here, over 30 days passed between the termination of the Powell wiretaps and their sealing as well as between the termination of the Rinaldi wiretaps and the sealing thereof. This amounts to a significant

---

[3] Nonetheless, with respect to the Powell wiretaps, for reasons discussed *infra*, the Court rejects the argument that these wiretaps were made available "as soon as practical." Rather, the admissibility of those wiretaps rests on whether the Government has provided the requisite objectively reasonable and satisfactory explanation for a delay in sealing

21

amount of time between the termination of the surveillance (or for that matter the expiration of the order) and the sealing order entered on September 10, 2018. Nonetheless, in an attempt to minimize this substantial delay, the Government breaks the 37-day and 32-day delays into smaller fragments of time, attempting to offer objectively reasonable justifications for each time period.

With respect to the Powell discs, the Government asserts that these discs arrived in Scranton on August 8, 2018, and that "any delay in sealing the Powell discs between August 8 and August 14 should be excused by the unexpected demands of the investigation which arose with the unplanned arrests of Dwayne Brown, Michael Rinaldi, and Andrew Henry and the termination of the second wire." (Doc. 192, at 18).

The Government's assertion here appears contrary to its statement earlier in its brief wherein it asserted that after the "Powell discs" arrived in Scranton on Thursday, August 9, 2018, the "AUSA notified Judy Malave in Judge Mariani's chambers via telephone to discuss the sealing of the discs" and that "[t]o the best of the . . . AUSA's recollection, the decision was made on that call to seal [the Powell and Rinaldi] recordings at the same time, when the Rinaldi discs arrived." (Id. at 5). This discrepancy in the explanations set forth by the Government raises a significant issue of whether the Government's statement that the time period from "August 8 and August 14 should be excused by the unexpected demands of the investigation which arose with the unplanned arrests of Dwayne Brown, Michael Rinaldi, and Andrew Henry and the termination of the second wire" (id. at 18) is merely

22

being impermissibly offered as a "*post hoc* rationalization", *Carson*, 969 F.2d at 1492, for the delay in sealing during that 6-day time period.

The importance of these conflicting excuses is amplified when, as here, the first excuse would not constitute a satisfactory explanation whereas case law supports the use of the latter excuse as providing an "objectively reasonable" and satisfactory explanation. The AUSA admits that a decision was made, purportedly in consultation with this Court's Courtroom Deputy, to delay sealing the Powell recordings because there was a belief that "the Rinaldi wire would *likely* be terminated" (Doc. 192, at 5) (emphasis added) and the wiretaps could therefore be sealed together the following week. This decision, made without consultation with the undersigned, is unrelated to any administrative issues or delays or any objectively reasonable causes "like understandable mistakes of law and interference from unexpected, extrinsic events beyond the government's control," *Carson*, 969 F.2d at 1488. Rather, it is premised solely on ease and convenience. Similar excuses have been soundly rejected by Courts as insufficient to support a satisfactory explanation. *See e.g. Quintero*, 38 F.3d at 1328-1329 (rejecting Government's argument that the AUSAs' workload was a satisfactory excuse for the delay in sealing).

In contrast, the Government's other explanation, that there were "unexpected demands of the investigation which arose with the unplanned arrests of Dwayne Brown, Michael Rinaldi, and Andrew Henry and the termination of the second wire" (Doc. 192, at 18), may provide an objectively reasonable and satisfactory explanation for the delay in

23

sealing the Powell tapes. In *United States v. Massino,* the Second Circuit reversed the

District Court's order of suppression, finding that the Government's explanation for the

sealing delay was satisfactory. 784 F.2d 153 (2d Cir. 1986). There, the Government

explained that a fifteen-day delay in sealing was "caused by an investigation into a leak in

the electronic surveillance project" and "the government, fearful that the Ruggiero

investigation and other ongoing sensitive inquiries might be irreparably harmed by the

unknown leak, and that confidential informants might be exposed and endangered, devoted

its manpower to finding the leak." *Id.* at 154-155. The Second Circuit explained:

> Consideration of the relevant factors . . . leads to the conclusion that the
> government has provided a satisfactory explanation for the sealing delay. In
> the defendants' favor are the length of the delay which is among the longest
> we have been willing to tolerate, and the fact it resulted from a deliberate
> decision to divert personnel. Also in defendants' favor is the fact that the
> administrative task of duplication . . . was not necessary here since
> simultaneous duplicate tapes were made during the course of the surveillance.
>
> Weighing in the government's favor are the serious nature of the leak and the
> lack of foreseeability that a large investigation would be needed. The existence
> of a leak threatening to undermine a large-scale organized crime investigation
> and possibly to expose and endanger confidential government sources is an
> urgent matter. Both the district court and the defendants concede that the
> government was legitimately concerned with protecting its investigation; there
> is no suggestion that the diversion of manpower to the investigation was a
> facade to avoid the sealing requirement. Further, the government cannot be
> blamed for its failure to allocate in advance sufficient resources to investigate
> the leak *and* to seal the tapes, since the necessity of the former task was not
> foreseeable. The leak was first discovered on July 6, 1982, only one day before
> the sixth order expired and the Section 2518(8)(a) sealing obligation was
> triggered. In such circumstances, we believe the need to divert personnel to
> the leak investigation is a satisfactory explanation for failing to seal the tapes
> immediately. We therefore conclude that the fruits of the sixth order should not
> be suppressed.

24

*Id.* at 157-158. The Third Circuit has cited with approval this reasoning in *Massino* multiple times. *See Carson*, 969 F.2d at 1487 ("[O]n occasion", a satisfactory explanation "can be supplied by an extraneous unforeseen emergent situation") (citing *Massino*, 784 F.2d at 157); *Quintero*, 38 F.3d at 1328-1329 (quoting *Carson*, 969 F.2d at 1487 (citing *Ojeda Rios*, 495 U.S. at 266; *Massino*, 784 F.2d at 157)); *id.* at 1328 ("*Massino* . . . represent[s] a 'limited special circumstance' in which a delay attributable to events unrelated to the sealing of the tapes is found to be a satisfactory explanation.").⁴ Here, the Government sets forth the following specific assertions as evidence of a satisfactory explanation in support of its argument that any delay in sealing the Powell discs from August 8 to August 14 should be excused: that the Powell discs arrived in Scranton on August 8, 2018 on the "same date as the unexpected arrests of Brown, Henry, and Rinaldi"; that multiple search warrants were therefore "prepared and executed in two judicial districts, and criminal complaints and affidavits had to be drafted, reviewed, and filed"; that "[l]ocating and arresting Rinaldi took several hours, and over the next few days, the defendants were arraigned in Wilkes-Barre before Magistrate Judge Saporito and separate detention hearings were held"; and that "[a]dditional research was necessitated because Rinaldi was employing 'sovereign citizen' arguments with which the undersigned AUSA was unfamiliar." (Doc. 192, at 17). This

---

⁴ Although the Third Circuit has cited approvingly to *Massino*, it distinguished the facts of *Massino* in both *Carson* and *Quintero*, finding that unlike in *Massino*, the facts presented in those cases did not constitute a "satisfactory explanation."

25

explanation, if taken as true, may well present a "limited special circumstance' in which a delay attributable to events unrelated to the sealing of the tapes is found to be a satisfactory explanation", *Quintero*, 38 F.3d at 1328.

Even if the Court were to credit this second explanation offered by the Government, and accept that the Government has offered a satisfactory explanation for the delay from August 8 to August 14, 2018, such that this time period does not violate the statutory language of § 2518(8)(a), and thus should not be used as a basis for suppressing the Powell wiretaps, for the reasons set forth below, the Powell wiretaps must nevertheless be suppressed due to the sealing delay between August 14 and September 10, 2018.

The Government argues that "[w]hen the Rinaldi wire arrived on August 14, 2018, and the government made all the recordings available to the judge for sealing on August 17, 2018, the timelines for" the Powell recordings and Rinaldi recordings "merged." With respect to the Rinaldi wiretap, the Government asserts that "[t]he time between August 9, when the Rinaldi wire was terminated, and August 17 represents the time it took administratively for the recordings to be created and sent to Scranton, the orders and applications to be prepared, and the documents to be conveyed to chambers." (Doc. 192, at 18-19). The Government's argument may be, in part, meritorious to the extent that it incorporates the Government's prior argument with respect to the sealing delay of the Powell recordings from August 8 to August 14, *i.e.*, that the Government was handling "the unexpected arrests of Brown, Henry, and Rinaldi"; that at this time multiple search warrants were "prepared and executed in two

26

judicial districts, and criminal complaints and affidavits had to be drafted, reviewed, and filed"; that "[l]ocating and arresting Rinaldi took several hours, and over the next few days, the defendants were arraigned in Wilkes-Barre before Magistrate Judge Saporito and separate detention hearings were held"; and that "[a]dditional research was necessitated because Rinaldi was employing 'sovereign citizen' arguments with which the undersigned AUSA was unfamiliar" (Doc. 192, at 17). Nonetheless, the Government does not make this argument, instead merely asserting here that, for non-specific "administrative" reasons, it took 8 days for the sealing documents "to be conveyed to chambers." However, once again, this assertion – that it took until August 17 "administratively for the recordings to be created and sent to Scranton, the orders and applications to be prepared, and the documents to be conveyed to chambers" – is seemingly at-odds with the Government's previous representation that it spoke with the undersigned's Courtroom Deputy on August 14, 2018 and was told that the undersigned could not meet to seal the wiretaps until the following Monday, August 20, 2018.[5]

Regardless of this discrepancy, the Court need not resolve these factual inconsistencies because, for the reasons set forth below, the Government has failed to set forth any satisfactory explanation for the delay in sealing between August 17, 2018 to

---

[5] As already noted, it is not possible that the AUSA spoke with the Courtroom Deputy on August 14, 2018, due to her being out-of-the office for medical reasons.

September 10, 2018. The Government states that its explanation "for the remaining time,

from August 17 to September 10, 2018, is twofold." (Doc. 192, at 19). Specifically,

First, Judge Mariani, the judge who issued the interception order, was unavailable to seal the recordings until September 10, 2018. That in itself supplies a "satisfactory explanation" for the delay. Second, if the unavailability of the authorizing judge does not excuse delay because another judge should have been sought to order the sealing, then the undersigned AUSA was incorrect about the statute's requirement that the recordings be sealed by the judge who issued the interception order. In that case, that was a reasonable mistake of law, particularly given Third Circuit precedent, and constitutes a valid, "satisfactory explanation."

(Id. at 19-20). The Court addresses these explanations in turn.

The Third Circuit has not definitively decided whether a judge's unavailability, by

itself, constitutes a sufficiently "satisfactory explanation" for a delay in sealing. However,

this Court need not decide that issue herein. Despite well-researched law and arguments

set forth by the Government, its sole reason for the delay in sealing from August 17 to

September 10 fails on a fundamental basis: the Court was not continuously unavailable for

approximately three weeks. Here, the Court will take judicial notice of the public filings

reflected in its own calendar. The Court's calendar, as evidenced by the public docket,

indicates the Court was clearly in its Chambers, or elsewhere in the federal courthouse, on

the following days, and presided over a number of matters, including but not limited to:

- Monday, August 13, 2018: *Caywood v. Johnson*, 3:15-cv-1847 (pretrial conference in court in federal courthouse in Scranton at 10:00 a.m.).

- Wednesday, August 15, 2018: *F.T. v. Carbon County*, 3:17-cv-1675 (telephonic discovery/status conference conducted in Chambers at 12:00 p.m.).

- Thursday, August 16, 2018: *Hudak v. Clark*, 3:16-cv-288 (pretrial conference in court in federal courthouse in Scranton at 11:30 a.m.); *United States v. Wright*, 3:16-cr-255 (sentencing at federal courthouse in Scranton at 3:00 p.m.).

- Monday, August 20 -Tuesday, August 21, 2018: *Caywood v. Johnson*, 3:15-cv-1847 (two-day trial at federal courthouse in Scranton).

- Friday, August 24, 2018: *Robinson v. Tennis*, 3:11-cv-1724 (pretrial telephonic conference conducted in Chambers at 10:30 a.m.); *Wayne Land and Mineral Group, LLC. v. Delaware River Basin Commission*, 3:16-cv-897 (telephonic case management conference conducted in Chambers at 11:45 a.m.).

- Monday August 27 - Wednesday, August 29, 2018: *Hudak v. Clark*, 3:16-cv-288 (three-day trial at federal courthouse in Scranton).

- Tuesday, September 4 - Thursday, September 6, 2018: *Robinson v. Tennis*, 3:11-cv-1724 (three-day trial at federal courthouse in Scranton).

In addition to the aforementioned dates wherein the Court was conducting public

proceedings or conferences in Chambers,[6] the Court's personal court calendar reflects that

the only business day between August 13 and September 10, 2018, wherein the

undersigned was not in the office was August 23, 2018. Thus, counsel's assertion that the

Court was unavailable, or "may have been on vacation" for part of the time in question (Doc.

192, at 7), is belied by the record. It must also be noted that the "Court Calendar", a

calendar which sets forth all public proceedings for all Judges presiding in Scranton and

Wilkes-Barre, is sent to a large number of individuals and offices, including one or more

representatives of the U.S. Attorney's Office for the Middle District of Pennsylvania. A brief

---

[6] The matters identified herein as having been on the Court's public and/or business calendar did, in fact, take place as scheduled during the time periods set forth above.

review of the Court Calendar for the weeks August 13, August 20, or August 27, would have revealed to the AUSA and any other members of the U.S. Attorney's Office that the undersigned was clearly present in the Scranton Federal Courthouse.

The record further reflects that counsel emailed the Court on the afternoon of August 23, 2018 requesting to see the undersigned that same day, which was the only day during the three-week period at issue on which the undersigned was, indeed, unavailable. The emails of August 23 are the *only* emails of record after August 17, 2018, in which counsel, or any other individual in the U.S. Attorney's Office, requested to see the undersigned with respect to the sealing orders. Counsel's second email of August 23, 2018 states that he was "leaving for vacation after today until 9/4" and requested that the Court "let me and Sarai know when it can be done tomorrow or next week and someone else can stand in for me?" (Email from AUSA Camoni to Judith Malave, dated August 23, 2018, Doc. 192-4). The Government explains that he thereafter "made arrangements with his assistant to enlist the duty AUSA for the week while the undersigned was on vacation so the wires could be sealed as soon as the Judge was available. Had Ms. Malave called and said that the Judge was available to seal the recordings, an AUSA and TFO Kaluzny would have been able to appear immediately to conduct the procedure." (Doc. 192, at 7). Notably absent from counsel's explanation is any assertion that during this time period any person from the U.S. Attorney's Office ever attempted to contact the undersigned's Chambers, either via email, telephone, or in person, to schedule a day or time for the undersigned to review and sign the sealing

30

orders. Instead, counsel unilaterally and impermissibly shifted the burden for obtaining the
sealing orders during the time period of August 24 to September 4, 2018, on to this Court.
*See Carson*, 969 F.2d at 1492 ("Section 2518(8)(a) imposes an affirmative duty on the
prosecutor and the government . . . .") (quoting *Massino*, 784 F.2d at 158). The
Government's present assertion, that because the Court did not contact its office, it was
somehow relieved of any responsibility for 10 days to attempt to obtain the necessary sealing
orders and thus has presented a "satisfactory explanation" for the failure to obtain the sealing
orders during this time is without merit. This is particularly so where there is no evidence that
counsel was told that the undersigned was unavailable for one or more of the days between
August 24 through September 4, 2018, or that the undersigned's office agreed to contact the
Government during this time period when the undersigned was available.

The Government further argues that, with respect to the period of time from August
17 to September 10, 2018, "if the unavailability of the authorizing judge does not excuse
delay because another judge should have been sought to order the sealing, then the
undersigned AUSA was incorrect about the statute's requirement that the recordings be
sealed by the judge who issued the interception order. In that case, that was a reasonable
mistake of law, particularly given Third Circuit precedent, and constitutes a valid,
'satisfactory explanation.'" (Doc. 192, at 19).

The Government's argument that it was unaware that the unavailability of the
authorizing judge does not excuse delay or that the Government could request that another

31

judge sign the sealing orders also fails upon review of the specific facts of this case. Although this Court notes that the issue of whether "the absence of the supervising judge, in and of itself, is sufficient excuse for any delay in sealing" has not been definitively decided by the Third Circuit, case law for over twenty-years has held that the issuing judge need not be the same judge who orders the sealing of the wiretaps. *See Quintero*, 38 F.3d at 1330 (noting that where the supervising judge is unavailable "any judge in the district can order the tapes sealed."); *id.* (noting the Second Circuit's statement in *United States v. Vazquez*, 605 F.2d 1269, 1280 n.25 (2d Cir. 1979) "that 'tapes sealed by a judge other than the "issuing judge," because of the absence or unavailability of the latter, are considered properly sealed'" and explaining that "[t]his language in *Vazquez* was the express basis for the Second Circuit's later decision in [*United States v. Rodriguez*, 786 F.2d 472 (2d Cir. 1986)] that it would no longer consider a judge's unavailability as a satisfactory excuse for a sealing delay."). Indeed, the practice of requesting that, when the issuing judge is unavailable, another judge sign a sealing order, has been in practice in the Third Circuit since at least the 1990s. *See e.g., United States v. Williams*, 124 F.3d 411, 430 (3d Cir. 1997) (even if three day delay in sealing was not considered "immediate", *where government learned that issuing judge would be unavailable to seal tapes on the day the order expired (Friday) and thus requested that a substitute judge be appointed to seal the tapes*, and where substitute judge informed government the tapes would be sealed on the following Monday, the government's "reliance on the judge's decision to wait until Monday

32

was certainly reasonable, and consequently the delay was excusable."). *Cf. United States v. Cline*, 349 F.3d 1276, 1284-1285 (10th Cir. 2003) ("[O]nce the wiretap terminated, the government immediately contacted the issuing judge to present the recordings for sealing. The judge informed Agent Ryan and AUSA Litchfield that, due to the judge's scheduling problems, the next available time for the government to present the recordings would be in a week, and directed the AUSA to come back then. *While the government could have sought another judge to have the recordings sealed*, there is no evidence of bad faith and no indication that the recordings were tampered with or that there was any tactical advantage gained by waiting the week to have Judge Holmes seal the tapes. Other courts have similarly accepted the issuing judge's scheduling problems as an acceptable excuse for a delay.") (collecting cases) (internal citation omitted). *But see, Bansal*, 663 F.3d at 651 (ten-day delay in sealing was "compounded by a great deal of confusion", including "as to where the sealing order should be submitted" when the supervising judge was unavailable).

Furthermore, although the issue of whether the issuing judge's unavailability or absence, in and of itself, is a sufficient excuse for any delay in sealing, has not been conclusively decided by the Third Circuit, and Courts have found this to be a sufficient excuse when looking at time periods of several days, the Government has not provided, nor has this Court found, any case wherein a Judge's purported unavailability for a period of *several weeks* has been found to be a sufficient excuse where that is the only excuse provided by the Government for the delay. Rather, the Government's argument that it has

33

provided a satisfactory excuse because it claims the undersigned was unavailable for 24-days strains the limits and purpose of § 2518(8)(a). While the excuse of judicial unavailability appears to allow for a flexible approach in determining what is reasonable and has not been strictly limited to a certain time frame or number of days, Courts have generally considered such an excuse satisfactory when the delay was a matter of days, not weeks. In addition, a judge's unavailability was rarely the sole reason for any delay. *See e.g., United States v. Robinson*, 513 F.Supp.2d 169, 185-186 (M.D. Pa. 2007) (although Court found that wiretap was sealed immediately, in the alternative, where wiretap ended September 16, 2005 and issuing Judge was unavailable until September 22, 2005, the issuing Judge's unavailability would have been "a reasonable and sufficient justification for the delay."); *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994) (finding Government provided satisfactory explanation for 7-day delay where, "[i]n addition to conflicts in his schedule, the judge had to consider the . . . Christmas holiday as well as an intervening weekend. Intervening weekends, holidays, and the unavailability of the issuing judge are satisfactory explanations for *slight* delays in presenting wiretap recordings for sealing.")(emphasis added); *Cline*, 349 F.3d at 1284 (while noting that "the government could have sought another judge to have the recordings sealed", finding 7-day delay excusable where judge was unavailable due to "scheduling problems."); *United States v. Bansal*, 2006 WL 516766, at *8 (E.D. Pa. 2006)(finding that where AUSA sought sealing order on a Friday, three days after she believed the sealing requirement was triggered, and

issuing judge was unavailable until Monday, this reason, which formed part of the Government's explanation for the sealing delay, aided the Government in establishing that it had a satisfactory explanation for the delay).

Here, the Government repeatedly states that it was aware it had an obligation to immediately seal the tapes and grew increasingly concerned as the time passed without the sealing. (*See* Doc. 192, at 7-8, 22, 25). However, despite this concern, and crediting for purposes of this argument only the Government's representation that it believed the undersigned was unavailable, the record is devoid of any evidence that the Government sought to have a different judge sign the sealing orders. Thus, the first wiretap, which was terminated on August 4, 2018, was not sealed for approximately 37 days. The second wiretap remained unsealed for approximately 32 days. The Government's unilateral reliance on this Court's purported unavailability as an excuse for the delay in sealing fails to provide an objectively reasonable and satisfactory explanation for either the 37-day or 32-day delay in sealing.

The Government further states that "[b]ut for his understanding that the sealing order had to be issued by the same judge who authorized the interceptions, coupled with the unavailability of the judge, there would have been no delay in sealing." (Doc. 192, at 22) (*see also*, *id.* at 23 ("In sum, the delay in sealing was caused by the unavailability of the authorizing judge, to whom the statute required the government to make the recordings available for sealing, which it did.")). Again, the Government is faced with the fundamental

35

problem that, even assuming that it made an "objectively reasonable" mistake of law which would excuse the delay, this Court was not unavailable for the entire time period at issue.

This Court also recognizes that "an unreasonable mistake of law does not automatically lead to suppression" and that "[w]hen a government attorney's legal conclusion is found to be unreasonable, the explanation for the delay would still be an objectively reasonable 'mistake of law' if the government can show that its attorney has adequately researched the law or has otherwise acted reasonably," *Vastola III*, 989 F.2d at 1327. The burden of proof is on the government to make a showing that its attorney has adequately researched the law or has otherwise acted prudently. *Vastola IV*, 25 F.3d at 167.

Here, the Government has failed to meet its burden. Absent from the Government's arguments is any evidence, or even assertion, that the AUSA assigned to this case performed any legal research in August or September of 2018 on the issues of whether a judge's unavailability to sign a sealing order is an acceptable excuse for a delay, particularly one of significant length, and whether another judge within the Middle District could order the tapes sealed. Although the Government now sets forth the applicable law, there is no suggestion that the AUSA took any steps to properly understand the law at the time of the delay in 2018. The Government asserts that

> During the time period [of] August 8, 2018 through September 10, 2018[,] the undersigned AUSA understood Title 18, U.S.C. § 2518(8)(a) to require that the wire recordings be sealed by the Judge who authorized the Title III warrant. See 18 U.S.C. § 2518(8)(a) ("[S]uch recordings shall be made available *to the judge issuing such order* and sealed under his directions.") (emphasis added). Discussions with [his direct supervisor] reinforced that understanding, as [his

36

supervisor] urged the undersigned to continue to contact Judge Mariani's chambers, and did not instruct the undersigned to contact another Judge to seal the discs. At the time, the undersigned had handled one other case involving Title III interceptions, and the recordings in that case were sealed by the same Judge who authorized the wiretaps. None of the DOJ guidance on Title III wiretaps, nor the relevant training the undersigned received, addressed the singular situation of an unavailable judge at the time of sealing.

(Doc. 192, at 9). In addition, the AUSA states that he "spoke with [his direct supervisor] several times about the difficulty in arranging a time for sealing the wires, and [his supervisor] expressed concern over the delay" but that his supervisor "did not instruct the undersigned to contact another Judge to seal the discs." (*Id.* at 7-8). None of these explanations sufficiently demonstrate that the AUSA in this case took adequate steps to satisfy the requirement of acting "as a reasonable attorney."

As previously explained, *supra,* a Government attorney's research which consists only of "reading and outlining the statute [the Wiretap Act] and reviewing the relevant annotations", standing alone, is not adequate to demonstrate that the attorney was acting as a reasonable attorney, and an attorney's conversations with other attorneys, standing alone, may also be insufficient. *Vastola IV,* 25 F.3d at 168. However, "when an attorney receives confirmation of legal theories from a number of proper sources, each consistent with the next, the attorney can act reasonably in relying on these theories in the course of legal research." *Id.* at 168-169. Thus, the combined impact of these "concurring sources" can create a degree of certainty "which a prudent attorney could have accepted in arriving at an appropriate procedure for sealing." *Id.* at 169. Here, the Government in essence admits to

a lack of comprehensive knowledge as to the requirements of § 2518(8)(a) in circumstances such as the one presented in this case. Instead, the Government's counsel merely rests on assertions that he "understood Title 18, U.S.C. § 2518(8)(a) to require that the wire recordings be sealed by the Judge who authorized the Title III warrant" and that "[n]one of the DOJ guidance on Title III wiretaps, nor the relevant training the undersigned received, addressed the singular situation of an unavailable judge at the time of sealing."[7] Nor does counsel assert that he received "confirmation of legal theories from a number of proper sources", *Vastola IV*, 25 F.3d at 168, or that his supervisor ordered him to proceed in a particular manner. Instead, Government's counsel admits that both he and his supervisor had "concern[s] over the delay" but fails to state that he undertook any measures to perform legal research to confirm that he was not violating § 2518(8)(a), particularly in light of his admitted lack of instruction by the DOJ on this issue.

For these reasons, this Court cannot say that, despite the unreasonable mistakes of law that were made, the AUSA nevertheless conducted himself reasonably under the circumstances in light of the lack of any indication that Government's counsel took steps to determine the applicable law or otherwise act prudently. *See Vastola IV*, 25 F.3d at 167, 169 n.6.

---

[7] Government counsel further admits in a footnote that "[u]ntil conducting the research for this brief, [he] was unaware of the *Quintero* decision" and the statement therein that "any judge in the district can order the tapes sealed." (Doc. 192, at 20-21, 21 n.1)(quoting *Quintero*, 38 F.3d at 1330). Counsel attempts to minimize this admission by arguing that the afore-quoted statement in *Quintero* is dicta and the Third Circuit "cit[ed] to no authority" in making the statement. (Doc. 192, at 20-21). Third Circuit pronouncements such as that at issue here cannot, and should not, be so easily dismissed.

Nor can the Government rely on any "mistake of fact" to supply a satisfactory explanation for the delay in sealing. Even if the Government were to assert (which it does not) that its belief that the undersigned was unavailable for over three weeks constitutes an objectively reasonable mistake of fact, as set forth in this memorandum opinion, *supra*, such a belief is refuted by the Court's calendar, which undisputedly demonstrates that the undersigned was in the federal courthouse for the three weeks at issue, and the Government's failure to take reasonable measures to determine the undersigned's availability or to contact the undersigned in person, either by coming to the Courtroom where the undersigned was in proceedings and requesting a brief meeting during recess, or by coming to the undersigned's Chambers where the undersigned's office and U.S. Attorney's office are in the same building.

Although the Government fails to raise the issue, the Court also feels compelled to address the fact that only a 10-day period exists from the *expiration* of the Rinaldi wiretap order to the date of the sealing order. The Third Circuit has not definitively ruled on whether the time for the sealing of wiretaps runs from the date the actual surveillance ended, or when the sealing order expires. If this Court were to find that the Government had no responsibility to seal the Rinaldi wiretaps until "as soon as practical" after the expiration of the wiretap order on or about August 31, 2018, the 10-day delay in sealing from that time could result in the Court denying the motion to suppress the Rinaldi wiretaps.

In *Vastola II*, the Third Circuit noted that "a sealing delay indeed occurred as the

West Long Branch tapes should have been sealed *either* as soon as was practical after May

31, 1985, when the actual surveillance ended, *or* as soon as practical after June 13, 1985,

when the final extension order expired." 915 F.2d at 875 (emphasis added). As the Third

Circuit explained in a footnote,

> The government argues that the length of the sealing delay should be measured from June 13, 1985, when the final extension order expired. There is certainly support for that position as the statute states that the government's sealing obligation arises "[i]mmediately upon the expiration of the period of the order, or extensions thereof ..." 18 U.S.C. § 2518(8)(a). *See United States v. Harvey,* 560 F.Supp. 1040, 1057 (S.D.Fla.1982), *aff'd,* 789 F.2d 1492 (11th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 124 (1986) ("Case law clearly holds that the tapes do not have to be sealed until the end of the extension orders, i.e., at the termination of the entire surveillance."). Furthermore the Supreme Court in [*Ojeda*] *Rios* read section 2518(8)(a) literally. We also observe that it might not be clear that a surveillance has ended as an interruption could be viewed at the time only as a hiatus. There is, however, a basis to support appellants' contention that there should have been sealing as soon as practical after the surveillance ended. Section 2518(5) seems pertinent to situations where a surveillance terminates before expiration of the final interception order, and it provides that "[n]o order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization...." Furthermore, the legislative history indicates that: "The period of authorized interception is intended to begin when the interception – in fact – begins and terminates when the interception – in fact – terminates." S.Rep. No. 1097, 90th Cong., 2d Sess. 107, *reprinted in* 1968 U.S.Code Cong. & Admin.News, at 2112, 2192. Here we need not resolve the issue as even taking the June 13, 1985, date it cannot be said that the tapes were made available to the judge "immediately" upon the expiration of the period of the order.

*Vastola II,* 915 F.2d at 875 n.16. *See also, Williams,* 124 F.3d at 429 ("The term

'immediately' means that the tapes should be sealed either as soon as practical after the

surveillance ends or as soon as practical after the final extension order expires.") (citing

*Vastola II*, 915 F.2d at 875); *United States v. Mastronardo*, 987 F.Supp.2d 545, 558 n.8

(E.D. Pa. 2013) ("Whether the government must seal the tapes upon the termination of

surveillance or the expiration of the order authorizing the wiretaps is an open question in the

Third Circuit.").

The Third Circuit recently again re-iterated that the issue of when wiretap tapes must

be sealed remains undecided in this Circuit. In *United States v. Scott*, the Circuit noted that:

the plain language of the relevant statute suggests that the Marchant evidence
was timely sealed. Wiretap evidence must be sealed "[*i*]*mmediately upon the
expiration of the period of the order*, or extensions thereof[.]" 18 U.S.C. §
2518(8)(a) (emphasis added). In this case, surveillance of Marchant ended with
his arrest on June 2, 2010, and the wiretap evidence was sealed on June 10,
2010. The Marchant wiretap order, however, did not expire until June 25, 2010.
Thus, the evidence was sealed even before the time required by the plain
language of the statute. Despite that plain language, and as the District Court
noted, we have suggested that the relevant statutory scheme might require the
sealing of wiretap evidence as soon as practical after surveillance ends. *See
United States v. Vastola*, 915 F.2d 865, 875 n.16 (3d Cir.1990). In light of
Scott's waiver or forfeiture of this issue, we decline to resolve it in this case.

*United States v. Scott*, -- F.App'x --, 2019 WL 4463785 (3d Cir. 2019).

In the present cases, August 31, 2018, the date of the expiration of the Rinaldi

wiretap, was a Friday. The following Monday, September 3, 2018, was Labor Day.

Nonetheless, because the Rinaldi wiretaps were not sealed until the following Monday,

September 10, this Court cannot say that the sealing was "immediate". Nor, in light of this

Court's prior analysis, has the Government offered a satisfactory explanation for the 10-day

delay. Had the Rinaldi wiretaps been sealed the week of September 3, 2018, after the

passage of only one holiday weekend, this Court's analysis may be different. *See Carson,* 969 F.2d at 1498 (Where 5 days passed between the expiration of a wiretap order and the sealing of the tapes, finding that the tapes were sealed as soon as was practical when taking into consideration the "intervening weekend."); *id.* (where the tapes were sealed 6 days after expiration of wiretap order, the time of which included an intervening weekend, the tapes were sealed "immediately"); *but see, Quintero,* 38 F.3d at 1327 n.7 ("We are aware that we discounted weekend days in *Carson* in the situation of a taping order expiring on a Wednesday and tapes being sealed the next Monday and of an order expiring on a Thursday and the tapes being sealed the next Wednesday. We held there that the tapes were sealed immediately. However, eliminating the days of one intervening weekend is very different from eliminating the days of multiple intervening weekends. We do not address here the propriety of subtracting the days of multiple intervening weekends in determining the length of the delay.") (internal citation omitted). In addition, the Court must look to the purpose of § 2518(8)(a): "to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *Ojeda Rios,* 495 U.S. at 264. It is difficult to fathom that, where surveillance ended on August 9, 2018, the Government would be free from any responsibility to obtain a sealing order for 21 days where that time period may place at risk the reliability and integrity of that evidence. Thus, regardless of whether the time for the sealing of wiretaps under § 2518(8)(a) runs from the date the actual surveillance ended, or from when the sealing order

expired, the Rinaldi tapes were not sealed "immediately" nor has the Government provided a

satisfactory explanation for the sealing delay that was objectively reasonable.

For the reasons set forth in this Memorandum Opinion, the Court will grant the

Defendant's motion to suppress the Powell and Rinaldi wiretaps, but with the limited remedy

to be issued as discussed, *infra*. Although Courts will frequently hold a hearing to determine

whether the Government can establish a satisfactory explanation for a delay in sealing,

such a hearing is not necessary in this case. In *Carson*, the Third Circuit explained:

> [i]n *Vastola II,* we held that the government is entitled to present reasons for
> sealing delays after trial when it has not previously been on notice that such
> reasons were required. *See Vastola II,* 915 F.2d at 875. The government
> cannot, however, present new reasons for sealing delays when it has already
> given a reason for delay at the suppression hearing. *See Ojeda Rios,*495 U.S.
> at 267, 110 S.Ct. at 1851.

969 F.2d at 1493.

Here, the Government was on notice that reasons for the delay in sealing the Powell

and Rinaldi wiretaps were required. Indeed, the Government filed a 28-page brief in

opposition to Defendant's motion to suppress the wiretaps, setting forth a number of

reasons it contends justify any delay in sealing mandated under § 2518(8)(a). With respect

to the longest time period at issue, August 17 to September 10, 2018, the Government's

"twofold" explanations setting forth the reasons that this delay is excusable – the

undersigned's purported unavailability and counsel's admitted lack of knowledge that he

could request that another judge in the District order the sealing of the wiretaps – cannot be

salvaged by any testimony at a hearing. First, as already explained, the Government's

assertion that the undersigned was unavailable for 24 days is both strongly negated by the

record, including the public Court calendars which were available to counsel, and defies

common logic and reason. If counsel believed that the undersigned was unavailable for a

period of time over three weeks, it was incumbent upon the Government to take steps,

including legal research, to determine whether there were any other ways to obtain a

sealing order. Second, with respect to counsel's assertion that he was unaware he could

seek a sealing order from a different judge, a hearing would equally be futile. As set forth in

this Memorandum Opinion, counsel has already explained that he was unaware of the

relevant law on this issue and he did not take any steps to determine whether there were

alternatives to obtaining the necessary sealing orders. With respect to both of its

assertions, the Government has been afforded the opportunity to provide this Court with any

documentary evidence in support of its position and has done so in submitting to the Court

certain emails it deems relevant (Docs. 192-1 to 192-4) and pictures of the sealing orders

and evidence bags (Doc. 192-5), as well as previously filing the applicable wiretap

applications and orders (see Docs. 150-1 to 150-6). Any testimony which may be presented

at a hearing could only consist of *post hoc* rationalizations and could not serve to alter this

Court's analysis. In addition, despite its ability to request a hearing, the Government has

not made any such request. Instead, the Government only states that "[i]f the Court finds

that there are disputed issues of material fact, the government stands ready to provide

evidence at a hearing . . ." (Doc. 192, at 10). As explained, *supra*, there are no material

facts in dispute which could alter this Court's analysis.

Finally, although the Court will grant Defendant's motion to suppress the Powell and

Rinaldi wiretaps, the Court emphasizes that the parties must recognize the limitations of this

ruling.

First, Rinaldi's passing assertion that "all evidence seized as a result of the

recordings should be suppressed as fruits of a poisonous tree" (Doc. 161, at 7) is without

legal support. *See United States v. Amanuel*, 615 F.3d 117, 128-129 (2d Cir. 2010)[8];

_____

[8] In *Amanuel*, the Second Circuit explained:

our case law is clear that the prohibition on the use of improperly sealed evidence in sworn testimony will not preclude the use of such evidence either to pursue an investigation or to prove up the fruits of such investigation at trial. *United States v. Donlan*, 825 F.2d 653, 656 (2d Cir.1987) (noting that "Congress clearly intended" that law enforcement officers be able to use "untimely sealed conversations in testifying before a judicial officer to obtain an arrest or search warrant"). In other words, "the prohibition in subsection 2518(8)(a) on derivative use at trial of improperly sealed tapes is not to be applied strictly to prohibit use of all evidence that can be connected through a chain of causation to a wiretap tainted by improper sealing." *Id.* at 657.

The exclusionary remedy in § 2518(8)(a) applies to the unsealed interceptions at issue in this case. As the pager wiretap evidence before us violated the recording and sealing requirements, the proper remedy to address those errors is the prohibition of the use of those interceptions in ways that would otherwise be permitted by § 2517(3). In this regard, the district court did not err in concluding that the Government is prohibited from offering testimony—at trial or in any other proceeding—regarding the contents of the pager interceptions. The remedy of exclusion provided for in § 2518(8)(a) does not, however, apply to preclude the use of those interceptions in ways authorized under subsections (1) and (2) of § 2517. Accordingly, the Government is not prohibited from offering evidence obtained through warrants that were based on the pager interceptions. That use of the tainted wiretap evidence does not fall under § 2517(3) and, thus, is not affected by the exclusionary remedy in § 2518(8)(a). The pager wiretap evidence before us, though inadmissible, was not obtained in violation of the Constitution and, therefore, the fruits derived from that evidence may not be suppressed.

615 F.3d at 128-129.

*United States v. Garcia-Guia*, 468 F.App'x 544, 550 (6th Cir. 2012)(citing approvingly to *Amanuel*'s analysis of § 2518(8)(a) and its statement therein that "the fruits derived from [untimely sealed wiretaps] may not be suppressed."); *United States v. Saucedo*, 446 F.Supp.2d 824, 827 (N.D.Ill. 2006) (acknowledging that § 2518(8)(a) "prohibits the use of improperly sealed recordings at trial under § 2517(3), but allows the recordings to be used for investigative purposes under §§ 2517(1) and § 2517(2)" and thus "the statute leaves open the question of whether evidence obtained through an investigation that was based upon improperly sealed recordings is admissible at trial, or should be excluded as evidence derived from the improperly sealed recordings", and finding persuasive Second Circuit opinions and reasoning on this issue.); *Curry v. United States*, 2015 WL 733274, *6 (D.N.J. 2015) (noting that the Third Circuit has never held that the fruits of improperly sealed wiretap conversations are subject to suppression under 18 U.S.C. § 2518). Here, neither party has provided this Court with any law with respect to whether evidence seized as a result of an untimely sealed wiretap should be suppressed. However, in light of the absence of controlling law within the Third Circuit, the Court finds the Second Circuit's reasoning persuasive and will deny the motion to suppress to the extent that it seeks to suppress any and all evidence "connected through a chain of causation to a wiretap tainted by improper sealing", *Amanuel*, 615 F.3d at 128. Rather, only evidence such as the "transcripts, duplicate tapes, work copies and testimonial summaries" of the intercepted

conversations will be suppressed due to the Government's untimely sealing of the wiretaps.

*See United States v. Donlan,* 825 F.2d 653, 657 (2d Cir. 1987).[9]

Second, despite this Court's ruling herein, the Court notes that this decision should

not be interpreted as entirely and conclusively precluding the suppressed wiretaps at trial.

Rather, as the Court noted in *Quintero*,

> There is precedent . . . to support the admission of the content of the tapes for
> impeachment purposes even if the tapes were inadmissible on the merits of the
> government's case. In view of [Defendant] Gonzalez-Rivera's testimony on
> direct examination about his relationship with Memo, the tapes of the calls
> could have been used to attack Gonzalez-Rivera's credibility. Even though the
> two conversations should not have been admitted during the government's
> case-in-chief, unlawfully obtained evidence may be used to impeach the direct
> testimony a defendant gives at trial. *See Walder v. United States,* 347 U.S. 62,
> 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954). In *Walder,* the Supreme Court held
> that it was permissible for the government to use testimony regarding drugs
> obtained in an illegal search to impeach the testimony of the defendant that he
> had never possessed any narcotics.

*Quintero,* 38 F.3d at 1333; *see also, id.* at n.13.

---

[9] The Court finds persuasive the Second Circuit's rationale in *Donlan* for limiting the scope of the
evidence suppressed as a result of untimely sealing.

> It would be especially unwarranted to apply subsection 2518(8)(a) to bar use of the
> challenged evidence on the facts of this case in light of the sequence of pertinent events.
> The intercepted conversations were used as justification for the stop and search of Donlan's
> car on August 30. The wiretap did not end until September 5. Thus the use of the wiretapped
> conversations to obtain derivative evidence occurred before a sealing obligation even arose
> and obviously long before the point at which the delay in meeting that obligation became
> unjustified. It would require a needlessly rigid construction of subsection 2518(8)(a) and an
> undue emphasis on deterrence to read the derivative use proscription of the subsection to
> bar evidence resulting from intercepted conversations used to obtain that evidence several
> days before the sealing requirement was violated.

*Donlan,* 825 F.2d at 657-658. Similar to *Donlan,* here, at the time of Rinaldi's arrest on August 8, 2018, the
Rinaldi wiretap order had not yet expired or been terminated by law enforcement.

Thus, any and all evidence "connected through a chain of causation to a wiretap tainted by improper sealing" will not be suppressed pursuant to this Court's Memorandum Opinion and, in limited circumstances, the suppressed wiretaps may be admissible for purposes recognized by the cases cited herein.

## III. CONCLUSION

For the above-stated reasons, Defendant Rinaldi's Supplemental Pre-Trial Motion (3:18-cr-279, Doc. 161; 3:18-cr-280, Doc. 165) requesting that the wiretaps of himself and co-defendant Steven Powell be suppressed due to the Government's failure to timely seal the wiretaps will be granted in part and denied in part as set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge