## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:18-CR-279** |
| | : | **(JUDGE MARIANI)** |
| **MICHAEL RINALDI,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Michael Rinaldi's "Motion to Dismiss" (Doc. 259).

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi, Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846.  (*See* Doc. 37).

On January 16, 2019, at the request of Defendant Rinaldi, the Court held a hearing in accordance with *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Defendant Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant Rinaldi understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted

to represent herself.  Following this colloquy, the Court determined that Mr. Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding *pro se* and therefore granted Mr. Rinaldi's request to represent himself.  The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

Beginning in December of 2018 and through November, 2019, Defendant Rinaldi continually filed a number of *pro se* pretrial motions. By December 18, 2019, this Court had ruled on approximately 18 substantive pre-trial motions filed by Defendant (*see e.g.* Docs. 207-211), and had addressed a number of other motions, requests, and issues raised by Defendant with respect to difficulties as to receipt and review of materials, including discovery, due to his *pro se* status, as well as inquiries into jury selection (*see e.g.* Docs. 138, 140, 144, 158, 181).

On January 21, 2020, the Government filed a First Superseding Indictment (Doc. 220), charging Michael Rinaldi with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846 (Count I) and with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (Count II).  (Doc. 220).  Upon review of the indictments and as outlined by the Government in its "Notice Regarding Superseding Indictment" (Doc. 224), the differences between the original Indictment and the First Superseding Indictment are as follows: (1) the Superseding Indictment applies only to

2

Michael Rinaldi; (2) the Superseding Indictment amends Count I to plead facts establishing Rinaldi's prior drug conviction; (3) Count I was amended to allege that the conspiracy began in November of 2017, rather than July of 2018, and that Rinaldi conspired to traffic heroin and marijuana in addition to cocaine and cocaine base; (4) the Superseding Indictment adds Count II, alleging Distribution and Possession with Intent to Distribute Cocaine; and (5) the Superseding Indictment adds a forfeiture count.

On January 31, 2020, this Court issued two Orders scheduling trial in Defendant's criminal action.  In so doing, the Court explained:

> As of January 31, 2020, with the exception of Rinaldi's motion for reconsideration (Doc. 218) [filed January 16, 2020], requesting that this Court reconsider a portion of its opinion and order granting in part and denying in part Defendant's motion to suppress due to the untimely sealing of wiretaps, each of Defendant's pre-trial motions have been either decided or withdrawn at the request of Defendant.  Thus, in accordance with the provisions of the Speedy Trial Act, the Court will schedule trial on Count I of the Superseding Indictment to begin within the time remaining under 18 U.S.C. § 3161.  However, because the time remaining on the Speedy Trial clock with respect to Count I is less than thirty days, and Count II of the Superseding Indictment is subject to a new speedy trial period and, absent written consent by Defendant, trial cannot commence on Count II less than thirty days from the date on which Defendant was arraigned on that charge, *see* 18 U.S.C. § 3161(c)(2), the Court will schedule separate trials on Count I and Count II.

 (Doc. 240, at 2-3; *see also,* Doc. 241, at 2-3).  A jury trial on Count I of the Superseding Indictment was therefore scheduled to commence on February 11, 2020 (Doc. 240), and a jury trial on Count II of the Superseding Indictment was scheduled to commence on March 2, 2020 (Doc. 241).

However, on February 3, 2020, Defendant Rinaldi filed a "Motion to Suppress", moving to suppress "any and all evidence obtained as a result of the search" of a Black Lexus (Doc. 243) and a "Motion to Dismiss" requesting that the Court dismiss the indictment against him on a number of bases and that the Court also construe this motion as a Motion for a Bill of Particulars (Doc. 245).  As a result of Defendant's filing of these motions one week prior to the commencement of trial on Count I, the Court found that "upon consideration of [the motions], the issues raised therein, and the time necessary to brief the motions and fully evaluate the parties' arguments", trial on both Counts must be cancelled and would be re-scheduled following the disposition of Defendant's motions.  (Doc. 248).  The Court excluded the time between February 3, 2020 and the date on which Defendant's pre-trial motions were decided from Speedy Trial calculations pursuant to 18 U.S.C. § 3161(h)(1)(D).

On February 13, 2020, Defendant filed a second "Motion to Dismiss" (Doc. 259), asserting that "the indictment should be dismissed with prejudice for a violation of his speedy trial rights."

The Court addresses in this Memorandum Opinion Defendant's second Motion to Dismiss (Doc. 259) and, for the following reasons, will deny this motion.

## II. ANALYSIS

Rinaldi's second "Motion to Dismiss" (Doc. 259) asserts that the indictment "should be dismissed with prejudice for a violation of his speedy trial rights" pursuant to 18 U.S.C. § 3161 and the Sixth Amendment.  The Court addresses these arguments in turn.

## A. Defendant Rinaldi's Pre-Trial Motions

For ease of reference, and because the number and substance of Defendant's pre-trial motions have a significant impact on the outcome of both the Speedy Trial Act and Sixth Amendment claimed violations, the Court sets forth a list of Defendant's pre-trial motions below, as well as their filing dates.  This list of motions does not include letters filed of record by Defendant from December, 2018, through June, 2020, which raised a number of issues largely owing to Defendant's *pro se* status, including difficulties as to the receipt and review of materials and discovery, as well as inquiries into jury selection procedures (*see e.g.* Docs. 138, 140, 144, 158, 181).

- Motion to Dismiss the Indictment (Doc. 76) (filed December 10, 2018).

- Motion to Dismiss "Pursuant to F.R. Crim. P. 12(B)" (Doc. 77) (filed December 10, 2018).

- "Request for a Bill of Particulars" (Doc. 80) (filed December 10, 2018).

- Motion to Suppress and for a *Franks* Hearing (Doc. 81) (filed December 10, 2018).

- "Motion to Challenge the Authenticity and Chain of Custody of the Government's Exhibits" (Doc. 82) (filed December 10, 2018).

- Motion to Compel Discovery (Doc. 85) (filed December 10, 2018).

- Motion for Detention Hearing (Doc. 86) (filed December 10, 2018).

- "Request to Compel" (Doc. 89) (filed December 20, 2018).

- "Request for Funding and Other Assistance Needed to Prepare a Defense" (Doc. 90) (filed December 28, 2018).

- Motions/Requests to Proceed *pro se* (Docs. 78, 79, 88 (filed December, 2018).

- "Motion for Early Disclosure of Statements Pursuant to the Jencks Act and Federal Rule of Criminal Procedure" (Doc. 103) (filed January 17, 2019).

- Motion for "Pretrial Hearing to Determine Existence of Conspiracy" (Doc. 105) (filed January 17, 2019).

- Motion for Hearing on Admissibility of Statements of Alleged Co-Conspirators (Doc. 107) (filed January 17, 2019).

- Motion "Pursuant to Rules 404(b) and 609 of Federal Rules of Evidence" (Doc. 109) (filed January 17, 2019).

- Motion to "Preserve and Disclose Notes, Reports, and Evidence" (Doc. 111) (filed January 17, 2019).

- Motion for Disclosure Pursuant to Federal Rule of Evidence 807 (Doc. 113) (filed January 17, 2019).

- Motion to Produce Memorializing of Government Interviews (Doc. 115) (filed January 17, 2019).

- "Motion to Join in the Motion of Co-Defendants" (Doc. 124) (filed February 6, 2019).

- "Motion for Production of Transcripts" (Doc. 137) (filed February 22, 2019).

- Motion for Severance (Doc. 155) (filed June 13, 2019).

- "Request to Supplement Pre-Trial Motions" (Doc. 161) – construed by Court as a motion to suppress wiretaps (filed July 10, 2019).

- "Motion for Production" (Doc. 197) (filed September 26, 2019).

- Motion for Default (Doc. 204) (filed November 15, 2019).

- Motion for Default Judgment (Doc. 205) (filed November 15, 2019).

- Motion for Reconsideration (Doc. 218) (filed January 16, 2020).

- Motion for Detention Hearing (Doc. 229) (filed January 27, 2020).

- Motion to Suppress (Doc. 243) (filed February 3, 2020).

- Motion for Production (Doc. 244) (filed February 3, 2020).

- Motion to Dismiss (Doc. 245) (filed February 3, 2020).

- Motion to Dismiss (Doc. 259) (filed February 13, 2020).

- "Objection" to Chief Judge Conner's General Order 20-1 (Supp.) (ordering the "General Continuance of Hearings and Proceedings due to Public Health Concerns") and "Request for Pre-Trial Release" (Doc. 274) (filed April 2, 2020).

- "Appeal" of Order denying pre-trial release (Doc. 290) (filed May 4, 2020).

## B.  Speedy Trial Act – 18 U.S.C. § 3161

The Speedy Trial Act ("STA") establishes time limits for completing the various stages of a federal criminal prosecution. The information or indictment must be filed within 30 days from the date of arrest or service of the summons.  18 U.S.C. § 3161(b).  The STA further provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

7

This seventy-day period is subject to expansion by periods of excludable delay.  *See Henderson v. United States*, 476 U.S. 321, 326 (1986). *See also*, *Zedner v. United States*, 547 U.S. 489, 497 (2006) (the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start. *See* § 3161(h).").  Under the Speedy Trial Act, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded from the 70-day period permitted between indictment and trial.  18 U.S.C. § 3161(h)(1)(D).  The provision broadly applies to all pretrial motions, whether they actually cause a postponement of trial. *Henderson*, 476 U.S. at 327 (exclusion is automatic).

As explained by the Third Circuit soon after the Supreme Court's decision in *Henderson*:

> Section 3161(h)(1)[(D)] excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)[(D)].

> Thus, subsection [(D)] excludes time in two situations. First, if the court holds a hearing on the motion, all of the days between the filing of the motion and the conclusion of a hearing are excluded. *See Henderson v. United States,* 476 U.S. 321, ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986). Interpreting that provision, the Supreme Court has held that subsection [(D)] also excludes any time following the hearing that is required for filing briefs and additional materials necessary for proper disposition of the motion. 476 U.S. at ——, 106 S.Ct. at 1877.

> Second, if the court does not hold a hearing, subsection [(D)] excludes the period from the filing of the motion until the parties complete the submissions necessary for the court to reach a decision. 476 U.S. at ——, 106 S.Ct. at 1876. . . .

*United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987).

Section 3161(h)(1)(D) should be read in conjunction with § 3161(h)(1)(H), which states that "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is excluded from the speedy trial time when computing the time within which trial must commence, 18 U.S.C. § 3161(h)(1)(H).  *See United States v. Williams*, 917 F.3d 195, 203 (3d Cir. 2019) (explaining that in *Henderson*, "the Supreme Court counseled parties to read the exclusions contained in section 3161(h)(1) 'in connection with' each other.") (citing *Henderson*, 476 U.S. at 328).  Thus, "'prompt disposition' of a motion—as referred to in . . . section 3161(h)(1)(D)—must be interpreted with reference to the thirty-day limitation contained in . . .  section 3161(h)(1)(H), such that 'prompt disposition' must be interpreted to mean disposition of a motion within thirty days of that motion's being 'under advisement' by a court." *Williams*, 917 F.3d at 203 (citing *Henderson*, 476 U.S. at 329).  The Third Circuit has declined to specifically decide whether the filing of multiple motions extends the thirty-day time limit set forth in 18 U.S.C. § 3161(h)(1)(H), although it has recognized that "some courts have concluded that the thirty-day limitation . . . does not apply inflexibly".  *See Felton*, 811 F.2d at 197.

Furthermore, the STA provides for periods of exclusion for:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).  When calculating includable time, "both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded."  *United States v. Lattany,* 982 F.2d 866, 872 n.6 (3d Cir. 1992).

In addition, "pursuant to section 3161(h)[(6)], 'after defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants.'" [*United States v. Novak,* 715 F.2d 810, 815 (3d Cir.1983)] (quoting *United States v. Edwards,* 627 F.2d 460, 461 (D.C. Cir. 1980))".  *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993).  *See also*, *United States v. Erby*, 419 F.App'x 176, 179 (3d Cir. 2011).

Nonetheless, "[i]f a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  The Speedy Trial Act "admits no ambiguity in its requirement that when such a violation has been demonstrated, 'the information or indictment shall be dismissed on motion of the defendant.'"  *United States v. Taylor*, 487 U.S. 326, 332 (1988) (quoting 18 U.S.C. § 3162(a)(2)).

Here, Defendant argues that the indictment should be dismissed because over 72 days of non-excludable time have passed.  (Doc. 259, at 1-3).  In turn, the Government asserts that there are only 47 days of non-excludable time.  (Doc. 266, at 5-6).[1]

**1. Defendant Rinaldi's computation of the Speedy Trial Time**

In support of Defendant Rinaldi's position, he cites to § 3161(h), seemingly arguing that none of his pre-trial motions required a hearing, and therefore that the speedy trial clock was only tolled for 30 days following each motion becoming ripe.  (*See* Doc. 259, at 1-3).

Rinaldi asserts that the following periods of time, totaling 72 days, are non-excludable for purposes of Speedy Trial calculations:

- August 21, 2018 – October 4, 2018: **43 days**
- June 8, 2019 – June 13, 2019: **4 days**
- September 22, 2019 – September 26, 2019: **3 days**
- October 26, 2019 – November 18, 2019: **22 days**
- "A few more short periods of non-excludable time"

---

[1] The Court's analysis herein with respect to whether there has been a violation of the Speedy Trial Act is largely confined to the one-count original Indictment (Doc. 37) and Count I of the First Superseding Indictment (Doc. 220).  As previously explained, the Government filed a First Superseding Indictment against Rinaldi on January 21, 2020, which among other changes, added Count II, alleging Distribution and Possession with Intent to Distribute Cocaine.  In scheduling this matter for trial on January 31, 2020, the Court explained that Count II of the Superseding Indictment is subject to a new speedy trial period (Doc. 240, at 2 & n.2)("*See United States v. Stevenson*, 2014 WL 12705000, at *3 (M.D. Pa. 2014) (holding that a charge of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. § 846 is distinct from a charge of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841 'because "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S. Ct. 1180, 1182, 90 L.Ed. 1489 (1946).'), *aff'd*, 832 F.3d 412 (3d Cir. 2016).").  At the time the Superseding Indictment was filed on January 21, 2020, Rinaldi had a motion for reconsideration pending which was not yet ripe, and, on February 3, 2020, thereafter filed two pre-trial motions, further tolling the speedy trial time. Thus, there is no basis for an assertion that the Speedy Trial Act has been violated with respect to Count II of the First Superseding Indictment.

(Doc. 259, at 2-3).

Although this Court notes that the Third Circuit has not definitively held whether the filing of multiple motions extends the thirty-day time limit set out in subsection § 3161(h)(1)(H), *see Felton*, 811 F.2d at 197, crediting Defendant's argument, solely for purposes of this motion, and assuming *arguendo* that no more than 30-days following the completion and filing of all necessary submissions on a motion may be excluded from Speedy Trial calculations, regardless of the number of pre-trial motions filed by a defendant, Rinaldi's argument still must fail.  The Court addresses the specific time periods set forth by Defendant in turn.

### August 21, 2018 to October 4, 2018

Defendant asserts that the speedy trial clock ran from August 21, 2018, when he was indicted (*see* Doc. 37), until October 4, 2018, the date upon which his counsel requested an extension of time to file pre-trial motions (*see* Doc. 63).  The Government concedes that this time is not excludable.  (Doc. 266, at 5).  However, both parties neglect to note that Rinaldi's co-defendant, Dwayne Brown, filed a motion for an extension of time to file pre-trial motions on October 1, 2018 (Doc. 58), thus tolling the speedy trial clock as of that day.  *See Arbelaez*, 7 F.3d at 347.[2]  Thus, because in calculating includable time for

---

[2] In *Arbelaez*, the Third Circuit explained:
Delay resulting from any pretrial motion, from the date of the filing of the motion through the date of the prompt disposition of the motion, is excluded from the computation of Speedy Trial Act time. *See* 18 U.S.C. § 3161(h)(1)[(D)]. Any pretrial motion, including a motion for extension of time, is a pretrial motion within the meaning of Section 3161(h)(1)[(D)] and creates excludable time, even if it does not in fact delay trial.  Moreover, pursuant to section

Speedy Trial Act purposes, the date on which a motion is filed is excluded, the Court finds that 41 days of non-excludable time passed during this time period.

### June 8, 2019 to June 13, 2019

Rinaldi next asserts that four days of non-excludable time passed between June 8, 2019, the date he asserts was "30 days after his motions were taken under advisement" and June 13, 2019, when he filed his motion to sever (Doc. 155).  (Doc. 259, at 2).  The Court agrees that, if adopting Rinaldi's position as to the 30-day statutory requirement, 4 days of non-excludable time would have elapsed.

### September 22, 2019 to September 26, 2019

Defendant contends that three days are not excludable between September 22, 2019, "which was 30 days after his supplemental pretrial motion was taken under advisement" and September 26, 2019, when he filed a motion for production (Doc. 197).  (Doc. 259, at 2).  Again, if crediting Rinaldi's position with respect to the application of the 30-day time limit following the completion of briefing, this Court agrees that 3 days would be non-excludable.

---

3161(h)(7), after defendants are joined for trial, an exclusion applicable to one defendant applies to all codefendants. Therefore, a motion for a continuance by counsel for codefendant Laracuente would create excludable days for Arbelaez.
7 F.3d at 347 (internal citations and quotation marks omitted).

**October 26, 2019 to November 18, 2019**

Defendant further admits that his motion for production, filed September 26, 2019 (Doc. 197) "arguably stopped the clock for 30 days" until October 26, 2019, when the speedy trial clock resumed running until the filing of his motions for default and default judgment (Docs. 204, 205) on November 18, 2019.  (Doc. 259, at 2).[3]  Defendant thus states that 22 non-excludable days elapsed during this time period.

Here, the Court disagrees.  On September 26, 2019, Rinaldi moved for the production by the Government for certain information to further support his motion to suppress (Doc. 197).  Rinaldi's argument assumes that the speedy trial clock began running 30 days thereafter.  However, upon the filing of the motion for production, the Government had 14 days thereafter to respond.  Although it did not do so, the motion did not become ripe until October 10, 2019.  Thus, the 30-day excludable period did not expire until November 9, 2019.  As such, only 9 days of non-excludable time would have passed.

**"A few more short periods of non-excludable time"**

Without any explanation or support, Defendant asserts that "a few more short periods of non-excludable time" elapsed thereafter.  (Doc. 259, at 2-3).  Absent further detail, the Court is unable to ascertain which periods of time Rinaldi contends were non-

---

[3] Rinaldi notes that his motions for default and default judgment were meant to be only filed in his companion criminal case, 3:18-cr-280, but "concede[s] it stopped the clock."  (Doc. 259, at 2).  The Court notes that the filing of these motions was not the result of a clerical error, but rather because Defendant listed both cases numbers in the caption of his motions.  (*See* Docs. 204, 205).

excludable.  In any event, applying Rinaldi's reasoning, a brief in opposition to the motions for default and default judgment (Docs. 204, 205), which Rinaldi concedes stopped the speedy trial clock, would have been due on or before December 2, 2019.[4]  Thus, when applying the 30-day window of excludable time, the speedy trial clock would have begun running again on January 1, 2020.  However, on January 2, 2020, the Court received a letter from Rinaldi stating that it was "[his] position that [his] pre-trial motions have been decided and [he] would like to go to trial."  (Doc. 214).  This letter operated to stop any speedy trial clock that may have been running as it, in effect, raised the issue of whether Defendant was withdrawing his pending pre-trial motions, an issue necessary to resolve prior to ruling on any remaining pre-trial motions and scheduling a hearing on his final motion to suppress and motion for a *Franks* hearing.  *Cf. e.g. United States v. Zuniga*, 2020 WL 1516970, at *3 (D.N.J. 2020) (Where motion for *Franks* hearing was filed on September 21, 2018, and defendant was charged in a superseding indictment on October 31, 2018, thus ultimately rendering moot the motion for a *Franks* hearing, speedy trial clock remained tolled until Court dismissed motion as moot at Government's request on March, 18, 2019; explaining that "[w]hether or not the parties or the Court actually expected further briefing concerning the *Franks* motion [filed September 21, 2018], the return of a superseding

---

[4] The Court is compelled to note that a "motion for default" and "motion for default judgment" are not proper motions in the present criminal case in light of the current posture of this case.  Nonetheless, due to Defendant's *pro se* status, the Court believed it necessary to afford the Government the prescribed time to respond in the event Defendant's motions could be liberally construed as requesting relief apart from "default" or "default judgment".

indictment [on October 31, 2018] against Zuniga sufficiently changed the circumstances surrounding Zuniga's *Franks* motion such that the Court could not properly have reached a decision on the *Franks* motion without further input.").  In fact, Defendant did formally withdraw his pending pre-trial motions, including the Motion to Suppress and for a *Franks* Hearing, on January 21, 2020, asserting that this motion "is now essentially moot" in light of the Court's opinion and order addressing the timeliness of the wiretaps. (Doc. 227; *see also,* Doc. 232).  The Court granted Defendant's motions to withdraw pending pre-trial motions on January 31, 2020 (Docs. 237-239) and issued trial scheduling orders that same day (Docs. 240, 241).

Furthermore, prior to the filing of Defendant's motions to withdraw his pending pre-trial motions, on January 16, 2020, Defendant filed a motion for reconsideration of a portion of the Court's memorandum opinion and order addressing the motion to suppress the wiretaps (Doc. 218).  This pre-trial motion would have further served to toll the speedy trial time until February 2, 2020, when the Court resolved this motion (Docs. 249, 250).  One day later, on February 3, 2020, Defendant filed his first motion to suppress (Doc. 243), a Motion for Production of Transcripts (Doc. 244), and a Motion to Dismiss (Doc. 245).  The Court, having issued orders on January 31, 2020 scheduling trials to be held on February 11, 2020 for Count I and March 2, 2020 for Count II (Docs. 240, 241), was thereafter forced to cancel these trials in order to allow the parties adequate time to fully brief the motions and for the Court to evaluate the issues and arguments raised in the Motion to Dismiss and Motion to

Suppress (*see* Doc. 248).  In cancelling the trials, the Court explicitly excluded the time between February 3, 2020 and the date on which Defendant's pre-trial motions were ruled on, pursuant to 18 U.S.C. § 3161(h)(1)(D).  (Doc. 248, at ¶ 5).  On February 13, 2020, Rinaldi filed the motion to dismiss (Doc. 259) currently at issue in this memorandum opinion. Defendant's final motion was not fully ripe until March 20, 2020, when Rinaldi filed a "Rebuttal to the Government's Sur-Reply in Opposition to Defendant's Motion to Dismiss" (Doc. 272).

It must further be noted that on April 2, 2020, Rinaldi filed a "request for pre-trial release" (Doc. 274), further tolling the speedy trial clock to the extent any question remains as to whether it had been stopped.  *See Lattany*, 982 F.2d at 872 & 872 n. 6 ("Motions regarding the defendant's pretrial detention and bond are 'pretrial motions' for speedy trial purposes and thus excludable from the speedy trial calculation."). On April 27, 2020, this motion was denied by a Magistrate Judge (Docs. 287, 288), and on May 4, 2020, Rinaldi filed an appeal of this decision (Doc. 290).  A hearing on Rinaldi's appeal and request for release from detention has been scheduled by this Court for July 2, 2020. (Doc. 297).

## Conclusion

For the afore-mentioned reasons, accepting for purposes of this motion Defendant's contention that, in the absence of a hearing, a Court may not toll the number of excludable days more than 30 as to any pre-trial motion once it is fully briefed, regardless of the number of pre-trial motions filed or the complexity of such motions, upon a thorough review

of the record, and addressing each of Defendant's asserted non-excludable time periods, only 57 non-excludable days have elapsed for Speedy Trial calculation purposes.

### 2. The Government's Computation of the Speedy Trial Time

The Government's arguments in opposition to Defendant's motion provide an alternative basis for denial of the Defendant's motion to dismiss due to a speedy trial violation.

As previously stated, the Government agrees with Defendant that the speedy trial clock ran from August 21, 2018, the date on which Rinaldi was indicted (*see* Doc. 37), until the filing of the first motion for an extension of time to file pre-trial motions, and that this time is not excludable for speedy trial purposes.  (Doc. 266, at 5).

However, the Government further asserts that the only other non-excludable time was 3 days from January 31, 2020 to February 3, 2020.  The Court disagrees with this calculation.  As explained, *supra*, on January 16, 2020, Defendant filed a motion for reconsideration of the Court's memorandum opinion and order addressing the motion to suppress the wiretaps.  (Doc. 218).  To the extent the Speedy Trial Clock was running at this time, this pre-trial motion would have served to toll the speedy trial time until February 2, 2020, when the Court resolved this motion (Docs. 249, 250).  One day later, on February 3, 2020, Defendant filed his first motion to suppress (Doc. 243), a Motion for Production of Transcripts (Doc. 244), and a Motion to Dismiss (Doc. 245). Thus, no non-excludable time elapsed from January 31, 2020 to February 3, 2020.

In addressing the Government's position that no periods of time since August 21, 2018, are non-excludable other than those addressed immediately above, this Court begins by noting the lack of guidance by Courts with respect to the application of the Supreme Court's opinion in *Henderson* in determining the amount of time that may be excluded for Speedy Trial purposes when the Court has before it a large number of pre-trial motions, some of which raise a significant number of complex factual and/or legal issues.[5]  The time necessary to decide numerous pre-trial motions is further complicated by a criminal defendant proceeding *pro se*, where the Court has a duty to ensure that the defendant's arguments are being fully recognized, understood, and addressed, such that the interests of justice are being served.  In recognizing these concerns, the Government here aptly explains:

> The consideration of approximately two dozen motions filed in rapid succession, many well after the pretrial deadline, is anything but "simple or routine." It would be an absurd outcome to conclude that the law mandates exclusion of all time between filing of a motion and resolving the motion when there is a hearing, whether reasonable or not, whether the hearing was prompt or not, but to assume that any motion for which the Court decides not to require a hearing is so simple and routine that the Court must decide it within 30 days, without regard to how many motions are filed or how complex or novel. As just

---

[5] As previously noted, it does not appear that the Third Circuit has definitively ruled on this issue. Although in *Felton*, the Circuit "assume[d] *arguendo* that the thirty-day limit applies" when multiple motions have been filed, it explicitly declined to decide this issue. *Felton*, 811 F.2d at 197.  *But see, United States v. Rashid*, 593 F.App'x 132, 136 n.13 (3d Cir. 2014)("The pendency of multiple pretrial motions provides another basis for excluding time from the speedy trial calculation.")(citing *Felton*, 811 F.2d at 196-197).

Other Circuits have recognized that, where several pretrial motions are pending, the 30-day period may be extended.  *See e.g. United States v. Williams*, 12 F.3d 452, 460 (5th Cir. 1994) (acknowledging that "a motion under advisement is excludable up to thirty days" but noting that "[i]f the court has several motions on which it must rule . . .  this time period can be reasonably extended."), *abrogated on other grounds* by *United States v. Wells*, 519 U.S. 482 (1997).

one example, the motion to suppress based on the sealing of the wiretaps in this case was not a routine motion, but required careful consideration of case law and numerous factual determinations. The amount of time the Court took in deciding Rinaldi's mountain of motions was reasonable under *Henderson*. And, again, the motion to suppress and for a *Frank's* hearing was never taken under advisement by the Court, because Rinaldi withdrew it before the hearing could be held.

(Doc. 266, at 10-11).  Here, the Court agrees with the Government's reasoning as to the

virtual impossibility of deciding the numerous pre-trial motions within 30 days of those

motions becoming ripe, where a defendant chooses to continuously file pretrial motions

without end.  Such a rule would defy common-sense and require a Court to focus

exclusively on one defendant's continuous motions full-time, to the exclusion of all else,

including the resolution of other criminal motions and criminal proceedings. Applying a strict

and inflexible 30-day limit on the number of excludable days permissible under the Speedy

Trial Act, in a case such as this, is neither reasonable nor in the interests of justice as it

promotes the speedy issuance of opinions over the necessary substantive analysis that

must be applied to ensure that a defendant's arguments, and in particular those of a *pro se*

defendant, are fully considered and addressed.

The Government further asserts that the entire period of time between December 10,

2018, when Rinaldi filed his Motion to Suppress and for a *Franks* Hearing (Doc. 81), until

the motion was withdrawn by Order of the Court on January 31, 2020 (Doc. 238) is

excluded under the Speedy Trial Act.  In support of this argument, the Government states:

The holding of *Henderson*, as described by the Third Circuit Court of Appeals, was that "the plain terms of the statute appear to exclude all time from the filing

20

through the hearing and the completion of post hearing submissions whether that hearing was prompt or not. The Court determined also that subsection [D] does not require that a period of delay be reasonable to be excluded." *United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987). Rinaldi requested a *Frank's* hearing on December 10, 2018. (Doc. 81). He withdrew that motion on January 31, 2020, when the Court issued its order. (Doc. 238). Consistent with *Henderson*, that entire period is excluded. Rinaldi cannot now argue that because no hearing was held, the accompanying motion to suppress should have been decided within 30 days of briefing when his withdrawal of the motion was what caused there to be no hearing.

(Doc. 266, at 8-9; *see also, id.* at 10-11 ("And, again, the motion to suppress and for a *Frank's* hearing was never taken under advisement by the Court, because Rinaldi withdrew it before the hearing could be held.")).  In turn, Rinaldi argues that because no hearing was actually held prior to his decision to withdraw the motion, the Government's argument fails. (Doc. 267, at 2).  However, the Government's argument finds support in the case law.

Pursuant to § 3161(h)(1)(d), "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded in computing the time within which the trial must commence.  18 U.S.C. § 3161(h)(1)(d).  Courts have suggested that, where a defendant requests a hearing, it is unnecessary for the Court to determine whether the hearing was "required" for STA purposes.  *See United States v. Tannehill*, 49 F.3d 1049, 1052 n.4 (5th Cir. 1995).  *See also*, *United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014)(citing *Tannehill*). In addition, "[a]n anticipated hearing can toll the speedy trial clock."  *United States v. Holmes*, 508 F.3d 1091, 1096 (D.C.C. 2007).

For example, in *United States v. Maxwell*, the District Court scheduled a conference to schedule a hearing on Defendant's motion to sever over 7 months after it was filed. However, following the conference, the defendant withdrew the motion and therefore a hearing was never scheduled or held.  351 F.3d 35, 39 (1st Cir. 2003).  The defendant argued on appeal that a period of time is excludable under 18 U.S.C. § 3161(h)(1)(F) "only after a court actually sets a date for a hearing on a pending motion", and that therefore only thirty days from the date the Government submitted its opposition to a motion to sever could be excluded pursuant to § 3161(h)(1)(J). *Id*. at 38.  In rejecting this argument, the First Circuit explained:

> We agree with the district court that "such a requirement should not be read into the statute." Maxwell's interpretation would require an on-the-record determination that a hearing on a particular motion is necessary. That Congress specifically required a finding on the record for continuances under 18 U.S.C. § 3161(h)(8)(A) indicates that Congress did not intend the same for time exclusions under 18 U.S.C. § 3161(h)(1)(F). *See United States v. Grosz,* 76 F.3d 1318, 1325 (5th Cir. 1996)(finding that "the language of Subsection F does not impose a requirement that the court formally set a motion for hearing"); *cf. Henderson v. United States,* 476 U.S. 321, 326-28, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) (interpreting 18 U.S.C. § 3161(h)(1)(F) not to have a reasonableness requirement because Congress placed such a requirement in 18 U.S.C. § 3161(h)(7) but not in sections (1)-(6), as well as recognizing Congressional intent that 18 U.S.C. § 3161(h)(1)(F) be read broadly with any limitations coming from circuit or district court rules rather than the statute itself).

*Id*. at 38 (some internal citations omitted).

Here, as evidenced by the disposition of 17 of Rinaldi's pre-trial motions on December 18, 2019 (*see* Doc. 207-211), the Court made a determination that Defendant's

Motion to Suppress and for a *Franks* Hearing, and the scheduling of a hearing on that

motion, was more suitably done following a decision on the majority of Rinaldi's other

motions, the disposition of which may have affected the scope of the hearing on

Defendant's other motion to suppress and for a *Franks* hearing, as well as the arguments

presented by the parties at the hearing on those motions.  In addition, upon the filing of

Defendant's motion to suppress the wiretaps on July 10, 2019 (Doc. 161), it was apparent

that a decision on this motion may significantly impact Defendant's Motion to Suppress and

for a *Franks* Hearing.[6]  As was explained to Defendant in a letter dated January 6, 2020

from the undersigned's Courtroom Deputy, the Court had under consideration Rinaldi's

request for a *Franks* hearing and believed that a hearing on the Motion to Suppress may

have also been otherwise necessary.  (*See* Doc. 215)("Should the Court decide to grant

your motion for a *Franks* hearing, or otherwise decide that a hearing on your Motion to

Suppress must be held. . . .").  However, prior to being able to schedule a hearing, Rinaldi

---

[6] Rinaldi's Motion to Suppress and for a *Franks* hearing (Doc. 81) raised a number of issues and requested that the Court "suppress the evidence obtained from illegal wiretaps, the fruits of searches at multiple residences and any other evidence found as a result of evidence obtained from said wiretaps" (Doc. 81, at 1).  Rinaldi's motion focused, in large part, on the wiretaps obtained by the Government and the affidavits used in support of those wiretaps, including whether they were "facially defective", met the necessity requirement, and contained "lies, misleading statement[s and] material omissions." (*See generally, id.*).  Thus, Rinaldi's focus on the legality of the wiretaps in his Motion to Suppress and for a *Franks* Hearing led to the conclusion that a ruling on the motion to suppress those same wiretaps at issue may serve to narrow, and significantly limit, the issues and arguments presented at a hearing on the Motion to Suppress and *Franks* hearing.
　　Of note, Rinaldi has admitted that a ruling on the motion to suppress the wiretaps had a significant effect on his Motion to Suppress and for a *Franks* hearing.  In withdrawing his Motion to Suppress and for a *Franks* hearing, Defendant stated that this motion "is now essentially moot" in light of the Court's opinion and order addressing the timeliness of the wiretaps. (Doc. 227).

first filed a motion for reconsideration and then soon after moved to withdraw his Motion to

Suppress and for a *Franks* hearing.  Thus, prior to the Court being able to determine the

necessary scope of the evidentiary hearing to be held on Rinaldi's motion, and thus

scheduling that hearing, Rinaldi withdrew his motion, preventing the Court from taking

further action on the merits of the motion.  Defendant cannot request that his motion be

withdrawn based on his determination that the motion "is now essentially moot" in light of

the Court's opinion and order addressing the timeliness of the wiretaps (*see* Doc. 227), and,

less than two weeks after the Court grants the motion to withdraw the Motion to Suppress

and for a *Franks* hearing, file a motion to dismiss arguing that the Court violated the Speedy

Trial Act because it did not decide his pre-trial motions within 30 days of their becoming ripe

as it should have done since it did not hold a hearing on those motions.  Condoning such

tactics would operate to encourage defendants to file motions which often necessitate

hearings, and then strategically withdraw those motions once a certain amount of time has

passed, such that time which would otherwise have been excluded under the STA is now

non-excludable.

For the afore-explained reasons, applying either the Defendant's reasoning or the

Government's reasoning, no violation of the Speedy Trial Act has occurred.  The Court will

thus deny Defendant Rinaldi's motion to dismiss for violation of the Act.

## C. Sixth Amendment of the U.S. Constitution

Similar to his assertion that the First Superseding Indictment should be dismissed due to a violation of the Speedy Trial Act, Defendant Rinaldi also argues that his Sixth Amendment rights have been violated (*see* Doc. 259, at 4-11).[7]

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy and public trial."  U.S. Const. amend. VI. "Congress enacted the Speedy Trial Act to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced."  *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988)(citing H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402). Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time."  *Lattany*, 982 F.2d at 870 n.5.  However, because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F.Supp.3d

---

[7] In determining whether Defendant's constitutional speedy trial rights were violated, the Court's analysis is unaffected by the Government's filing of the First Superseding Indictment in January, 2020.  *See United States v. Battis*, 589 F.3d 673, 679 n.5 (3d Cir. 2009)(finding that the relevant time period was 45-months, beginning when Defendant was first indicted in 2004, and holding "that the speedy trial right was not affected by the filing of a superseding indictment in 2006.  The Government does not argue otherwise (i.e., that the filing of the superseding indictment in 2006 restarted the constitutional speedy trial clock).").

323, 340 (E.D.Pa. 2014)(quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982)).

As explained by the Supreme Court:

Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court should employ a four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972) to assess the merits of the claim. *United States v. Dent,* 149 F.3d 180, 184 (3d Cir. 1998). An analysis these factors avoids an "inflexible approach[]" which would result from applying a fixed-time period in determining whether there has been a constitutional violation and, rather, applies a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529-530. In *Barker*, the Supreme Court identified four factors in determining whether a defendant has been deprived of his right to a speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)(quoting *Barker*, 407 U.S. at 533); *see also*, *Hakeem v. Beyer*, 990 F.2d 750, 759

(3d Cir. 1993)("All factors must be considered and weighed as no one factor is dispositive

nor 'talismanic.'")(citing *Barker*, 407 U.S. at 533).

With respect to the first factor, "[t]he length of the delay is to some extent a triggering

mechanism. Until there is some delay which is presumptively prejudicial, there is no

necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at

530. Otherwise stated,

> The first of these [factors] is actually a double enquiry. Simply to trigger a
> speedy trial analysis, an accused must allege that the interval between
> accusation and trial has crossed the threshold dividing ordinary from
> "presumptively prejudicial" delay, since, by definition, he cannot complain that
> the government has denied him a "speedy" trial if it has, in fact, prosecuted his
> case with customary promptness. If the accused makes this showing, the court
> must then consider, as one factor among several, the extent to which the delay
> stretches beyond the bare minimum needed to trigger judicial examination of
> the claim.

*Doggett,* 505 U.S. at 651-652 (internal citation omitted). In determining whether a

defendant has met this threshold burden of demonstrating delay which is "presumptively

prejudicial", the Supreme Court has noted that "[d]epending on the nature of the charges,

the lower courts have generally found postaccusation delay 'presumptively prejudicial' at

least as it approaches one year" but has emphasized that "as the term is used in this

threshold context, 'presumptive prejudice' does not necessarily indicate a statistical

probability of prejudice; it simply marks the point at which courts deem the delay

unreasonable enough to trigger the *Barker* enquiry." *Id*. at 652 n.1. Further, "because of

the imprecision of the right to speedy trial, the length of delay that will provoke such an

inquiry is necessarily dependent upon the peculiar circumstances of the case.  To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *Barker*, 407 U.S. at 530-531.  *See also*, *Battis*, 589 F.3d at 678 ("We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors.  However, we have also noted that longer delays can be tolerated, for example, when the crime is very serious or complex.")(internal citations and quotation marks omitted).

Here, Rinaldi was arrested and indicted in August, 2018.  Thus, over 21 months have passed since the date of Defendant's arrest, indictment, and arraignment.  This period of time is sufficient to trigger the *Barker* enquiry.  *See e.g., Hakeem*, 990 F.2d at 760 (over fourteen-month delay warranted full inquiry into *Barker* factors); *United States v. Mensah-Yawson*, 489 F.App'x 606, 611 (3d Cir. 2012)(fifteen-month delay sufficient to warrant inquiry into other *Barker* factors).  Nonetheless, although this length of delay is "presumptively prejudicial", thus warranting an analysis of the *Barker* factors, this factor only moderately weighs in favor of Defendant.  This case is one where Rinaldi was indicted with two co-defendants for a Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846, and thus not "an ordinary street crime", but rather a serious conspiracy charge.[8]

---

[8] The same day Defendant Rinaldi was charged in this action, the federal grand jury also returned an indictment charging Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in

With respect to the second *Barker* factor, reason for the delay, the Government "bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.

In turn, "delays attributable to the dilatory actions of the defendant cut against a finding of a Sixth Amendment violation."  *Hakeem*, 990 F.2d at 766.  *See also*, *Battis,* 589 F.3d at 680 ("By contrast, 'delay caused by the defense weighs against the defendant' . . .") (quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)).  This "rule accords with the reality that defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to the accused's advantage' because 'witnesses may become unavailable or their memories may fade" over time.'"  *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521).  *See also*, *United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986) ("'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision,

---

violation of 21 U.S.C. §§ 841 and 846.  (*See* Case No. 3:18-cr-280, Doc. 1).  Thus, the majority of Defendant Rinaldi's motions, as well as other documents filed by the Government and Rinaldi, were filed in both actions, further complicating adjudication of this criminal action and requiring examination of both actions in conjunction with one another.

the defendants are not now able to criticize the very process which they so frequently called upon.'")(quoting *United States v. Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969)).

In the present case, following Rinaldi's arraignment on September 5, 2018, the Court ordered all pre-trial motions to be filed by October 5, 2018 (Doc. 55).  On October 4, 2018, Rinaldi's counsel moved for an extension of this deadline (Doc. 63), which was granted by this Court (Doc. 67).  At the request of Rinaldi's counsel, the deadline for filing pre-trial motions was extended to February 5, 2019. (*See* Docs. 69, 71).  Thus, any delay in the commencement of trial between October, 2018, and February 5, 2019, is attributable to the defendant.[9]

In addition, a significant amount of delay in 2019 is attributable to Rinaldi.  Defendant filed eight *pro se* pre-trial motions in December, 2018, as well as a motion for a detention hearing and requests to represent himself *pro se*.  (*See* Docs. 76, 77, 78, 79, 80, 81, 82, 85, 86, 88, 89, 90). In January, 2019, the Court having granted Defendant's motion to represent

---

[9] Defendant asserts that his counsel sought extensions of time to file pre-trial motions "because [the government] had not turned over discovery so it was impossible to file any motions" (Doc. 259, at 5). The Court notes that Defendant's counsel, in requesting extensions of time, did not assert that the Government was withholding discovery or otherwise acting in a dilatory manner in complying with its duties. With respect to counsel's first motion, filed one month after Defendant's arraignment, defense counsel stated that he had "not received all discoverable information from the Government" but had communicated with counsel for the Government and "anticipate[d] receipt of the same within days."  (Doc. 63, ¶ 6).  In his second request for an extension of time, counsel stated that he required "additional time to review all discoverable information including multiple matters raised by Defendant in order to determine what pretrial motions and/or motions in limine are appropriate and to meet with Defendant who is incarcerated in Lackawanna County Prison for review of same" and that the ends of justice would be served by "allowing defense counsel additional time to receive, review, and analyze Discovery" and engage in further conversations with his client.  (*See* Doc. 69, ¶¶ 6, 7).  Defendant's claim of impossibility cannot be reconciled with the actual sequence of events as outlined above.

himself, Rinaldi filed an additional seven pre-trial motions.  (*See* Docs. 103, 105, 107, 109, 111, 113, 115).  In February, 2019, Defendant filed two more motions. (*See* Docs. 124, 137).  As of May 9, 2019, all pre-trial motions pending at that time were ripe.  Nonetheless, on June 13, 2019, Defendant filed a pre-trial motion to sever (Doc. 155).  On July 10, 2019, Defendant filed a supplemental motion requesting suppression of wiretaps (Doc. 161) which required substantial briefing and was the subject of another pre-trial motion by Defendant on September 26, 2019, which requested additional information "to substantiate his claims" raised in his motion to suppress (Doc. 197).  The numerous pre-trial motions, continually filed from late-2018 throughout 2019, repeatedly served to stop the speedy trial clock, delay trial in this matter, and slow adjudication of this case and Defendant's ability to have this matter fully adjudicated.

Here, Rinaldi asserts that the time from the Government's first request for an extension of time to file a consolidated response to 15 of his pre-trial motions on February 19, 2019, through the filing of the Government's brief addressing those motions on May 3, 2019, should be attributed to delay by the Government.  Assuming, *arguendo*, this time is attributable to Government delay, the Court finds this delay only minimally weighs against the Government.  First, the number of motions filed by Defendant to which the Government had to respond reasonably required more time than would a response to one, or a small number, of pre-trial motions.  Second, Defendant concurred in the Government's first motion for an extension of 45-days to respond to the pre-trial motions (*see* Doc. 133, ¶ 5).

Although Rinaldi now belatedly asserts in his Reply brief that he only agreed to a 10-day extension, the record does not reflect any objection to this extension of time or suggestion that the Government misrepresented Defendant's concurrence.  This finding is bolstered by Defendant's objection to the Government's second request for an extension of time to respond to the pre-trial motions, where Defendant argued that the Government had already been provided a 45-day extension, but never asserted that he had not concurred in the prior request for an extension of time or that the Government had misrepresented his position. (Doc. 147).  Finally, the impact of any delay attributable to the Government from February 19, 2019 through May 3, 2019, is diminished by the fact that, during this time period, Defendant continued to file other pre-trial motions, which also served to delay trial.  (*See* Docs. 124, 137).  Thus, although this delay of two-and-a-half months is largely, though not entirely, attributable to the Government, this delay was justified and the impact of such delay is minimal on the progression of Defendant's action.

Rinaldi further contends that the Government caused delay by not filing a timely response to his motion for severance, filed June 13, 2019, and by requesting an extension of time to file a response to his motion to suppress, filed July 10, 2019.  (Doc. 259, at 6). The Government's response to the motion for severance was due by June 27, 2019, and was instead filed on July 19, 2019 (Doc. 173) with leave of Court (Doc. 176).  Although the Government's brief was thus filed past the 14-day deadline, this three-week delay had no impact on Defendant where he had a number of other pre-trial motions pending.  Further,

with respect to the motion to suppress, the Government filed its brief in opposition on August 15, 2019, approximately one month after the filing of the motion.  (*See* Doc. 192). As was evidenced by this Court's lengthy opinion addressing this motion (Doc. 209), a number of substantive issues were necessary to address, and the Government's need for a brief extension of time to ensure that the issues were fully developed and addressed was entirely reasonable.  In addition, just as with the motion to sever, the Government's delay in responding to this motion to suppress did not prejudice Defendant, due to his many other pending pre-trial motions, and was not done "in order to hamper the defense",

As a result of Defendant's numerous pre-trial motions, and continued filing of those motions throughout the majority of 2019, a significant portion of the delay caused in 2019 is attributable to the defendant.  Nonetheless, Defendant is correct that certain time periods, which when accumulated constitute several months, are attributable to the Government. However, the causes for these delays were largely reasonable, cannot be said to have been the result of deliberate efforts by the Government to delay the trial in order to hamper the defense, and, at worst, were the result of negligence or overcrowding of the courts.  *See Battis*, 589 F.3d at 679.  Thus, the Government has carried its burden of justifying any delays, albeit brief, that it caused in 2019.

The Court turns to any purported delays in 2020, and the reasons therefore.  The Court having disposed of a large majority of Defendant's motions on December 18, 2019, Defendant then requested reconsideration (Doc. 218) of a portion of the Court's decision

addressing the motion to suppress on January 16, 2020.  On January 21, 2020, the

Government filed the First Superseding Indictment against Rinaldi.  (Doc. 220).  Defendant

thereafter withdrew his remaining pre-trial motions, and, on January 31, 2020, the Court

scheduled trial in this matter.  Nonetheless, despite Defendant's stated desire to proceed to

trial as soon as possible, Defendant thereafter filed a motion to suppress and two motions to

dismiss. (*See* Docs. 243, 245, 259).

Defendant does not assert that there is any delay attributable to the Government in

2020, nor is there any basis for so doing.  The Government timely responded to each of

Rinaldi's pre-trial motions filed in February, 2020, and no request for an extension of time to

respond was requested.  Rather, it was Defendant's pre-trial motions, and not any action on

behalf of the Government, which led to the postponement of Defendant's trial dates.[10]  This

delay is directly attributable to the defendant.

As a result, upon consideration of the second *Barker* factor, reason for the delay, the

Court finds that this factor weighs against the Defendant in light of the numerous motions

filed throughout the time of Defendant's pre-trial detention and the number of substantive

issues raised therein necessitating detailed responses by the Government and review and

analysis by the Court.  *See Loud Hawk*, 474 U.S. at 316-317 ("'Having sought the aid of the

---

[10] Rinaldi asserts in his Rely brief that "the government was not prepared to go to trial on" February 11, 2020.  (Doc. 267, at 9, 10).  Regardless of whether the Government was prepared, this Court scheduled trial to begin on February 11, 2020, and the trial would have proceeded as scheduled were it not for Rinaldi's filing of a motion to suppress and motion to dismiss on February 3, 2020.

judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.'"). Although certain delay is attributable to the Government, a majority of the delay since Rinaldi's arrest and arraignment was caused by Defendant.

The Court turns to the third *Barker* factor – the defendant's assertion of his right to a speedy trial. " Whether and how a defendant asserts his right [to a speedy trial] is closely related" to the other *Barker* factors. *Barker*, 407 U.S. at 531. Thus, the strength of a defendant's efforts to assert his right "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531.

Here, Defendant did assert his right to a speedy trial on multiple occasions, particularly if certain letters filed by Defendant are liberally construed. (*See e.g.* Docs. 88, 139, 198, 227). *See Battis,* 589 F.3d at 681 ("When a defendant is proceeding *pro se,* he 'does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a reasonable assertion of the right so as to put authorities on notice of his Sixth Amendment claim.'")(quoting *Douglas v. Cathel,* 456 F.3d 403, 418 (3d Cir. 2006)).

Nonetheless, the genuineness of Defendant's assertions of his rights are undercut by Defendant's repeated successful attempts to further prolong the commencement of his trial by filing new pre-trial motions. For example, in a letter to the Court filed December 18, 2018, Defendant stated that he had "a right to a quick & speedy trial and [he would] prefer a

quick and speedy trial rather than counsel." (Doc. 88). Nonetheless, having already filed

six pre-trial motions one-week prior to this letter, he thereafter filed at least eight additional

pre-trial motions in January and February of 2019. Almost immediately thereafter, in March,

2019, Defendant filed a letter informing the Court of a number of issues, and stating that he

"want[ed] to get to trial as soon as possible. . . ." (Doc. 139). However, in June, 2019,

Defendant filed an additional pre-trial motion (Doc. 155). Then, that same month, Rinaldi

informed the Court that he "may want to amend or supplement [his]pre-trial motions once

[he has been] provided with . . . additional discovery" while also arguing that the

Government had failed to timely turn over certain discovery[11] and that he was being

deprived of his right to a "quick and speedy trial." (Doc. 157). On July 10, 2019, Rinaldi

filed a "supplemental motion", which requested that the wiretaps be suppressed due to

untimely sealing. (Doc. 161). In September, 2019, Defendant filed a motion for production,

requesting additional information that he may use to support his previously filed motion to

suppress. (Doc. 197). Several days later, Rinaldi requested that the Court hold a hearing

on his pre-trial motions and set a trial date. (Doc. 198; *see also,* Doc. 203 (asserting that

his right to a speedy trial is being violated)). Nonetheless, the Court having ruled on the

majority of Rinaldi's pre-trial motions in December, 2019, Rinaldi immediately moved for

---

[11] The Court ordered the Government to respond to Defendant's letter asserting that he had not received certain, unidentified discovery, as well as the other issues raised in Defendant's letter. (Doc. 158). In response, the Government informed Defendant that it "has not withheld any discoverable materials", "has produced the full wiretap evidence twice", as well as "hundreds of pages of documents" and that "[t]he government has endeavored to satisfy all discovery requirements." (Doc. 160, at 3).

reconsideration (Doc. 218) in January, 2020, of the Court's order granting in part and denying in part his motion to suppress. Although Rinaldi thereafter withdrew any pending pre-trial motions – with the exception of his motion for reconsideration – purportedly so that he could proceed to trial, within days of the Court scheduling trial in Rinaldi's case on January 31, 2020 (Docs. 240, 241), Defendant filed a motion to dismiss and another motion to suppress (Docs. 243, 245), and ten days later, the present motion to dismiss due to speedy trial violations (Doc. 259).  Thus, despite Defendant's statements asserting his right to a speedy trial, he repeatedly engaged in actions designed to thwart a speedy resolution of this case.

In sum, Defendant cannot have it both ways – asserting his desire to a speedy trial while also consistently filing pre-trial motions designed to flood the court and slow the trial process.  *See Hakeem*, 990 F.2d at 764 ("Repeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial."); *see also, id.* at 765 ("Where, through contrary actions, a defendant evidences an unwillingness to commence with the trial requested, the request carries minimal weight.").  As a result, while Defendant did assert his right to a speedy trial, this factor is only afforded minimal weight in Defendant's favor.

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant.  With respect to this factor, "the burden of showing prejudice lies with the individual claiming the violation and '[the] possibility of prejudice is not sufficient to support [the] position that ...

37

speedy trial rights [are being] violated.'" *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474 U.S. at 315).

A defendant can establish prejudice in two ways. "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). A defendant can also "claim prejudice without providing 'affirmative proof of particularized prejudice'" because "'consideration of prejudice is not limited to the specifically demonstrable.'" *Id.* (quoting *Doggett*, 505 U.S. at 655). With respect to this second way to establish prejudice:

> Given that "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense was impaired by a delay, the [*Doggett*] Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655-56, 112 S.Ct. 2686. This presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired."

*Id.*

Here, Rinaldi argues that prejudice should be presumed based on the time elapsed since his arrest and indictment, but further asserts that he has suffered "specific prejudice." (Doc. 259, at 7-8).

Rinaldi states that he has suffered "specific prejudice" for several reasons. First, "on or about November 22nd [2019,] the Scranton police department confiscated and impounded a 2002 Mercedes Benz . . . owned by Michael Rinaldi." (Doc. 259, at 8). Defendant asserts that all of his belongings "have been stored in a number of different places", including his car, and "with a number of different people" because "since [his] arrest he lost his apartment for failure to pay the rent." Among the belongings allegedly contained in this car were "numerous photographs, documents and a cellphone which were all items Rinaldi wanted to use as evidence or exhibits in his trial." (*Id.*). In addition, the cell phone "contained a call log and text messages from people who are named as codefendants of Rinaldi and from other people whom Rinaldi anticipates that the government will call as witnesses." (*Id.*). Because Rinaldi is unable to retrieve these items, he asserts that his "defense will be hampered." (*Id.* at 9). As further explained in his Reply brief, Defendant claims that "had he been tried prior to November of 2019 . . . he would still be in possession of the cellphone, pictures and documents that were seized with his car." (Doc. 267, at 7).

Defendant's attempt to point to evidence, allegedly contained in a car from an unidentified time after August, 2018, until November, 2019, is insufficient to demonstrate that his defense was impaired so as to permit an inference of prejudice or that the length of delay, in itself, presumptively prejudiced him by compromising the reliability of a trial in a way that neither party can prove or identify. Even if such presumption of prejudice existed,

the Government has sufficiently mitigated it by a showing that the delay left Rinaldi's ability to defend himself unimpaired.

Here, there is a serious question that the purported evidence existed.  According to the Government, following Defendant's claim in February, 2020, that this car contained a cell phone and other items, the DEA "obtained a search warrant for that vehicle, secured in a police impound lot, and searched it on May 10, 2020," wherein they found "no cellular telephone inside, nor any other relevant evidence."  (Doc. 271, at 2).  Rinaldi has not shown that this evidence would have been present in the car prior to November, 2019, explained why he believes the cellphone and documents were in the car when it was seized, who purportedly placed these items in his car, or why, if this evidence would have supported his defense, he did not request that a friend, family member, or his stand-by counsel, retrieve and preserve the evidence.[12]  To now claim that evidence, whose existence Rinaldi has made no attempt to prove, was lost due to a delay in trial creates a convenient, but ultimately manufactured and contrived, complaint.

Nonetheless, assuming the veracity of Defendant's statements as to the nature of the evidence and its location, to the extent that Defendant believed it aided his defense,

---

[12] Rinaldi does not assert that he was unable to preserve this evidence due to his *pro se* status and current pretrial incarceration.  To the extent this argument was raised, it must be noted that Defendant, in choosing to proceed *pro se*, took responsibility for this own defense and thus had a duty to collect and preserve any evidence he deemed necessary to present his defense. In addition to any acquaintances, friends, and family who may have helped him, Defendant was appointed stand-by counsel, with whom he has repeatedly expressed satisfaction, who was capable of obtaining and preserving any existing evidence Rinaldi needed.

there is no indication, or assertion, that Defendant attempted to protect or preserve this evidence, despite its claimed value.  *See Hakeem*, 990 F.2d at 764 (In *Doggett*, the defendant "appears to have been unaware of the charges pending and so had no reason to prepare a defense" but "Hakeem knew from the day of the robbery that it would be necessary to preserve his alibi.").

Rinaldi also asserts that he is prejudiced because "his main witness" stated "that she lost her note[s]" that Rinaldi asked her to make "pertaining to times and/or dates [she was] with Rinaldi and/or his alleged co-conspirators."  (Doc. 259, at 9).  Although this witness is "still willing to testify as a defense witness . . . due to the passage of time she no longer remembers the exact dates or places when or where certain events occurred."  (Doc. 259, at 9).  In his Reply brief, Defendant further asserts that "had he been tried prior to February of 2020 . . . his witnesses would be able to be of more help to him because their memorys [*sic*] would be fresher."  (Doc. 267, at 7).

"General allegations that witnesses' memories have faded are insufficient to create prejudice, at least absent extreme delay such as eight and one-half years, or the special circumstances that existed in *Doggett*."[13]  *Hakeem*, 990 F.2d at 763 (citing *United States v.*

---

[13] In distinguishing the facts of *Hakeem* from "the special circumstances" in *Doggett*, the Third Circuit in *Hakeem* explained:

In *Doggett,* the United States Supreme Court drew its inference of prejudice from a delay of eight and one-half years in bringing the case to trial. On this record, we think that the fourteen and one-half months [in *Hakeem*] that passed between arrest and trial is insufficient to allow an inference of prejudice solely from the length of the delay. Its magnitude is too small to itself increase the factor of prejudice to a quantity that will perceptively weigh the balance we must make in Hakeem's favor. *Doggett* is otherwise distinguishable from Hakeem's case.

*Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992) (explaining that "[w]ith respect to the impairment to his defense, the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay" and finding that "[Defendant's] general allegation that his witnesses' memories faded during the delay does not rise to the level of specificity required to show actual prejudice.")).

Rinaldi has failed to demonstrate with any specificity that he has suffered prejudice as a result of a loss of memory on the part of his witness(es).  Rather, Defendant asserts that his "main" witness is "still willing to testify" but has forgotten "exact dates or places."  In the absence of "extreme delay", *Hakeem*, 990 F.2d at 763, Defendant's general assertion that the memory of one of his witness's as to "exact dates or places" has faded is insufficient to establish the necessary prejudice.  In addition, Defendant's assertion that his witnesses' memories "would be fresher" if he had been tried prior to February 2020 fails to demonstrate any substantial prejudice where it is Defendant who has caused even further delays by the filing of his three most recent pre-trial motions in February of 2020. Defendant was given the opportunity to proceed to trial in February and March of 2020, but

---

There, the defendant appears to have been unaware of the charges pending and so had no reason to prepare a defense. *Doggett,* at ---- - ----, 112 S.Ct. at 2691-92. Hakeem knew from the day of the robbery that it would be necessary to preserve his alibi. The Supreme Court in *Doggett* was also concerned with the general problem of accurately and fairly determining the truth about events that occurred eight and one-half years before trial. *Id.,* at ---- - ----, 112 S.Ct. at 2692-93. We do not believe a fourteen and one-half month delay is in the same category as the eight and one-half year delay held prejudicial in *Doggett.*
*Hakeem*, 990 F.2d at 764.

chose to file additional pre-trial motions, effectively pushing trial even further into the future and potentially affecting the memories of all witnesses in this case, both his own and the Government's.

Further, Defendant does not assert that any of his witnesses have become unavailable or otherwise unable, or unwilling, to testify.  *See Koller*, 956 F.2d at 1414 (although a general allegation that his witnesses' memories faded during the delay does not rise to the level of specificity required to show actual prejudice, Defendant's allegation that two of his witnesses became unavailable is specific); *Barker*, 407 U.S. at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious.").

In addition, Defendant states that the "medical care [in prison] is substandard", the "law library is inadequate", "outdoor recreation" is brief and limited, "items on commissary are over-priced", the price of phone calls is "exorbitant", and "living quarters are unsanitary." (Doc. 259, at 10).  Defendant also asserts that his incarceration is oppressive because his "financial resources have been depleted", his "relationships have been strained", he has lost his belongings and he was evicted from his residence.  (*Id.* at 10).  Even crediting these assertions, Rinaldi has failed to demonstrate that he has faced substandard conditions or other oppressive factors or conditions as compared to those generally faced by other pretrial detainees. *See Hakeem*, 990 F.2d at 761 (pre-trial detention, coupled with a fourteen-and-one-half delay, does not permit "an automatic inference of enough prejudice to balance that factor in a [Defendant's] favor without proof of sub-standard conditions or other

oppressive factors beyond those that necessarily attend imprisonment."); *Claxton*, 766 F.3d at 737-738 ("[Defendant] has given no indication that he faced substandard conditions as compared to those generally associated with the transfer of prisoners. . . ."). Furthermore, Defendant's assertions that he is prejudiced in so far as his "financial resources have been depleted" and that two of his children "had to discontinue their education because they no longer have the stability or financial resources to attend college" (Doc. 259, at 10) lack all credibility where Defendant had previously been incarcerated from 1999 to 2017, and had no history of employment during the nine-month period between his release from prison in November, 2017, and his arrest in August, 2018.

For the reasons previously explained, *supra*, when addressing Defendant's Speedy Trial Act claim as well as the other *Barker* factors, Defendant has failed to establish presumptive prejudice by the length of the delay in commencing trial.  *See Doggett*, 505 U.S. at 655-656 (Because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify", presumptive prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. . . .").  The approximately 22-months which have elapsed, by itself, is insufficient to support a finding that Defendant's Sixth Amendment right to a speedy trial has been violated.  *See also*, *Battis*, 589 F.3d at 683 (recognizing that fourteen-month period between arrest and trial is insufficient to establish presumptive prejudice, but holding that prejudice will be presumed where there is a forty-five month delay in bringing defendant to trial).

Therefore, the Court finds that the fourth *Barker* factor does not weigh in Rinaldi's favor as he has not established that he suffered specific prejudice or that he is entitled to a presumption of prejudice due to the delay in commencing trial in this matter.

As a result of the above-explained analysis, in balancing the *Barker* factors, the reason for the delay and the prejudice factors both weigh in the Government's favor. However, Rinaldi did assert his speedy trial rights and that the delay was sufficient to trigger the *Barker* analysis, such that these factors weigh in Rinaldi's favor, however slightly. Nevertheless, a significant portion of the delay in this case was attributable to Rinaldi's own conduct, and he has not established that he has suffered specific or presumed prejudice. Thus, in weighing the *Barker* factors, the balance weighs in favor of the Government, and Rinaldi has failed to demonstrate that his Sixth Amendment speedy trial right was violated.

### III. CONCLUSION

For the afore-discussed reasons, Defendant Rinaldi's pre-trial motion (Doc. 259) will be denied for the reasons set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge