THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : **3:18-CR-279** |
| | : **(JUDGE MARIANI)** |
| MICHAEL RINALDI, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Reconsideration (Doc. 301).

Motions for reconsideration may be filed in both civil and criminal cases. *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Specifically, a motion for reconsideration is generally permitted only if (1) there is an intervening change in the controlling law; (2) new evidence becomes available that was not previously available at the time the Court issued its decision; or (3) to correct clear errors of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F.Supp.2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F.Supp.2d 753, 755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir.

1995)).  Nor should they "be used as a means to reargue matters already argued and

disposed of or as an attempt to relitigate a point of disagreement between the Court and the

litigant."  *Donegan v. Livingston*, 877 F.Supp.2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden*

*v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)).

In the present case, on June 18, 2020, this Court denied Defendant Rinaldi's motion

to dismiss for violations of the Speedy Trial Act and Sixth Amendment.  (*See* Docs. 298,

299).  On June 26, 2020, Defendant timely filed a motion for reconsideration (Doc. 301)

raising a multitude of issues.  The Court will address Defendant's arguments in turn.

Defendant first challenges this Court's determination that only 57 days of time are

not excluded from the speedy trial calculations for purposes of determining whether there

has been a violation of the Speedy Trial Act.  (Doc. 301, at 1).

In its Memorandum Opinion addressing Defendant's motion to dismiss, the Court

explained that:

> Defendant . . .  admits that his motion for production, filed September 26, 2019
> (Doc. 197) "arguably stopped the clock for 30 days" until October 26, 2019,
> when the speedy trial clock resumed running until the filing of his motions for
> default and default judgment (Docs. 204, 205) on November 18, 2019.  (Doc.
> 259, at 2).  Defendant thus states that 22 non-excludable days elapsed during
> this time period.

(Doc. 298, at 14).  The Court further specifically noted that Rinaldi "'concede[s]'" the motions

for default and default judgment "'stopped the clock.'"  (Doc. 298, at 14 n. 3) (quoting Doc.

259, at 2).

Defendant now argues that although "[t]he court stopped the clock on November 19th 2019 because Rinaldi mistakenly filed a motion for default and for default judgment on both dockets", these two motions "should not have stopped the clock at all but for the sake of argument it should have stopped the clock for 14 days that this Court afforded the government to respond and nothing more" or, alternatively, for 30 days. (Doc. 301, at 1). Defendant's argument does not present an intervening change in the controlling law; the availability of new evidence that was not previously available when the Court issued its decision; or the need to correct clear errors of law or fact or to prevent manifest injustice. Rather, Defendant twice specifically conceded in his motion to dismiss that the motions for default and default judgment stopped the speedy trial clock (*see* Doc. 259, at 2). Rinaldi cannot now alter his position in light of his dissatisfaction with the Court's ruling which relied, in part, on Defendant's specific assertions in his motion to dismiss. In addition, Defendant's arguments in support of his motion to dismiss on the basis of a violation of the Speedy Trial Act consistently relied on the argument that the speedy trial clock is tolled for 30 days following a motion becoming ripe. Defendant now impermissibly requests that the Court discard his argument and adopt a different approach, unsupported by any legal argument, in order to increase the number of non-excludable days under the Speedy Trial Act. This, the Court will not do.

Defendant next asserts that this Court erred in stating that the speedy trial clock was tolled as of January 2, 2020, when Rinaldi filed a letter stating that it was "[his] position that

[his] pre-trial motions have been decided and [he] would like to go to trial" (Doc. 214).  (Doc. 301, at 2).  Once again, Rinaldi attempts to set forth arguments in his motion for reconsideration that were never made in his motion to dismiss.  Instead, the last time frame asserted by Rinaldi in his motion to dismiss as non-excludable time was from October 26, 2019 through November 18, 2019.  (*See* Doc. 259, at 2).  Rinaldi thereafter only asserted in his motion to dismiss that "a few more short periods of non-excludable time" elapsed. (Doc. 259, at 2-3).  Despite his motion to dismiss being filed on February 13, 2020, and thus being aware of any facts underlying an argument that certain time should be not deemed excludable in January of 2020, Rinaldi never made any such assertion. *See Jasin*, 292 F.Supp.2d at 677 ("motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment."). Thus, as to this assertion of error by the Court, Rinaldi has failed to meet any of the necessary requirements to succeed on a motion for reconsideration.[1]

Rinaldi next argues that "the clock should not have been stopped between April 27th, 2020 when the court denied his pre-trial release and May 4th 2020 when he appealed this denial." (Doc. 301, at 3).  The Court never stated in its memorandum opinion whether this

---

[1] In support of his argument that the Court erred in excluding certain time in January, 2020, from speedy trial calculations, Rinaldi complains that "[i]t would seem that Rinaldi is being punished for acting in a pro se capacity."  (Doc. 301, at 2).  Defendant is in no way being punished. Rather, this Court has taken great efforts to ensure that the defendant's arguments in each of the numerous motions he has filed are being fully recognized, understood, and addressed, such that the interests of justice are being served. Nonetheless, as was explained to Defendant at his hearing to proceed *pro se*, in choosing to represent himself, Defendant knowingly, voluntarily, and intelligently waived his right to counsel and is responsible for the contents of his pre-trial submissions and his actions, or inactions, in preparing for trial.

time was excluded, and therefore Rinaldi's argument is without basis. However, regardless of a determination on this issue, the time between April 27 and May 4, 2020, was already excluded pursuant to the Court's Order of February 4, 2020, wherein it cancelled Defendant's upcoming trials and explicitly excluded the time between February 3, 2020, the date on which Defendant filed his first motion to dismiss and his motion to suppress, and the date on which Defendant's pre-trial motions were ruled on, pursuant to 18 U.S.C. § 3161(h)(1)(D). (See Doc. 248, at ¶ 5).

Accordingly, Defendant has failed to demonstrate an intervening change in the controlling law; the availability of new evidence that was not previously available at the time the Court issued its decision on the motion to dismiss; or the need to correct clear errors of law or fact or to prevent manifest injustice, such that he is entitled to reconsideration of any portion of the Court's decision addressing his Speedy Trial Act claim.

Defendant also challenges this Court's determinations with respect to his Sixth Amendment speedy trial claim.

Rinaldi asserts that this Court "should have held a hearing or invited a response from defense counsel to determine when discovery was turned over." (Doc. 301, at 3).[2] In particular, Rinaldi argues that because he did not receive the wiretap sealing orders until July, 2019, eleven months after he was indicted, and he thus could not have filed a motion

---

[2] Rinaldi never requested a hearing with respect to any issue raised in his Sixth Amendment arguments.

to suppress prior to July, 2019, the time period from August, 2018 to July, 2019, should be counted against the Government in a determination of the second *Barker*[3] factor – reason for the delay. (*Id.* at 3-4). Once again, Rinaldi has not offered this Court any basis which would support a motion for reconsideration. Nor does Defendant's assertion take into consideration the approximately 20 pre-trial motions filed by Defendant between December, 2018 and June 13, 2019, which served to significantly delay the commencement of trial in this matter. (*See* Doc. 298, at 30-31)(examining reason for delay and noting that "Defendant filed eight *pro se* pre-trial motions in December, 2018, as well as a motion for a detention hearing and requests to represent himself *pro se*. (*See* Docs. 76, 77, 78, 79, 80, 81, 82, 85, 86, 88, 89, 90). In January, 2019, the Court having granted Defendant's motion to represent himself, Rinaldi filed an additional seven pre-trial motions. (*See* Docs. 103, 105, 107, 109, 111, 113, 115). In February, 2019, Defendant filed two more motions. (*See* Docs. 124, 137). As of May 9, 2019, all pre-trial motions pending at that time were ripe. Nonetheless, on June 13, 2019, Defendant filed a pre-trial motion to sever (Doc. 155).").

Defendant next argues that "had the government not filed a superseding indictment 17 months after my arrest I would have went to trial in February of 2020." (Doc. 301, at 4). Defendant contends that "the government still has not offered a valid reason for waiting 17 months to file a superseding indictment." (*Id.*). Although Defendant argues that this Court

---

[3] *See Barker v. Wingo,* 407 U.S. 514, 530 (1972) (identifying four factors to determine whether a defendant has been deprived of right to a speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant.").

6

failed to "address this in its opinion nor the impact this had on the delay" (*id*.), Defendant did

not raise this argument in his motion to dismiss. Nonetheless, the Court did address this

issue. In so doing, it stated:

> The Court turns to any purported delays in 2020, and the reasons therefor. The Court having disposed of a large majority of Defendant's motions on December 18, 2019, Defendant then requested reconsideration (Doc. 218) of a portion of the Court's decision addressing the motion to suppress on January 16, 2020. On January 21, 2020, the Government filed the First Superseding Indictment against Rinaldi. (Doc. 220). Defendant thereafter withdrew his remaining pre-trial motions, and, on January 31, 2020, the Court scheduled trial in this matter. Nonetheless, despite Defendant's stated desire to proceed to trial as soon as possible, Defendant thereafter filed a motion to suppress and two motions to dismiss. (*See* Docs. 243, 245, 259).

> Defendant does not assert that there is any delay attributable to the Government in 2020, nor is there any basis for so doing. The Government timely responded to each of Rinaldi's pre-trial motions filed in February, 2020, and no request for an extension of time to respond was requested. Rather, it was Defendant's pre-trial motions, and not any action on behalf of the Government, which led to the postponement of Defendant's trial dates.

(Doc. 298, at 33-34). While Defendant claims that it was the filing of the Superseding

Indictment which "necessitated the filing of more pre-trial motions and caused further delay"

(Doc. 301, at 4), this assertion is without merit. Only Defendant's motion to dismiss on the

basis of vindictive prosecution, pre-indictment delay, and requesting a bill of particulars

(Doc. 245) related directly to the Superseding Indictment. Defendant's motion to dismiss on

the basis of speedy trial violations argued that over 70 days on the Speedy Trial Act clock

had run by November 18, 2019. Thus, by Defendant's calculation, a violation on the

Speedy Trial Act occurred over two months prior to the filing of the Superseding Indictment

on January 21, 2020.  It was therefore not the filing of the Superseding Indictment that "necessitated the filing of more pre-trial motions" on the basis of speedy trial calculations. Furthermore, Defendant's motion to suppress (Doc. 243), filed February 3, 2020, moved to suppress "any and all evidence obtained as a result of the search" of a Black Lexus on the basis of this Court's memorandum opinion and order, issued December 18, 2019. The basis for the motion to suppress is thus unrelated to the timing of the filing of the Superseding Indictment and Defendant has set forth no explanation for why, or how, it was the filing of the Superseding Indictment which gave rise to this motion to suppress.[4]

Finally, Rinaldi asserts that "[w]ith respect to the fourth *Barker* factor, I have specifically noted the prejudice I suffered."  (Doc. 301, at 5).  Specifically, Defendant states that in his prior motion he identified "the evidence that was lost in November of 2019", consisting of "a phone, pictures and documents" and that "a witness had made notes of dates and time her and I were together and she can no longer find these notes nor does she remember these exact dates and times."  (*Id.*).  The Court explicitly addressed each of these assertions of prejudice in its prior memorandum opinion.  (*See* Doc. 298, at 37-43). Despite Rinaldi's argument in his reconsideration motion that he "specifically identified" the evidence that was lost, he did no more in his motion to dismiss than provide highly

---

[4] Defendant's argument that "had the government not filed a superseding indictment 17 months after my arrest I would have went to trial in February of 2020" and that that "the government still has not offered a valid reason for waiting 17 months to file a superseding indictment" (Doc. 301, at 4) is also thoroughly addressed in this Court's memorandum opinion ruling on Defendant's motion to dismiss on the basis of vindictive prosecution and pre-indictment delay.

generalized statements that his car contained "numerous photographs, documents and a cellphone which were all items Rinaldi wanted to use as evidence or exhibits in his trial," (Doc. 259, at 8).  Rinaldi did not set forth the nature or contents of the photographs or documents at issue, and only explained that the cell phone "contained a call log and text messages from people who are named as codefendants of Rinaldi and from other people whom Rinaldi anticipates that the government will call as witnesses."  (*Id.*).  Nor did Rinaldi set forth with any specificity the manner in which these items were relevant to his defense or otherwise may have aided his defense, or how his defense, through the purported loss of these items, was impaired as a result of any delay.

Here, just as with his motion to dismiss, Rinaldi's reconsideration motion again failed to identify the documents and photographs, set forth their contents, or explain how they would be relevant to his defense.  However, in his motion for reconsideration, Defendant requested, for the first time, that the Court hold a hearing "where [he] could call witnesses to prove [his] claims" of specific prejudice. (Doc. 301, at 5).

Although, as set forth by the Court in its Memorandum Opinion, Rinaldi failed to set forth a colorable claim of prejudice in support of his motion to dismiss, on June 30, 2020, this Court nonetheless granted Rinaldi's request for a hearing, "limited to the receipt of evidence from the parties as to the items, if any, which were in Defendant's 2002 Mercedes Benz at the time it was impounded by the Scranton Police Department in November of 2019

9

and thereafter, and the disposition of such items, to the extent that the evidence shows their presence in the vehicle at the time of impoundment or thereafter," (Doc. 303).

On July 8, 2020, the Court held an evidentiary hearing on the limited issue, *supra,* and also heard oral argument as to the relevance of any items the defendant contended the evidence showed were in his vehicle with respect to the charges against him or any defense he may raise at trial.  At the hearing, Defendant Rinaldi and his daughter, Tahliah Dillon, testified.  Rinaldi further entered into evidence a photograph of his Mercedes being towed in November of 2019 (Hr'g Ex., D-4).  The Government presented no testimony, but, without objection from Defendant, entered four exhibits on the record: the Application for a Search Warrant for a "black 2002 Mercedes Benz", accompanying affidavit, and signed Search and Seizure Warrant, all signed March 3, 2020 (Hr'g Ex., G-1); a photograph of the front seat of the Mercedes Benz and a photograph of the back seat of the vehicle (*id*. at G-2, G-3); and a "Report of Investigation", detailing the results of the "[e]xecution of Federal Search Warrant on 2002 Mercedes Benz bearing PA registration KRP5843" (*id*. at G-4).

At the hearing, Rinaldi testified that on the day of his arrest in August, 2018, he "had two telephones, car keys and some money and a few other things that [he] gave to [Andrew Henry], and then asked him to give them to" his daughter, Tahliah Dillon. (Unoff. Hr'g Tr., at

15).  Dillon stated that, on this same day, Henry gave her his "keys and two phones", and that Henry took her to pick up Rinaldi's Mercedes Benz.  (*Id*. at 1-2).[5]

Soon after Rinaldi was arrested, he called his daughter and asked her to "hold on to these phones" and to "retrieve a few other items for [him], because, at that time, . . . [he] felt a couple of these things might be relevant to [him] later. . . " (Unoff. Hr'g Tr., at 15).  Dillon stated that Rinaldi told her to get "the box with . . . [his] paperwork in it and the two yellow envelopes that were in there."  (*Id.* at 2).  Rinaldi did not tell her why he wanted her to retrieve the items.  (*Id.* at 7). According to Dillon, the envelopes contained "files" and "a lot of pictures." (*Id.* at 2).  Dillon did not know what was inside of the envelopes and did not know what the paperwork was, but identified the photographs as "family pictures, pictures of him, pictures of me, that was really it."  (*Id.* at 7-8).  Dillon further stated that she did not ever open the cell phone and did not know the contents on the phone.  (*Id.* at 9).

Dillon testified that she kept everything that Henry gave her, and that Rinaldi requested she keep, in the trunk of the Mercedes Benz.  (Unoff. Hr'g Tr., at 2).

In November, 2019, Dillon was a passenger in the Mercedes, which was being driven by her girlfriend, when it was pulled over by the police and was present that same day when the car was towed and impounded because it was not insured.  (Unoff. Hr'g Tr., at 6).  Dillon testified that on the date the car was towed, all of Rinaldi's items at issue were

---

[5] In Rinaldi's motion to dismiss for speedy trial violations and in his motion for reconsideration, he consistently only referred to one cellphone as being among the "missing" items.  However, at the hearing, Rinaldi and his daughter repeatedly referred to two cellphones as being in the car and now "missing."  At no point has Rinaldi attempted to explain this discrepancy.

still in the car.  (*Id.* at 3, 4).  Dillon stated that although she took "[her] stuff that was in the

car" on the day it was towed, she did not take any of Rinaldi's "stuff".  (*Id*. at 8-9).

Consistent with his daughter's testimony, Rinaldi admitted that the items at issue

were in his daughter's possession from August, 2018, when he was arrested, to November,

2019, when the vehicle was towed and impounded.  (Unoff. Hr'g Tr., at 19).

Rinaldi testified that he knew that the items at issue were "missing" in November or

December of 2019. (Unoff. Hr'g Tr., at 20).  At that time, he asked his daughter to attempt to

retrieve the items and "tried to have [his] nephew assist [him]" by posing as Rinaldi and

retrieve the items by pretending to be the owner of the vehicle.  (*Id.* at 15, 20) (*see also*, *id.*

at 3 (Dillon stating that she attempted to retrieve the items from the impounded car but was

unable to because "the car wasn't in [her] name.")).  After the vehicle was impounded,

Defendant did not ask his standby counsel to contact anyone about retrieving the items from

the vehicle until just prior to the hearing in this matter on July 8, 2020.  (*Id.* at 18).

At no point after Rinaldi's arrest in August, 2018, did he tell his lawyer about these

items, or his belief that they may be important to his defense, because "from the date of [his]

arrest, [he] never intended on being represented by counsel." (Unoff. Hr'g Tr., at 17).[6]

Defendant also testified that he did not ask his daughter to give the items to his lawyer.  (*Id.*

at 18).  (*See also, id.* at 19 (Rinaldi admitting that he never took any steps to make sure that

---

[6] Following Rinaldi's arrest, Attorney Joseph Blazosek was appointed as counsel for Defendant on August 10, 2018.  Attorney Blazosek remained as counsel for Rinaldi until January 16, 2019, when this Court permitted Defendant to proceed *pro se*, and, at Defendant's request, appointed Attorney Blazosek to serve as standby counsel for Rinaldi.

the items were given to his counsel for use in his defense)).  Although Dillon was at one of
Rinaldi's "early appearances" in this case, she did not speak with Defendant's counsel at
that time, inform him that she had these items, or give these items to his counsel.  (*Id.* 9-10).

Rinaldi testified at the hearing that these items, i.e., cellphone, pictures and
documents, were relevant to him because he has "been trying to . . . establish a timeline of
dates, times, places of [his] whereabouts because, currently, although the indictment
alleges a time frame, it doesn't allege any events that took place, it only has one actual
transaction that basically took place, but it doesn't establish any other transactions they say
took place or when exactly was the crime committed or any other overt acts or any other
manner, means, or facts." (Unoff. Hr'g Tr., at 16).

With respect to the cell phones at issue, Rinaldi asserted that the pictures on the
phone would show where he was on a particular date and who he was with. (Unoff. Hr'g Tr.,
at 16).  Further, according to Rinaldi, he contacted co-defendants Andrew Henry and
Dwayne Brown through voice and text message on both "missing" phones.  (*Id.* at 21).
Thus, Rinaldi asserted that the call logs would show "dates and time when a call was made
or when a text was sent", which would establish a timeline.  (*Id.* at 21).  Nonetheless,
Defendant stated that he was "quite sure, at one time or another, [he had] deleted some
[text messages]" from the phone he used to communicate with Henry and Brown.  (*Id.* at
22).  Rinaldi also admitted that there "might be things incriminating" on the phone, "but not
related to drug activity." (*Id.* at 22).  Defendant agreed that he was aware that the

13

Government "has already submitted evidence that [the call records for his phone obtained through a Pen trap/toll information] incriminate [him], because [he was] in frequent contact with [his] co-defendants and others." (*Id.* at 23).

Defendant further testified that "a lot of" the paperwork was "gambling receipts" which would "show some of the things that [he] was doing, when [he] was doing them, and explain[] some of the ways that [he] was receiving [his] money." (Unoff. Hr'g Tr., at 17). Rinaldi confirmed that the hard copy photographs at issue are family photographs and agreed that they have nothing to do with drug trafficking or a conspiracy to traffic drugs, but stated that the photographs could help to "explain away" a timeline set forth by Government witnesses by allowing him to "say, I was here on this date, I was here on this date, I was doing this" and could allow him to "establish my whereabouts at the majority of the times of the indictment". (*Id.* at 24).

The evidence presented at the hearing fails to support Rinaldi's position that "the evidence that was lost in November of 2019", consisting of "a phone, pictures and documents", establish prejudice in accordance with the fourth *Barker* factor (Doc. 301, at 5) such that Defendant's Sixth Amendment right to a speedy trial has been violated. In particular, Rinaldi's Motion for Reconsideration, in conjunction with the testimony, exhibits, and oral argument presented at the hearing, do not demonstrate the availability of new evidence that was not previously available at the time the Court issued its decision, or the need to correct clear errors of law or fact or to prevent manifest injustice.

Here, Defendant has failed to demonstrate that the cell phones, gambling receipts, or family photographs are sufficiently relevant to his defense or exculpatory so as to present the necessary prejudice to him such that his Sixth Amendment right to a speedy trial has been violated.

To the extent that Rinaldi believed that the cellphones, photographs, and documents at issue were relevant or of use to him in his defense, which by Rinaldi's own admission he believed from the time of his arrest, Defendant had a duty to preserve these items, a duty he repeatedly failed to carry out.

Preliminarily, despite believing that these items were relevant since on or about August, 2018, at no time prior to February of 2020 did Defendant ever inform his counsel or standby counsel of the existence of these items or their purported importance to this case. Nor did Rinaldi ever request that his standby counsel secure these items prior to November, 2019, or attempt to secure or retrieve these items after November of 2019 when they went "missing".

Despite admitting that he believed these items to be possibly relevant to his defense at or around the time of his arrest in August, 2018, and knowing that these items were "missing" as of November or December of 2019, Rinaldi did not file a motion to dismiss alleging violations of his speedy trial rights, including under the Sixth Amendment, and asserting the existence of these items and their importance to his defense until February 13, 2020.  Nor did Defendant take reasonable steps to attempt to have these items returned to

him. Instead, Defendant only asked his daughter to attempt to retrieve the vehicle, and then, when unsuccessful, asked his nephew to impersonate him. Rinaldi never requested that his stand-by counsel aid him or utilize legal process to retrieve the vehicle, or any items therein, nor did Rinaldi attempt to use legal process or procedures on his own to obtain these items. Rather, it was not until after this Court granted Rinaldi a hearing on June 30, 2020, seven months after this property went "missing", that Rinaldi requested that his standby counsel "call and find out about the vehicle or the property." (Unoff. Hr'g Tr., at 18-19). Rinaldi's failure to take reasonable steps to preserve, or thereafter retrieve, the items at issue, together with the untimeliness of Rinaldi's assertions in February, 2020 that these items are relevant and important to his defense (despite admitting that he believed them to be important since August, 2018) also undermines the validity of his claims of prejudice.

Crediting, for purposes here, that Rinaldi told his daughter to preserve these items, she did not do so despite these items being in her possession for over one year. During the approximately 13-months that these items were in her possession, she made no efforts to inform Defendant's counsel, or standby counsel, of these items, give the items to counsel, or otherwise secure the items or place them in a more secure location. Instead, the items were left in a car for approximately 13-months, which at some point became uninsured, and which was driven and occupied by an unknown number of people other than Dillon. The record testimony shows that the items at issue were simply left in a box and/or bag in the trunk of the Mercedes Benz for this entire time, unsecured and accessible to a number of

16

people. In addition, it is notable that, Dillon first testified that her father "didn't tell [her]" why he wanted her to retrieve and retain the items, but was "pretty sure he needed them for . . . his case" (Unoff. Hr'g Tr., at 7), she later testified that her father "kind of" told her that these items were urgent and that she needed to keep them safe (*id*. at 8).   Although Dillon claims that Rinaldi "kind of" told her that these items may be important, at the time the Mercedes was impounded, she only took her own "stuff" and none of Rinaldi's "stuff", including the cellphones which could be easily carried.   Nor did Dillon testify that she made efforts to take some or all of Rinaldi's items at issue on the day the car was towed and impounded, or that she was in anyway prevented from taking anything she wanted from the Mercedes Benz. Dillon's testimony is thus not consistent with a reasonable belief or understanding that retention or retrieval the cellphones, photographs, and documents was "urgent" or of importance to Rinaldi.

Rinaldi and Dillon's testimony demonstrates that, although Rinaldi had a duty to preserve any items he believed to be evidence relevant to his defense, he did not take reasonable steps to do so, despite having ample time to secure these items and ensure their availability for trial.   To the extent that this purported evidence was lost as a result of the Mercedes Benz being towed and impounded, any prejudice Defendant claims to have

suffered was created solely by Defendant and his actions, or lack thereof, to properly secure

the items at issue, and not by any delay he attempts to attribute to the Government.[7]

Rinaldi's explanation for how he has been prejudiced by the absence of the

cellphones, photographs, and documents, is further insufficient and unconvincing where the

hardcopy photographs are of no evidentiary value to this action; the documents

demonstrating illegal gambling fail to help Rinaldi establish the timeline which he claims

would undercut the claims that he engaged in a conspiracy; and the cellphones contain

transactions, and demonstrate contact, between Rinaldi and co-defendant Andrew Henry

and Dwayne Brown, and where Rinaldi has admitted that he has deleted certain text

messages from the phone.

---

[7] In his motion for reconsideration, Rinaldi argues that if this Court had granted his motion for an investigator, the "lost" items, as well as his witness's notes, "would have been preserved." (Doc. 301, at 7). This conclusory argument presents a baseless attempt to shift blame. Rather, there is nothing to suggest that an investigator was needed to "preserve" evidence of which Rinaldi was already aware and which was in the possession of his daughter and his witness. Rinaldi and his daughter possessed the items at issue for over 13-months and had ample time and opportunity to inform his standby counsel of these items or request counsel secure the items on Rinaldi's behalf. An investigator was unnecessary for the completion of this task.

Furthermore, Rinaldi's request for an investigator in his "Request for Funding and Other Assistance" consisted of a single sentence which stated that he needed an investigator because "[d]ue to [his] incarceration he is not in a position to locate or interview defense witnesses" (*see* Doc. 90, at 1). Rinaldi's need for an investigator only asserted a purported desire to "locate or interview" witnesses, and never contemplated the need for an individual to preserve existing evidence of which Defendant was aware and already possessed. It also is necessary to note that Rinaldi's generalized and vague request for an investigator "offered little more than undeveloped assertions that the requested assistance would be beneficial", *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985). *See also*, *Lewis v. Gov. of Virgin Islands*, 77 F.Supp.2d 681, 685 (D.V.I. 1999) ("Although numerous courts have held that trial judges may appoint investigators to assist indigent defendants in securing due process or the effective assistance of counsel, defendants must explain precisely why such assistance is necessary.")(collecting cases); *U.S. v. Gadison*, 8 F.3d 186, 191 (5th Cir. 1993) ("To justify the authorization of investigative services under § 3006A(e)(1), a defendant must demonstrate with *specificity,* the reasons why such services are required.").

Although Rinaldi's testimony as to the relevance of these items, i.e. to create "a timeline of dates, times, places of [his] whereabouts", is non-specific and speculative, it is also significant that the conspiracy alleged in Count I pursuant to 21 U.S.C. § 846 can be carried out without reference to an individual's physical location.[8]  To prove a conspiracy, the Government must "establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal," *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).  "Since conspiracy is a continuing offense, . . . a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, . . . and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. . ." *Smith v. United States*, 568 U.S. 106, 111 (2013) (internal quotation marks, brackets, and citations omitted).  As a result, "[t]he government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants." *Gibbs*, 190 F.3d at 197.  Here, inherent in Defendant's premise that the cellphones, photographs, and documents are necessary to create a "timeline" is that he could not have been engaging in a conspiracy and, for example, gambling, at the same time.  There is nothing to suggest that the possession of gambling

---

[8] Although Rinaldi claimed at the hearing that the cellphones, photographs, and documents would create a timeline, he never asserted that any of these items were relevant to Count II, which alleges Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841, on May 11, 2018, or that any of these items would show his location, whereabouts, or activities, on this day or otherwise provide exculpatory evidence as to that Count (*see* Doc. 220).  Rather, Rinaldi's assertion that the items at issue are necessary in order to create a timeline is premised on the need to "establish a time line that covers as much as possible of the time frame of the indictment" *because* the indictment "only has one actual transaction that basically took place", (Unoff. Hr'g Tr., at 16).

receipts would demonstrate that Rinaldi could not have engaged in actions in furtherance of a conspiracy.  The same is true for any photographs, either hardcopy or on a cellphone, or cellphone communications, which may place Rinaldi at a specific location at a certain date or time.  Rinaldi's day-to-day actions and whereabouts on a given day are not, in and of themselves, any evidence that would tend to show a lack of participation in a conspiracy or withdrawal from the conspiracy.

Thus, Rinaldi's argument that the items at issue are necessary to establish a timeline is unavailing where the elements of a conspiracy do not require evidence as to Defendant's specific daily, weekly, or other association with his alleged co-conspirators, but rather only require that the Government "establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal," *Gibbs*, 190 F.3d at 197.  Rinaldi's ability to testify, or otherwise show, that at a particular time he was with persons who were not part of the conspiracy or that he was in locations which may not have been the areas of distribution of the illegal substances does not present a defense to the charge of conspiracy to the extent the Government presents evidence of a conspiracy itself, *i.e.* the existence of an agreement to distribute or possess with intent to distribute, a controlled substance, that Rinaldi was a member of this agreement, and that Rinaldi joined this agreement knowing of its objective to distribute or possess with intent to distribute a controlled substance and intending to join together with at least one other

alleged conspirator to achieve that objective, see 3d Cir. Model Crim. Jury Instruction §

6.21.846B.

In addition, Rinaldi has failed to demonstrate how the cellphones, photographs, or

documents, would be otherwise relevant or exculpatory in this case.

With respect to the cellphones, Defendant testified that these phones would show that

he was in contact with Andrew Henry and Dwayne Brown. The record evidence does not

show how the cellphones, or the text messages/phone logs with these individuals would help

Rinaldi. Instead, according to Rinaldi, the relevance and evidentiary value of this information

is that the call logs would show "dates and time when a call was made or when a text was

sent", which would establish a timeline. (Unoff. Hr'g Tr., at 21). Rinaldi fails to explain how

this information may tend to show that he did not engage in a conspiracy with these co-

defendants. Further, Defendant admitted that he was "quite sure, at one time or another, [he

had] deleted some [text messages]" from the phone he used to communicate with Henry and

Brown (Unoff. Hr'g Tr., at 22), thereby reducing the evidentiary value and reliability of the

contents of the cellphones and the relevance of the information on the cellphones.

In addition, the undisputed fact that the cellphones contained communications

between Rinaldi and several co-defendants, and otherwise demonstrated contact between

these individuals, supports the Government's position that it "would love to have that phone

as evidence [as t]hat phone would directly connect [Rinaldi] to this case to his co-

conspirators, [and] would be evidence that the Government would want to have in its

possession", (Unoff. Hr'g Tr., at 33).  The unavailability of the cellphones to the Government, as well as Defendant's purported loss of the phones, vitiates any claim that the absence of the cellphones prejudices Defendant.

Rinaldi has also failed to show how the absence of any photographs or "documents", which Rinaldi only identified as illegal gambling receipts, impair his defense such that he has suffered, or will suffer, prejudice as a result.  The hardcopy photographs, which Rinaldi and Dillon both testified consisted only of family photographs, are of little, to no, relevance to these charges in this action, and Rinaldi failed to present any evidence that these hardcopy photographs would in any way aid him in his defense or that the absence of these photographs presents any prejudice to him.  Similarly, Rinaldi has not shown that the "missing" gambling receipts may offer an evidentiary value or the manner in which they could support his defense.[9]

For the afore-discussed reasons, Rinaldi has not shown that he has suffered either specific or presumed prejudice as a result of the purported loss of cellphones, family photographs, and gambling receipts.

In addition, Rinaldi's general assertion in support of his motion for reconsideration, that he has demonstrated specific prejudice in that "[his] witness no longer has the notes

---

[9] It must also be noted that Rinaldi has also not shown that the hardcopy photographs or the gambling receipts are, in actuality, missing, or that he has taken steps to discover whether they are still in the trunk of the Mercedes Benz.  As noted by the Government at the hearing, "[i]f there were photographs of family members in the trunk, with gambling receipts," the Government "sees no evidentiary value in those" and therefore would not have seized those items.  (Unoff. Hr'g Tr., at 33).

she made and" he has identified "what it is she no longer remembers" (Doc. 301, at 7), is

without merit.  In his motion to dismiss, Rinaldi asserted that his witness "lost her note[s]"

that Rinaldi asked her to make "pertaining to times and/or dates [she was] with Rinaldi

and/or his alleged co-conspirators" and that although this witness is "still willing to testify as

a defense witness . . . due to the passage of time she no longer remembers the exact dates

or places when or where certain events occurred."  (*See* Doc. 259, at 9). Similar to this

Court's analysis with respect to the "missing" cellphones, documents, and photographs, the

witness's inability to provide "exact dates or places when or where certain events occurred",

creates little prejudice to the defendant where his day-to-day actions and whereabouts do

not, in and of themselves, provide evidence that would tend to show a lack of participation in

a conspiracy or a withdrawal from a conspiracy.  As this Court noted in its memorandum

opinion addressing Defendant's motion to dismiss, Defendant's assertions of prejudice as a

result of his witness's loss of notes or fading memory is also diminished by the fact that the

witness remains available and willing to testify.  (*See* Doc. 298, at 43 ("Defendant does not

assert that any of his witnesses have become unavailable or otherwise unable, or unwilling,

to testify.  *See* [*United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992)] (although a

general allegation that his witnesses' memories faded during the delay does not rise to the

level of specificity required to show actual prejudice, Defendant's allegation that two of his

witnesses became unavailable is specific); *Barker*, 407 U.S. at 532 ('If witnesses die or

disappear during a delay, the prejudice is obvious.').").

Here, in determining prejudice, the Court's analysis would not be complete without noting that this Court has already found, in analyzing the *Barker* factors, that a substantial portion of the delay in this case was attributable to Rinaldi's own conduct, and specifically, that Defendant's significant motion practice (which continues to the present day), has been the principal cause of the delay in bringing this action to trial. *See United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)(quoting *Barker*, 407 U.S. at 533) (explaining that none of the four *Barker* "factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'"). Thus, upon consideration of Defendant's arguments in his motion for reconsideration and the evidence and oral argument presented at the hearing, the Court's findings in its memorandum opinion addressing Rinaldi's motion to dismiss remain the same; specifically,

> in balancing the *Barker* factors, the reason for the delay and the prejudice factors both weigh in the Government's favor. However, Rinaldi did assert his speedy trial rights and that the delay was sufficient to trigger the *Barker* analysis, such that these factors weigh in Rinaldi's favor, however slightly. Nevertheless, a significant portion of the delay in this case was attributable to Rinaldi's own conduct, and he has not established that he has suffered specific or presumed prejudice. Thus, in weighing the *Barker* factors, the balance weighs in favor of the Government, and Rinaldi has failed to demonstrate that his Sixth Amendment speedy trial right was violated.

(Doc. 298, at 45). Rinaldi's motion for reconsideration does not point to an intervening change in the controlling law, the availability of new evidence that was not previously available at the time the Court issued its decision, or the need to correct clear errors of law or fact or to prevent manifest injustice. Instead, Rinaldi's motion simply argues with this

24

Court's analysis which was directly based on the limited and conclusory assertions set forth by Defendant with respect to the purported lost evidence, which lacked any specificity, and fading witness memories. The evidence presented at the hearing fails to alter this Court's analysis or demonstrate, or even suggest, the specific or presumed prejudice contemplated by the fourth *Barker* factor.

For the foregoing reasons, the Court will deny Defendant's Motion for Reconsideration (Doc. 301). A separate Order follows.

Robert D. Mariani
United States District Judge