THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 3:18-CR-279 |
| | : | (JUDGE MARIANI) |
| MICHAEL RINALDI, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Michael Rinaldi's "Motion to Dismiss" (Doc. 245).

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi, Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846. (*See* Doc. 37). That same day, the federal grand jury also returned an indictment charging Defendants Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846. (*See* 3:18-cr-280, Doc. 1).

On January 16, 2019, at the request of Defendant Rinaldi, the Court held a hearing in accordance with *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Peppers*,

302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Defendant Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant Rinaldi understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent herself.  Following this colloquy, the Court determined that Mr. Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding *pro se* and therefore granted Mr. Rinaldi's request to represent himself.  The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

Beginning in December of 2018 and through November, 2019, Defendant Rinaldi continually filed a number of *pro se* pretrial motions. By December 18, 2019, this Court had ruled on approximately 18 substantive pre-trial motions filed by Defendant (*see e.g.* Docs. 207-211), and had addressed a number of other motions, requests, and issues raised by Defendant with respect to difficulties as to receipt and review of materials, including discovery, due to his *pro se* status, as well as inquiries into jury selection (*see e.g.* Docs. 138, 140, 144, 158, 181).

On January 21, 2020, the Government filed a First Superseding Indictment (Doc. 220), charging Michael Rinaldi with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846 (Count I) and with Distribution and Possession with Intent to

Distribute Cocaine, in violation of 21 U.S.C. § 841 (Count II).  (Doc. 220).  Upon review of

the indictments and as outlined by the Government in its "Notice Regarding Superseding

Indictment" (Doc. 224), the differences between the original Indictment and the First

Superseding Indictment are as follows: (1) the Superseding Indictment applies only to

Michael Rinaldi; (2) the Superseding Indictment amends Count I to plead facts establishing

Rinaldi's prior drug conviction; (3) Count I was amended to allege that the conspiracy began

in November of 2017, rather than July of 2018, and that Rinaldi conspired to traffic heroin

and marijuana in addition to cocaine and cocaine base; (4) the Superseding Indictment

adds Count II, alleging Distribution and Possession with Intent to Distribute Cocaine; and (5)

the Superseding Indictment adds a forfeiture count.

On January 31, 2020, this Court issued two Orders scheduling trial in Defendant's

criminal action.  In so doing, the Court explained:

> As of January 31, 2020, with the exception of Rinaldi's motion for
> reconsideration (Doc. 218) [filed January 16, 2020], requesting that this Court
> reconsider a portion of its opinion and order granting in part and denying in part
> Defendant's motion to suppress due to the untimely sealing of wiretaps, each
> of Defendant's pre-trial motions have been either decided or withdrawn at the
> request of Defendant.  Thus, in accordance with the provisions of the Speedy
> Trial Act, the Court will schedule trial on Count I of the Superseding Indictment
> to begin within the time remaining under 18 U.S.C. § 3161.  However, because
> the time remaining on the Speedy Trial clock with respect to Count I is less than
> thirty days, and Count II of the Superseding Indictment is subject to a new
> speedy trial period and, absent written consent by Defendant, trial cannot
> commence on Count II less than thirty days from the date on which Defendant
> was arraigned on that charge, *see* 18 U.S.C. § 3161(c)(2), the Court will
> schedule separate trials on Count I and Count II.

(Doc. 240, at 2-3; *see also,* Doc. 241, at 2-3). A jury trial on Count I of the Superseding Indictment was therefore scheduled to commence on February 11, 2020 (Doc. 240), and a jury trial on Count II of the Superseding Indictment was scheduled to commence on March 2, 2020 (Doc. 241).

However, on February 3, 2020, Defendant Rinaldi filed a "Motion to Suppress", moving to suppress "any and all evidence obtained as a result of the search" of a Black Lexus (Doc. 243) and a "Motion to Dismiss" requesting that the Court dismiss the indictment against him on a number of bases and that the Court also construe this motion as a Motion for a Bill of Particulars (Doc. 245). As a result of Defendant's filing of these motions one week prior to the commencement of trial on Count I, the Court found that "upon consideration of [the motions], the issues raised therein, and the time necessary to brief the motions and fully evaluate the parties' arguments", trial on both Counts must be cancelled and would be re-scheduled following the disposition of Defendant's motions. (Doc. 248). The Court excluded the time between February 3, 2020 and the date on which Defendant's pre-trial motions were decided from Speedy Trial calculations pursuant to 18 U.S.C. § 3161(h)(1)(D).

On February 13, 2020, Defendant filed a second "Motion to Dismiss" (Doc. 259), asserting that "the indictment should be dismissed with prejudice for a violation of his speedy trial rights." The Court denied this motion on June 18, 2020 (Docs. 298, 299). That same day, the Court re-scheduled the jury trial on Counts I and II of the First Superseding Indictment to begin on August 3, 2020. (Doc. 300).

On July 9, 2020, Defendant filed a third "Motion to Dismiss" (Doc. 310).

The Court addresses in this Memorandum Opinion Defendant's first Motion to Dismiss (Doc. 245) and, for the following reasons, will deny this motion.

## II. ANALYSIS

Rinaldi's first "Motion to Dismiss" (Doc. 245) requests that the Court dismiss the indictment against him on a number of bases, including vindictive prosecution and pre-indictment delay with respect to the First Superseding Indictment, and further requests that the Court order the Government to provide a bill of particulars.

## A. Vindictive Prosecution

Defendant first asserts that "the indictment is vindictive and was only filed to retaliate against and to punish Rinaldi for filing pre-trial motions and insisting on going to trial." (Doc. 245, at 1). Rinaldi further argues that the filing of the First Superseding Indictment was not only "clearly vindictive" but also violated his Due Process Rights. (Doc. 245, at 2).

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 373 (1982)(quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Goodwin*, 457 U.S. at 373. Consequently, "it is an elementary violation of due process for a prosecutor to engage in conduct detrimental to a criminal defendant for the vindictive purpose of penalizing the

defendant for exercising his constitutional right to a trial." *United States v. Paramo*, 998 F.2d 1212, 1219 (3d Cir. 1993).

A defendant has the burden of proving a claim of prosecutorial vindictiveness. *Paramo*, 998 F.2d at 1220.  "In general, there are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness.  Second, in certain circumstances, a defendant may show facts sufficient to give rise to a presumption of vindictiveness." *Paramo*, 998 F.2d at 1220 (citing *Goodwin*, 457 U.S. at 374, 380 & n.12, 384)(internal citations omitted).

With respect to the second way to prove a claim of vindictiveness, i.e., by presumption, the Third Circuit has explained:

> The presumption of vindictiveness is a prophylactic rule designed to protect a defendant's due process rights where a danger exists that the government might retaliate against him for exercising a legal right. Because such a presumption may operate in the absence of any proof of an improper motive, courts will apply it only where there exists a realistic likelihood of vindictiveness. Even if a defendant establishes a realistic likelihood of vindictiveness, however, the government still has an opportunity to proffer legitimate, objective reasons for its conduct. Where the government's conduct is attributable to legitimate reasons, we will not apply a presumption of vindictiveness.

*Paramo*, 998 F.2d at 1220 (internal citations and quotation marks omitted).

However, where there is no "reasonable likelihood" of vindictiveness, the defendant must prove actual vindictiveness, *Esposito*, 968 F.2d at 303, proof of which is "'exceedingly difficult to make'", *Paramo*, 998 F.2d at 1221 (quoting *United States v. Meyer,* 810 F.2d 1242, 1245 (D.C. Cir. 1987)).  Thus, "a charging decision generally is not impermissible

unless it results 'solely' from the defendant's exercise of a guaranteed legal right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution." *Paramo*, 998 F.2d at 1221 (citing *Goodwin*, 457 U.S. at 380 n.11 (stating that "[a] charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution.")).

Here, Rinaldi does not explain whether he is asserting actual vindictiveness by the Government or the existence of a presumption of vindictiveness. Defendant only argues that "his co-defendants who did not file any pre-trial motions and who both have prior convictions did not receive an 851 enhancement nor were they named in the superseding indictment" and that the "superseding indictment was not brought until 17 months after the original indictment" and was filed "1 month after this Court granted Rinaldi's motion to suppress and 1 or 2 weeks after this Court accepted pleas from Rinaldi's co-defendants." (Doc. 245, at 3-4).

Defendant has failed to establish a presumption of prosecutorial vindictiveness or that the Government acted with actual vindictiveness.

Defendant states that at his initial arraignments in 2018, "he was informed that if he were to plead guilty that he would not be enhanced pursuant to 21 U.S.C. § 851" but that if he "chose to file pre-trial motions and/or insisted on a trial", the Government "would not only

7

file an information of prior conviction but they would also supersede the indictment to
include more or more severe changes."  (Doc. 245, at 2).[1]

"[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or
retaliation so long as the accused is free to accept or reject the prosecution's offer."
*Bordenkircher*, 434 U.S. at 363.  In examining a claim asserting a presumption of
prosecutorial vindictiveness, because "charges brought in an original indictment may be
abandoned by the prosecutor in the course of plea negotiation – in often what is clearly a
'benefit' to the defendant – changes in the charging decision that occur in the context of
plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.'"
*Goodwin*, 457 U.S. at 379-380.  This is because "[a]n initial indictment – from which the
prosecutor embarks on a course of plea negotiation – does not necessarily define the extent
of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate
charges already brought in an effort to save the time and expense of trial, a prosecutor may
file additional charges if an initial expectation that a defendant would plead guilty to lesser
charges proves unfounded."  *Goodwin*, 457 U.S. at 380.  As further explained by the
Supreme Court,

> If a prosecutor could not threaten to bring additional charges during plea
> negotiation, and then obtain those charges when plea negotiation failed, an
> equally compelling argument could be made that a prosecutor's initial charging
> decision could never be influenced by what he hoped to gain in the course of
> plea negotiation. Whether "additional" charges were brought originally and

---

[1] The Government denies this happened, stating that "Rinaldi was informed of the government's
intent to file a Section 851 information at his very first appearance in this case."  (Doc. 262, at 8).

dismissed, or merely threatened during plea negotiations, the prosecutor could be accused of using those charges to induce a defendant to forgo his right to stand trial. If such use of "additional" charges were presumptively invalid, the institution of plea negotiation could not survive. Thus, to preserve the plea negotiation process, with its correspondent advantages for both the defendant and the State, the Court in *Bordenkircher* held that "additional" charges *may* be used to induce a defendant to plead guilty. Once that conclusion was accepted, it necessarily followed that it did not matter whether the "additional" charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down. In the former situation, the prosecutor could be said simply to have "anticipated" that the defendant might refuse to plead guilty and, as a result, to have placed his "threat" in the original indictment.

*Goodwin*, 457 U.S. at 378 n.10.

Defendant asserts that he was told by the Government in August of 2018 that if he did not enter into a guilty plea and "insisted on a trial", the Government would file an information pursuant to 21 U.S.C. § 851 and supersede the indictment. The Government denies this assertion in its entirety and Rinaldi's claims with respect to any comments the Government made as to a § 851 enhancement are clearly belied by the record.

At Defendant's August 10, 2018 initial appearance, the Government was asked by the Court to "summarize the nature of the charges and . . . state the maximum potential penalties in the event [Defendant is] convicted of the charge." (Hr'g Tr., Aug. 10, 2018, at 7). In response, the Government stated:

> The complaint charges a violation of Title 21 United States Code Section 846, conspiracy to distribute and possess with intent to distribute cocaine. This carries a maximum -- Your Honor, because of a prior drug trafficking conviction -- felony conviction -- Mr. Rinaldi is subject to an 851 -- section 851 information of prior conviction so to advise -- appropriately advise Mr. Rinaldi, these maximums take that into consideration. That results in a maximum 30 year

prison term, $2 million fine, a term of supervised release, a mandatory minimum of six years up to life and a $100 special assessment.

(*Id*. at 7-8). Subsequently, at Defendant's arraignment on September 5, 2018, the Government specifically informed Rinaldi that "because of prior drug-trafficking felony convictions, an information of prior conviction will be filed in this case pursuant to Section 851 of Title 21." (Hr'g Tr., Sept. 5, 2018, at 4). One month later, on October 5, 2018, the Government filed the Information of Prior Conviction of Controlled Substance Offense (Doc. 66). At that time, no pre-trial motions were pending, discovery was ongoing, and there is no indication that Rinaldi or his counsel had communicated, or made, any final decision or declaration to the Government that he would not accept any guilty plea and intended to proceed to trial.[2]

Even if this Court were to accept as true for purposes of determining whether the Government has engaged in vindictive prosecution, the Government's purported statement as to filing a 21 U.S.C. § 851 and superseding the indictment if Rinaldi did not plead guilty, Defendant still fails to establish vindictive prosecution. As stated, *supra*, Rinaldi's assertion

---

[2] In fact, at Rinaldi's initial appearance on August 10, 2018, he twice stated that he "want[s] to plead guilty today and accept the fine." (Hr'g Tr., Aug. 10, 2018, at 12, 13).

Further, at his arraignment on January 30, 2020, on the First Superseding Indictment, Defendant Rinaldi repeatedly stated that he wished to plead guilty. Defendant informed the Court that the potential penalties associated with the charges against him "affect[] my decision today of whether or not to plead guilty, because if it's or [*sic*] a fine, I'm definitely going to plead guilt and take the fine." (Hr'g Tr., Jan. 30, 2020, at 7-8). When informed by Magistrate Judge Mehalchick that she could not accept a guilty plea "at this juncture" and thus "entering a guilty plea today is not a possibility", Defendant responded "But that was actually the plea I wanted to enter." (*Id*. at 8). Defendant then informed the Magistrate Judge that he "strongly ha[d] an objection" to her entering a plea of not guilty on his behalf. (*Id*.). When asked how he wanted to plead, Defendant stated that he "still want[s] to enter a plea of guilty. . . " (Hr'g Tr., Jan. 30, 2020, at 10).

that this statement was made in August of 2018 demonstrates that it clearly preceded the filing of Rinaldi's pre-trial motions and arguably came before the Government was informed that Rinaldi did not intend on entering into a guilty plea.

Thus, it cannot be said that the Government's filing of a § 851 enhancement in October, 2018 and again in January 2020 (Doc. 223), was the result of Defendant asserting his legal rights to file pre-trial motions or proceed to trial.

Nor has defendant established that the Government's decision to file a superseding indictment in January, 2020, was the result of Defendant asserting his legal rights to file pre-trial motions or proceed to trial.  As explanation for the Superseding Indictment, the Government states that Rinaldi "personally delivered cocaine to an informant, and discussed a heroin sale over a consensually-recorded telephone call" and that this information "and more impacted the government's decision to seek the addition of Count Two." (Doc. 262, at 8).

Here, by Defendant's own admission, he was aware since his arraignment in 2018 that the Government may seek to file a superseding indictment.  As explained by the Government, and uncontradicted by Rinaldi in his Reply brief, "Rinaldi was provided discovery at the very beginning of the case regarding the facts of the controlled purchase that resulted in" the basis for Count II of the First Superseding Indictment for Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841. (Doc. 262, at 4).  In addition, as noted by the Government in its Notice Regarding Superseding

Indictment, among other changes, Count I of the Superseding Indictment was amended to allege a conspiracy to distribute and possess with intent to distribute marijuana, "which is the same conspiracy alleged in the indictment in 3:18-CR-280 [filed August 21, 2018]." (Doc. 224, at ¶ 2 n.1). Rinaldi has failed to demonstrate that he was not on notice that the Government may file a Superseding Indictment, or the allegations underlying this indictment and the charges therein, or that the Government's decision to file the Superseding Indictment was in any way related to his filing of pre-trial motions or decision to proceed to trial. *See Bordenkircher*, 434 U.S. at 360 ("This is not a situation . . . where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty."); *United States v. Oliver*, 787 F.2d 124, 126 (3d Cir. 1986) (no prosecutorial vindictiveness where Defendant "was fully informed of the consequences of his choices; he freely decided not to cooperate to a greater extent with the local authorities and, as a result, was later indicted by federal authorities.").

In addition, Rinaldi's argument that "his co-defendants who did not file any pre-trial motions and who both have prior convictions did not receive an 851 enhancement nor were they named in the superseding indictment" (Doc. 245 at 3) does not support his assertion of vindictive prosecution. Rather, his co-defendants' decisions to plead guilty, and therefore not be named in a superseding indictment, highlights one of the precise purposes of engaging in plea negotiations and the benefits to each side. Just as Dwayne Brown and

Andrew Henry, Defendant was free to accept or reject the Government's offer and was admittedly aware of the consequences of his decision to proceed to trial. The fact that his co-defendants made the decision to accept a plea agreement, and thus not be subject to further charges of a superseding indictment, does not lend any support to a claim of prosecutorial vindictiveness. Both Brown and Henry are represented by competent counsel, and there is no suggestion that either guilty plea was coerced or not entered into freely and voluntarily.

Further, Rinaldi does not contend that the Government improperly charged him, or that the charges contained in the Superseding Indictment are unsupported by probable cause. *See Bordenkircher,* 434 U.S. at 364 ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."); *id*. at 365 (holding that where prosecutor "no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing changes on which he was plainly subject to prosecution", there was no Due Process violation).

Finally, Rinaldi's assertion that the Government's decision to file a Superseding Indictment "1 or 2 weeks after this court accepted pleas from Rinaldi's co-defendants" demonstrates vindictiveness (Doc. 245, at 3-4), in actuality, cuts against him. Although signed plea agreements for Rinaldi's co-defendants Andrew Henry and Dwayne Brown

were filed of record in July, 2019 (Docs. 164, 165), due to requests by the parties to re-

schedule the co-defendants' change of plea hearings because of "an issue" that may have

required amendment to those plea agreements (*see e.g.*, Docs. 182, 183, 199, 200),

Defendants Henry and Brown pleaded guilty before this Court on January 8, 2020, and

January 13, 2020, respectively.  The guilty pleas of the co-defendants may have provided

the Government with information or evidence necessary to convince the Government of the

propriety of setting forth the additional allegations and charges in the Superseding

Indictment. *See Goodwin*, 457 U.S. at 381 ("In the course of preparing a case for trial, the

prosecutor may uncover additional information that suggests a basis for further prosecution

or he simply may come to realize that information possessed by the State has a broader

significance. At this stage of the proceedings, the prosecutor's assessment of the proper

extent of prosecution may not have crystallized.").

   Not only has Rinaldi failed to establish a presumption of prosecutorial vindictiveness,

i.e. a "reasonable likelihood" of vindictiveness, he has also not shown that the Government

acted with actual vindictiveness. Here, the record does not reflect that the Government's

decision to file a superseding indictment resulted "solely" from the defendant's exercise of a

guaranteed legal right.  For substantially the same reasons as discussed, *supra*, Rinaldi has

not offered any evidence to meet the "'exceedingly difficult" standard necessary to establish

actual vindictiveness, *Paramo*, 998 F.2d at 1221.  Rather, Rinaldi has offered only self-

serving, unsupported assertions, and has not pointed to any evidence which can reasonably

be said to prove that the Government's decision to file a Superseding Indictment was "solely" due to Defendant's exercise of his right to file pre-trial motions or to proceed to trial.

Consequently, Defendant's motion to dismiss due to prosecutorial vindictiveness will be denied.

## B. Pre-Indictment Delay

Rinaldi next argues that the indictment should be dismissed "for a pre-indictment delay." (Doc. 245, at 4). In his Reply brief, Rinaldi explains that he is "not attacking the original indictment, he is attacking the new or superseding indictment" filed January 21, 2020. (Doc. 265, at 3).

The Fifth Amendment has only "a limited role to play in protecting against oppressive" pre-indictment delay because statutes of limitations provide "predictable, legislatively enacted limits on prosecutorial delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). *See also, United States v. Marion*, 404 U.S. 307, 322 (1971) (statutes of limitation "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced."). However, the "statute of limitations does not fully define [a defendant's] rights with respect to the events occurring prior to indictment." *Marion*, 404 U.S. at 324. Thus, a defendant can "invoke the extreme sanction of dismissal" under the Due Process Clause of the Fifth Amendment, *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985), by establishing pre-indictment delay "only if he can show both (1) that the delay between the crime and the federal

indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him," *United States v. Beckett*, 208 F.3d 140, 150-151 (3d Cir. 2000). *See also, Lovasco*, 431 U.S. at 790 ("proof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.") (citing *Marion*, 404 U.S. 307). Nevertheless, "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Lovasco*, 431 U.S. at 790.

With respect to the need to establish that the delay between the crime and the indictment actually prejudiced his defense, Rinaldi asserts that he was prejudiced "through the loss of evidence", including (1) a cellphone, photos, and documents that were in a car confiscated by the Scranton Police Department in November, 2019; and (2) two witnesses who "are still willing to testify on [Rinaldi's] behalf" but have allegedly "forgot most of the details, times and dates of the events" about which Rinaldi seeks their testimony. (Doc. 245, at 5).

This Court has previously addressed these identical "loss of evidence" arguments in its Memorandum Opinion denying Defendant's Motion to Dismiss for violation of his Sixth Amendment right to a speedy trial (*see* Doc. 298, at 25-45), as well as in its Memorandum Opinion denying Defendant's Motion for Reconsideration of that decision. In its

Memorandum Opinion denying Defendant's Motion to Dismiss, this Court applied the four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972) in addressing post-indictment delay.  As relevant here, one of the factors identified by the Supreme Court in *Barker* was whether the defendant had been prejudiced by the delay.  This "prejudice" prong set forth in *Barker* requires the same analysis when determining whether a defendant has suffered prejudice due to pre-indictment delay.  *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 868-869 (1982) (explaining that the "same 'prejudice' requirement" set forth in *Marion* and *Lovasco* "has been applied to cases of postindictment delay", citing to *Barker*).

The Court incorporates herein its *Barker* analysis (Doc. 298, at 25-45), and in particular its analysis addressing Defendant's assertions with respect to the alleged prejudice suffered as a result of purportedly lost items contained in a car (Doc. 298, at 39-41) and any loss of memory by his witness(es) as to details he deems relevant to his case (*id*. at 41-43). The Court further incorporates herein its analysis set forth in its Memorandum Opinion denying Defendant's Motion for Reconsideration, which provides a detailed analysis of Defendant's failure to demonstrate prejudice due to the purported loss of a cellphone, photographs, and documents.  In incorporating these opinions however, the Court notes that unlike a Sixth Amendment claim, wherein a defendant may succeed in demonstrating prejudice by establishing either specific prejudice or a presumption of prejudice, to succeed on a Fifth Amendment Due Process claim, a defendant must demonstrate *actual* prejudice,

thus creating a higher burden on the defendant in establishing prejudice under the Fifth Amendment than he would face under the Sixth Amendment. *See United States v. Gouveia,* 467 U.S. 180, 192 (1984) ("[T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him <u>actual prejudice</u> in presenting his defense."); *Lovasco,* 431 U.S. at 789 ("[P]roof of <u>actual prejudice</u> makes a due process claim concrete and ripe for adjudication, [but] not . . . automatically valid."); *Marion,* 404 U.S. at 326 ("Events of trial may demonstrate <u>actual prejudice</u>, but at the present time [defendants'] due process claims are speculative and premature.") (underlines added).  For those reasons, Rinaldi's assertions of prejudice must fail under the Fifth Amendment, just as they did in this Court's Sixth Amendment analyses.

In addition, there is no suggestion that any charges brought in the superseding indictment fall outside the statute of limitations, thereby significantly lessening any presumption that a defendant's right to a fair trial is prejudiced.  *See Marion*, 404 U.S. at 325-326 (in attempting to show pre-indictment delay, the defendants "rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment"; but

acknowledging that while Defendants' arguments pre-trial "are speculative and premature", "[e]vents of the trial may demonstrate actual prejudice. . . ").

Furthermore, Rinaldi's challenge is limited to pre-indictment delay in bringing the First Superseding Indictment. (*See* Doc. 265, at 3). As previously noted when addressing Defendant's arguments with respect to vindictive prosecution, the Government asserts, without objection, that "Rinaldi was provided discovery at the very beginning of the case regarding the facts of the controlled purchase that resulted in" the basis for Count II of the First Superseding Indictment for Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841. (Doc. 262, at 4). Additionally, Count I of the Superseding Indictment was amended to allege a conspiracy to distribute and possess with intent to distribute marijuana, "which is the same conspiracy alleged in the indictment in 3:18-CR-280 [filed August 21, 2018]." (Doc. 224, at ¶ 2 n.1). These factors mitigate against a finding of prejudice where, even prior to the filing of a superseding indictment, Defendant has already been provided the discovery which the Government may decide to use at trial and which must be turned over under the Federal Rules of Criminal Procedure, *Brady*, *Jencks*, and any other applicable rules and law, and has been on notice since the time of his original indictment in this case that he was facing charges in another case (for which he was indicted the same day) for the same conspiracy for which he has now been charged in the First Superseding Indictment. In addition, according to Rinaldi, he has been aware

since 2018 that the Government intended to file a superseding indictment should he not plead guilty, further lessening the prejudice or any claim of surprise.

Although Defendant's failure to demonstrate actual prejudice is fatal to his pre-indictment delay claim and thus makes it unnecessary to decide whether Rinaldi has established that "the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him", the Court briefly addresses Rinaldi's failure to also make the requisite showing as to this element. *See Beckett*, 208 F.3d at 150-151 (a defendant can establish pre-indictment delay "*only* if he can show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; *and* (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him.")(emphasis added).

Here, Defendant asserts that the Government "has an improper motive for the delay in bringing the superseding indictment", i.e., "to punish Rinaldi for exercising his rights" and "to permit his co-defendants to enter their guilty pleas so that this superseding indictment would affect Rinaldi and Rinaldi alone." (Doc. 245, at 5). Defendant asserts that he "suffer[ed] from harassment and the government gained the advantage of extracting guilty pleas and/or cooperation agreements from Rinaldi's co-defendants as well as getting Rinaldi's co-defendants not to file meritorious pre-trial motions." (Doc. 245, at 5-6).

Rinaldi's assertions regarding Andrew Henry and Dwayne Brown are speculative and without merit. Rinaldi is without any basis to question the decisions of Henry and

Brown, through counsel, to not file pre-trial motions or to declare the meritorious nature of any motion which those defendants may have filed.  The decisions of those defendants and their counsel to not file pre-trial motions, to enter into plea agreements, and to plead guilty before this Court are not subject to baseless attack by Rinaldi.  Further, there is no basis for an assertion that the Government deliberately delayed bringing the indictment in order to first obtain guilty pleas from the co-defendants for the purpose of punishing or harassing Rinaldi through the filing of a superseding indictment which "would affect Rinaldi and Rinaldi alone", because the Government wanted "to punish Rinaldi for exercising his rights" (Doc. 245, at 5).  Similar to this Court's analysis of Defendant's vindictive prosecution claim, *supra*, the fact that the First Superseding Indictment almost immediately followed Henry and Brown's guilty colloquies is suggestive of a belief by the Government that there was now sufficient, or new, evidence which would support the additional charges.  *See Lovasco*, 431 U.S. at 791 ("It should be . . . obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.  To impose such a duty would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.'")(quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)); *see also, id.* at 792 (rejecting the adoption of a rule requiring the Government to promptly file charges once it "has assembled sufficient evidence to prove guilt beyond a reasonable doubt", even if its investigation of the entire criminal transaction is not complete, because such rule "would

have many of the same consequences as adopting a rule requiring immediate prosecution upon probable cause.").

Although Rinaldi also argues that the delay in filing a superseding indictment was improperly motivated by Rinaldi's exercise of his rights (Doc. 245, at 5), he has offered nothing more than this conclusory statement in support of his argument. For substantially the same reasons as set forth *supra* with respect to Rinaldi's vindictive prosecution claim, Rinaldi has also failed to show that the Government filed the Superseding Indictment to obtain an improper tactical advantage or to harass him.

Absent a showing of prejudice to Rinaldi or that the Government deliberately delayed bringing the superseding indictment in order to obtain an improper tactical advantage or to harass Rinaldi, the mere fact that the Government may have been able to bring the First Superseding Indictment at an earlier time,[3] or that the filing of this superseding indictment was preceded by a partially adverse pre-trial ruling one month earlier, is insufficient to establish pre-indictment delay and a violation of Defendant's Due Process rights. *See e.g., United States v. Begay*, 602 F.3d 1150 (10th Cir. 2010) (holding that "it was entirely proper for the government, absent prosecutorial vindictiveness or prejudice to [Defendant], to alter its tactics in response to the [adverse] rulings on its proffered Rule 414 evidence and seek a superseding indictment that included additional charges," even where the information

---

[3] This Court expresses no opinion as to whether a Superseding Indictment could have been filed at an earlier time.

underlying the allegations in the superseding indictment were known to the Government at the time it filed the original indictment over two-and-a-half years earlier).

For the afore-stated reasons, Defendant's motion to dismiss for pre-indictment delay in the filing of the First Superseding Indictment will be denied.

## C. Bill of Particulars

Finally, Rinaldi asserts that "the indictment does not sufficiently inform him of the nature of the offense." (Doc. 245, at 6). Although this argument is contained within his Motion to Dismiss, Rinaldi requests that "this Court construe [his] argument as a Request for a Bill of Particulars." (*Id.* at 7).

Federal Rule of Criminal Procedure 7 provides in relevant part that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The rule further provides that "[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense. . . ." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971). "A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.'" *Id.* at 64 (quoting *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)). However, a bill of particulars is not designed to inquire into the legal or evidentiary

support proffered by the Government with regard to whether a defendant committed a specific criminal act. *See United States v. Leonelli*, 428 F.Supp. 880 (S.D.N.Y. 1977). "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).

"An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. An indictment must allege more than just the essential elements of the offense." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (internal citations and quotation marks omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy" and thus an indictment will generally "satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal citations and quotation marks omitted).

In addition, "[t]he Third Circuit has . . . emphasized that the need for a bill of particulars is obviated in those cases where the Government supplements a detailed charging document with substantial discovery. In ruling on a request for a bill of particulars,

the court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment." *United States v. Hayes*, 2007 WL 3085998, *1 (M.D.Pa. 2007) (citing *United States v. Urban,* 404 F.3d 754, 772 (3d Cir. 2004); *United States v. Kenny,* 462 F.2d 1205, 1212 (3d Cir. 1972)).

"[T]he granting of a bill of particulars remains a discretionary matter with the trial court." *Addonizio*, 451 F.2d at 64. "The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id.*

Here, Rinaldi admits that the Superseding Indictment "quotes the statute allegedly violated, names multiple controlled substances and lists a date" that he contends "is only open-ended in one direction. . . ." (Doc. 245, at 6).  However, Rinaldi asserts that the Superseding Indictment does not provide "enough information [for Rinaldi] to plead double jeopardy", does not "give him[] sufficient facts pertaining to the alleged offense", and does not list any conspiracies in that he "has no idea who the government contends he agreed with".  (Doc. 245, at 6-7).  Rinaldi further asserts that the Superseding Indictment does not allege any "overt acts" or "manner and means".  (Doc. 245, at 6-7).

Despite Rinaldi's assertions to the contrary, the First Superseding Indictment is sufficient to inform the defendant of the nature of the charges brought against him and to adequately prepare his defense.

Here, Count I of the Superseding Indictment, alleging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, adequately sets forth the required elements under 21 U.S.C. §§ 841 and 846 and provides "sufficient factual orientation" to apprise Defendant of the charge and allow him to prepare his defense. The indictment largely tracks the language of §§ 841 and 846, alleging that Rinaldi "knowingly, intentionally, and unlawfully combine[d], conspire[d], confederate[d] and agree[d] together with other persons both known and unknown . . . to knowingly, intentionally, and unlawfully distribute and possess with intent to distribute: (1) 500 grams and more of a mixture and substance containing a detectable amount of cocaine, (2) 28 grams and more of a mixture and substance containing a detectable amount of cocaine base, (3) a mixture and substance containing a detectable amount of heroin, and (4) a mixture and substance containing a detectable amount of marijuana. (Doc. 220, at 1-2). Count I also includes the necessary "factual orientation" by specifying the time period during which the alleged violation occurred (November 2017 to August 8, 2018) as well as the substances involved and the quantity of those substances for which Rinaldi was responsible. *See e.g. Huet*, 665 F.3d at 596 (finding indictment charging violations of 18 U.S.C. § 922 included "the required 'factual orientation'" where it specified the time period during which violation occurred and identified specific weapon involved).

Although Rinaldi asserts that "there are no overt acts alleged" with respect to the §

846 conspiracy charge (Doc. 245, at 6-7), the absence of this information does not render

an indictment insufficient. As explained in *United States v. Sampson*,

> The conspiracy provision of the Controlled Substances Act does not require an
> indictment to recite any overt acts taken in furtherance of the conspiracy. 21
> U.S.C. § 846. Further, the United States Supreme Court has held that proof of
> "the commission of any overt acts in furtherance of the conspiracy" is not
> required for a conviction under § 846. *United States v. Shabani,* 513 U.S. 10,
> 15, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). Thus, an indictment under § 846 is
> sufficient if it alleges "a conspiracy to distribute drugs, the time during which the
> conspiracy was operative and the statute allegedly violated, even if it fails to
> allege any specific act in furtherance of the conspiracy." *United States v.
> Sweeney,* 688 F.2d 1131, 1140 (7th Cir.1982).

2012 WL 214707 (M.D.Pa. 2012). *See also*, *United States v. Armocida*, 515 F.2d 49, 54 (3d

Cir. 1975) (Defendant's "request for the 'when, where and how' of any overt acts not alleged

in the indictment was tantamount to a request for 'wholesale discovery of the Government's

evidence,' which is not the purpose of a bill of particulars under Fed.R.Crim.P. 7(f).").

Similar to Count I, Count II of the First Superseding Indictment, alleging Distribution

and Possession with Intent to Distribute Cocaine, adequately sets forth the required

elements under 21 U.S.C. § 841 and provides Defendant with the necessary "sufficient

factual orientation." Mirroring the language of § 841, Count II alleges that Rinaldi "knowingly

and intentionally distribute[d] and possess[ed] with intent to distribute cocaine. . . ." (Doc.

220, at 4). Count II further alleges that this violation occurred on or about May 11, 2018, in

Luzerne County, Pennsylvania, and that the controlled substance at issue is cocaine,

providing Rinaldi with the requisite factual orientation.

The Superseding Indictment also clearly alleges Defendant's prior conviction for a drug felony, setting forth his prior conviction for Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841 and 846 in Middle District of Pennsylvania case number 3:98-cr-294.  (Doc. 220, at 2-3, 4).

Additionally, the Government explains, and Rinaldi does not dispute in his Reply brief, that it "has provided extensive discovery to the defendant, and has assisted in accommodating his ability to review the materials while incarcerated."  (Doc. 262, at 17; *see also*, Doc. 265).  In addition to the discovery provided beginning "shorty after" the original indictment, the Government states that it has "continued to supplement discovery materials when required, and has provided extensive discovery related to Count Two", including "DEA laboratory analysis report, audio and video recording from the controlled purchase during which Rinaldi delivered cocaine, and consensual audio recordings relevant to the drug transaction, including a recorded call with Rinaldi."  (Doc. 262, at 17-18).

The "extensive discovery" provided by the Government also serves to contradict Defendant's claim that because "[t]here are no conspirators listed" he has "no idea who the government contends he agreed with" (Doc. 245, at 6).  The discovery provided by the Government has necessarily informed Rinaldi of the identities of, at minimum, some of his co-conspirators.  In addition, Rinaldi's argument that he has "no idea who the government contends he agreed with" to form a conspiracy is disingenuous, at best, where (1) the original indictment in this case named two other co-conspirators and the Government has explained

that the Superseding Indictment "applies only to Michael Rinaldi, because codefendants Andrew Henry and Dwayne Romail Brown have entered guilty pleas to charges in the original Indictment" and that Count I for conspiracy was "amended to allege that the conspiracy began in November of 2017" (Doc. 224, at ¶¶ 1-2); (2) Count I of the Superseding Indictment was amended to allege a conspiracy to distribute and possess with intent to distribute marijuana, "which is the same conspiracy alleged in the indictment in 3:18-CR-280 [filed August 21, 2018]" (Doc. 224, at ¶ 2 n.1), which named three co-conspirators in addition to Rinaldi, specifically, Steven Powell, George Kokenyei, and Jessica Caldwell (*see* 3:18-cr-280; Doc. 1); (3) at Defendant's arraignment on the Superseding Indictment, in addressing the issue of detention, the Government stated that Rinaldi's co-conspirators included Dwayne Brown and Steven Powell (Hr'g Tr., Jan. 30, 2020, at 15, 16-17); (4) the First Superseding Indictment added a forfeiture count seeking "$18,010 in U.S. currency, seized from a coconspirator on July 17, 2018, in the state of New York" (Doc. 220, at 5) and the indictment in case number 3:18-cr-280, alleging a conspiracy involving marijuana which the Government states forms the same conspiracy as that included in Count I of the First Superseding Indictment includes a forfeiture count in the amount of "$18,010 in U.S. currency, seized from defendant George Kokenyei on July 17, 2018" (3:18-cr-280, Doc. 1, at 3-4); and (5) in support of other motions, Defendant repeatedly refers to his alleged co-conspirators (*see e.g.*, Doc. 245 at 5)(stating in support of his motion to dismiss due to pre-indictment delay

that his 2002 Mercedes "contained a cell phone that had text messages from people who are alleged to be my co-conspirators. . .").

Regardless, the indictment itself need not contain the names or identities of the co-conspirators, so long as the indictment and subsequent discovery provide the defendant with the necessary information for him to adequately prepare his case, avoid surprise at trial, or to avoid the later risk of double jeopardy. *See Sampson*, 2012 WL 214707, at *2 ("'Courts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of coconspirators or others allegedly involved. So long ... [as] an indictment and discovery sufficiently enables defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted.'")(quoting *United States v. Coffey,* 361 F.Supp.2d 102, 122 (E.D.N.Y.2005) (collecting cases)). *See also United States v. Crayton,* 357 F.3d 560, 568 (6th Cir.2004) ("[T]he Government is not required to furnish the name of all other co-conspirators in a bill of particulars.").

Thus, as demonstrated by the record, Defendant has been apprised of the charges against him and knows the nature of the offenses that were allegedly committed within a specific time frame or on a specific date. Rinaldi has not established the specific need for a bill of particulars that the law requires for its issuance. This is particularly the case in light of the Government's stated disclosure of extensive discovery related to both Counts I and II of

the First Superseding Indictment, which serve to further inform the defendant of the nature of the charges brought against him and aid him in his ability to adequately prepare his defense.[4]

### III. CONCLUSION

Defendant Rinaldi's pre-trial motion (Doc. 245) will thus be denied for the reasons set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge

---

[4] Although Rinaldi has requested that the Court consider his motion to be one for a bill of particulars, to the extent that Defendant is also requesting that the Court deem his motion as a motion to dismiss due to an insufficient indictment, such motion must fail for the same reasons set forth herein. As previously quoted, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A Court will "consider an indictment sufficient if, when considered in its entirety, it adequately informs the defendant of the charges against [him] such that [he] may prepare a defense and invoke the double jeopardy clause when appropriate." *United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002). Here, as this Court has explained, the Superseding Indictment informed Rinaldi of the statutes he was charged with violating, the elements of the violation of those statutes, and the time period during which the conspiracy occurred in Count I and the date on which the violation occurred in Count II. The indictment is therefore sufficient under Rule 7(c)(1). *See e.g. Urban*, 404 F.3d at 771 (the indictment "more than adequately informed [Defendants] of the charges leveled against them, and enabled them to prepare their defense and, if applicable, invoke the double jeopardy clause" where it "informed [Defendants] of the statute they were charged with violating, the elements of a violation of that statute, the persons or businesses victimized, and the time period during which the payments were made.").