## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **3:18-CR-279** |
| | : **(JUDGE MARIANI)** |
| **MICHAEL RINALDI,** | : |
| | : |
| **Defendant.** | : |

### MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Michael Rinaldi's "Motion to Suppress" (Doc. 243).

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi, Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846. (*See* Doc. 37). That same day, the federal grand jury also returned an indictment charging Defendants Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846. (*See* 3:18-cr-280, Doc. 1).

On January 16, 2019, at the request of Defendant Rinaldi, the Court held a hearing in accordance with *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Peppers*,

302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Defendant Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant Rinaldi understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent herself.  Following this colloquy, the Court determined that Mr. Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and understood the ramifications and consequences of proceeding *pro se* and therefore granted Mr. Rinaldi's request to represent himself in criminal actions 3:18-cr-279 and 3:18-cr-280.  The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

On January 21, 2020, the Government filed a First Superseding Indictment in the above-captioned action, charging Michael Rinaldi with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846 (Count I) and with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (Count II).  (*See* Doc. 220).

On January 31, 2020, this Court issued two Orders scheduling trial in the above-captioned action.  A jury trial on Count I of the Superseding Indictment was scheduled to commence on February 11, 2020 (Doc. 240), and a jury trial on Count II of the Superseding Indictment was scheduled to commence on March 2, 2020 (Doc. 241).

However, on February 3, 2020, Defendant Rinaldi filed a "Motion to Suppress",
moving to suppress "any and all evidence obtained as a result of the search" of a Black
Lexus (Doc. 243) and a "Motion to Dismiss" requesting that the Court dismiss the indictment
against him on a number of bases and that the Court also construe this motion as a Motion
for a Bill of Particulars (Doc. 245). As a result of Defendant's filing of these motions one
week prior to the commencement of trial on Count I, the Court found that "upon consideration
of [the motions], the issues raised therein, and the time necessary to brief the motions and
fully evaluate the parties' arguments", trial on both Counts must be cancelled and would be
re-scheduled following the disposition of Defendant's motions. (Doc. 248). The Court
excluded the time between February 3, 2020 and the date on which Defendant's pre-trial
motions were decided from Speedy Trial calculations pursuant to 18 U.S.C. § 3161(h)(1)(D).

On February 13, 2020, Defendant filed a second "Motion to Dismiss" (Doc. 259),
asserting that "the indictment should be dismissed with prejudice for a violation of his
speedy trial rights." The Court denied this motion on June 18, 2020 (Docs. 298, 299). That
same day, the Court re-scheduled the jury trial on Counts I and II of the First Superseding
Indictment to begin on August 3, 2020. (Doc. 300).

The Court addresses in this Memorandum Opinion Defendant's Motion to Suppress
(Doc. 243) and, for the following reasons, will deny this motion.

3

## II. ANALYSIS

Rinaldi's "Motion to Suppress" (Doc. 243) moves to "suppress any and all evidence obtained as a result of the search of one Black Lexus bearing PA Registration Number KCR5918" and, more specifically "moves to suppress what is alleged to be 1 kilogram of cocaine." (Doc. 243, at 1). As a basis for this motion, Rinaldi asserts that the search warrant "issued in relation to this vehicle was supported by evidence derived from an untimely sealed wiretap recording." (Doc. 243, at 1). Defendant argues that, in the absence of these wiretaps and the information therein, probable cause would no longer exist for the warrant to search of the vehicle. (Doc. 243, at 2).[1]

Although titled as a motion to suppress, Rinaldi's motion is, in reality, an untimely motion for reconsideration.

Here, on December 18, 2019, this Court granted in part and denied in part Defendant Rinaldi's motion to suppress wiretap evidence. (*See* Docs. 209, 210). The Court granted Defendant's motion to suppress wiretaps of himself and co-defendant Steven Powell due to the Government's failure to timely seal those wiretaps, but the Court explained that (1) "[e]vidence connected through a chain of causation to one or both

---

[1] On August 8, 2018, DEA TFO Tom Kaluzny filed an Application for a Search Warrant for a "black Lexus 4 door sedan, bearing plate KCR5918 . . . presently being safeguarded by D.E.A. in Kuhnsville, EDPA," and an Affidavit in Support of Search Warrant. The Affidavit explains that, on August 8, 2018, investigators followed Dwayne Brown (Rinaldi's co-defendant) who was driving a black Lexus, and "[i]nvestigators made the decision . . . to affect a traffic stop on the black Lexus and take BROWN into custody." A Search and Seizure Warrant for the vehicle was issued that same day. The Receipt for Cash or Other Items, also dated August 8, 2018, states that "approx. 1 kilogram" of cocaine and two Samsung phones were found in the Lexus. (*See* Doc. 308).

4

wiretaps tainted by improper sealing will not be suppressed on the basis of the Court's

finding that the wiretaps at issue were untimely sealed"; and (2) "[t]he suppressed wiretaps

*may* be admissible at trial for the limited purpose of impeaching the defendant should he

choose to testify. . . ." (Doc. 210, at ¶¶ 2-3) (emphasis in original).  The Court thus held that

only the wiretaps themselves, as well as "evidence such as the 'transcripts, duplicate tapes,

work copies and testimonial summaries' of the intercepted conversations will be suppressed

due to the Government's untimely sealing of the wiretaps."  (Doc. 209, at 46-47; Doc. 210,

at ¶ 1).

In response to this Court's memorandum opinion and order granting in part and

denying in part Defendant's motion to suppress the wiretaps, Defendant filed a motion for

reconsideration, challenging this Court's determination that the suppressed wiretaps may be

permissible for the limited purpose of impeaching Defendant should he choose to testify.

(*See* Doc. 218).  Defendant did not seek reconsideration of any other portion of the Court's

opinion.  Nonetheless, almost three months after the Court's issuance of its opinion

addressing suppression of the wiretaps, Defendant now moves to have this Court suppress

the contents of a vehicle on the basis of this Court's holding that certain wiretaps were

untimely sealed, an issue which was specifically decided by the Court's holding that

"[e]vidence connected through a chain of causation to one or both wiretaps tainted by

improper sealing will not be suppressed on the basis of the Court's finding that the wiretaps

at issue were untimely sealed", and the reasoning underlying this decision.  Otherwise

stated, the issue of whether evidence obtained as the result of a wiretap which was untimely sealed, but valid at the time of its issuance and execution, should be suppressed was specifically addressed in the Court's prior memorandum opinion.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Specifically, a motion for reconsideration is generally permitted only if (1) there is an intervening change in the controlling law; (2) new evidence becomes available that was not previously available at the time the Court issued its decision; or (3) to correct clear errors of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F.Supp.2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F.Supp.2d 753, 755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Donegan v. Livingston*, 877 F.Supp.2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)).

Here, Defendant's "motion to suppress", i.e. motion for reconsideration, is grossly untimely and therefore may be denied solely on that basis. In addition, Defendant has entirely failed to demonstrate (1) an intervening change in the controlling law between December 18, 2019, when this Court issued its opinion and order ruling that "[e]vidence connected through a chain of causation to one or both wiretaps tainted by improper sealing will not be suppressed on the basis of the Court's finding that the wiretaps at issue were untimely sealed", and February 3, 2020, when Defendant filed his motion requesting the Court suppress evidence on the basis of the untimely sealing of the wiretaps; (2) the availability of new evidence that was not previously available at the time the Court issued its decision; or (3) the need to correct clear errors of law or fact or to prevent manifest injustice. Rinaldi's failure to carry his burden as to any of these factors also leads this Court to a determination that Defendant's motion must be denied.

Further demonstrating that Rinaldi's motion to suppress is, in fact, a motion for reconsideration, Rinaldi relies on this Court's explanations in its prior memorandum opinion in support of his position as to why the evidence in the vehicle should be suppressed. There, as explained *supra,* the Court suppressed the wiretaps themselves, as well as "evidence such as the 'transcripts, duplicate tapes, work copies and testimonial summaries' of the intercepted conversations will be suppressed due to the Government's untimely sealing of the wiretaps". (Doc. 209, at 46-48; Doc. 210). Rinaldi thus asserts that "he is currently seeking to suppress the transcript, and testimonial summary of the intercepted

7

conversation from the search warrant affidavit." (Doc. 243, at 2). Rinaldi argues that

"[o]nce these transcripts are suppressed or omitted from the search warrant affidavit,

probable cause to search no longer exists." (Doc. 243, at 2).

Even if this Court were to find that Rinaldi's motion is not one for reconsideration of a

prior decision by this Court, and thus consider the arguments asserted therein, including the

assertion that, in the absence of the suppressed wiretaps, probable cause does not exist for

the search warrant which led to the discovery of evidence in the black Lexus, Rinaldi's

motion nonetheless fails.

Preliminarily, as the Government explains, and Rinaldi does not dispute, the black

Lexus at issue in this motion was not owned by Rinaldi, but rather one of his co-defendants,

and Rinaldi was not in the car when it was stopped or searched (see Doc. 262, at 18-19).

Therefore, Rinaldi lacks standing to challenge the search of the Lexus, as well as the

probable cause necessary to obtain the search warrant for that vehicle.

> An individual challenging a search has the burden of establishing that he had
> a reasonable expectation of privacy in the property searched and the item
> seized. *Minnesota v. Olson,* 495 U.S. 91, 95-97, 110 S.Ct. 1684, 1687-88, 109
> L.Ed.2d 85 (1990). A person must show both that he had a subjective
> expectation of privacy in the area searched and that his expectation was
> objectively reasonable. *Rakas v. Illinois,* 439 U.S. 128, 143-44, 99 S.Ct. 421,
> 424-25, 58 L.Ed.2d 387 (1978); *United States v. Donahue,* 764 F.3d 293, 298-
> 99 (3d Cir. 2014). To demonstrate that he had a subjective expectation of
> privacy, the defendant must show that he "took normal precautions to maintain
> his privacy." *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65
> L.Ed.2d 633 (1980).
>
> In light of these principles, "[i]t is clear that a passenger in a car that he neither
> owns nor leases typically has no standing to challenge a search of the car."

*United States v. Baker,* 221 F.3d 438, 441-42 (3d Cir. 2000) (citing *Rakas,* 439 U.S. at 133-34, 99 S.Ct. at 424-25). As the Supreme Court explained, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas,* 439 U.S. at 134, 99 S.Ct. at 425.

*United States v. Burnett*, 773 F.3d 122, 131-132 (3d Cir. 2014). Nothing in the record or the parties' briefs supports a finding that Rinaldi had a reasonable expectation of privacy in the Lexus, or any items contained therein, nor does there appear to be a basis for such an argument. Defendant has failed to demonstrate, or even assert, the requisite subjective expectation of privacy in the Lexus at issue or the objective reasonableness in this expectation. Further, even if Rinaldi were to argue that he had property in the vehicle, this does not give him standing to challenge the search of the Lexus, where he had no reasonable expectation of privacy. *See Burnett,* 773 F.3d at 132 ("The fact that he left property in the Honda's trunk does not give him standing to challenge a search of that portion of the vehicle. Even if Burnett owned the stolen property, which, of course, he did not, the Supreme Court has rejected the theory that a 'legitimate expectation of privacy' can rest on mere ownership of property."). As a consequence, Rinaldi lacks standing to challenge the search of the vehicle as well as the seizure of any evidence from the Lexus as a result of the search.

In addition, even if Defendant had standing to challenge the search warrant, search, and seizure of evidence from the Lexus, his argument that the evidence, and specifically the

cocaine, must be suppressed pursuant to the statutory language of 18 U.S.C. § 2518(8)(a),

and that the warrant therefore lacked probable cause,[2] fails.[3]

Pursuant to 18 U.S.C. § 2518(8)(a):

The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter [18 U.S.C. § 2510, *et seq.*] shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

---

[2] Defendant's argument that probable cause no longer exists for issuance of the search warrant on August 8, 2018, because of the Court's order suppressing untimely wiretaps in December of 2019, presents a post hoc ergo propter hoc rationalization.  Here, probable cause to search the Lexus existed at the time the valid search warrant was issued.  Probable cause for the issuance of a warrant does not simply disappear due to a Court's subsequent decision finding the Government committed a technical violation at a later point time.

[3] To the extent Rinaldi asserted a violation of his constitutional rights in the search of the Lexus and seizure of evidence therein, the good faith exception would apply here.  The "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236-237 (2011).  Where, as here, at the time that the search warrant was obtained and executed on August 8, 2018, the Rinaldi wiretap order had not yet expired and no wiretap had been deemed untimely sealed, the police were acting in objectively reasonable reliance on the search warrant, and exclusion of any seized evidence would not deter future Fourth Amendment violations where applicants for a search warrant, and the individuals executing that warrant, have no way of knowing whether otherwise legal wiretaps upon which they have relied will later be suppressed for a technical issue such as untimely sealing.  *See e.g. Herring v. United States*, 555 U.S. 135, 142 (2009) ("When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant.").

18 U.S.C. § 2518(8)(a).  The application of the statutory sealing requirement of subsection §

2518(8)(a), by its terms, is limited to § 2517(3), and does not apply to any other section of §

2517, including § 2517(1) or (2).

Section 2517 addresses "Authorization for disclosure and use of intercepted wire,

oral, or electronic communications".  As relevant here, § 2517(2) provides that:

> Any investigative or law enforcement officer who, by any means authorized by
> this chapter, has obtained knowledge of the contents of any wire, oral, or
> electronic communication or evidence derived therefrom may use such
> contents to the extent such use is appropriate to the proper performance of his
> official duties.

18 U.S.C. § 2517(2).  As explained by Congress in creating this provision, "Paragraph (2) . .

. envisions use of the contents of the intercepted communications, for example, to establish

probable cause for arrest . . . , to establish probable cause to search . . . ,  or to develop

witness."  S. Rep. No. 90-1097, at 2188 (1968)(citations omitted).

The language of § 2517(1)-(2) and § 2518(8)(a) thus creates "some tension."  *United*

*States v. Donlan*, 825 F.2d 653, 655 (2d Cir. 1987).

> Subsections (1) and (2) of section 2517 permit law enforcement officers to use
> and disclose for use by other officers the contents of tapped conversations. The
> legislative history explicitly indicates that one of the uses contemplated under
> subsection (2) would be "to establish probable cause for arrest ... [or] probable
> cause to search." S.Rep. No. 1097, 90th Cong., 2d Sess. 99, *reprinted in* 1968
> U.S.Code Cong. & Admin.News 2112, 2188 (citations omitted). And, as we
> have previously observed, "Use permitted by § 2517(2) is not subject to the
> strictures of § 2518(8)(a)." . . . On the other hand, subsection 2518(8)(a)
> prohibits derivative use of the contents of untimely sealed recordings "under"
> subsection 2517(3), which governs disclosure "while giving testimony." . . .
> Thus, if subsection 2518(8)(a) were applied literally, it would bar a law
> enforcement officer from testifying concerning evidence he obtained during an

11

arrest or search based on untimely sealed conversations, even though subsection 2517(2) would allow the officer to use the untimely sealed conversations as probable cause to make the arrest or search.

*Id*. at 655 (internal citations omitted).  The Second Circuit continued:

We think it unlikely that Congress intended subsection 2518(8)(a) to be construed with such literalness or, to put the matter somewhat differently, that Congress intended "derived" in this subsection to mean causally related to an untimely sealed intercept by a chain of events that includes an arrest or search lawfully based on untimely sealed intercepts. Since subsection 2517(3) governs disclosure "in any proceeding held under the authority of the United States or of any State or political subdivision thereof," a literal reading of subsection 2518(8)(a) would prevent a law enforcement officer from using untimely sealed conversations in testifying before a judicial officer to obtain an arrest or search warrant, even though Congress clearly intended the officer to use such information, without the restriction of subsection 2518(8)(a), to establish probable cause for an arrest or a search. It cannot be that Congress intended to permit untimely sealed conversations to be used as probable cause for arrests and searches only when those arrests and searches were conducted without a warrant.

*Id*. at 656.

Applying this analysis to the facts of the case, the Second Circuit explained that:

It would be especially unwarranted to apply subsection 2518(8)(a) to bar use of the challenged evidence on the facts of this case in light of the sequence of pertinent events. The intercepted conversations were used as justification for the stop and search of Donlan's car on August 30. The wiretap did not end until September 5. Thus the use of the wiretapped conversations to obtain derivative evidence occurred before a sealing obligation even arose and obviously long before the point at which the delay in meeting that obligation became unjustified. It would require a needlessly rigid construction of subsection 2518(8)(a) and an undue emphasis on deterrence to read the derivative use proscription of the subsection to bar evidence resulting from intercepted conversations used to obtain that evidence several days before the sealing requirement was violated.

*Id*. at 657-658.

Over 20 years later, the Second Circuit again re-iterated this reasoning.  In so doing,

the Court stated:

> our case law is clear that the prohibition on the use of improperly sealed
> evidence in sworn testimony will not preclude the use of such evidence either
> to pursue an investigation or to prove up the fruits of such investigation at trial.
> *United States v. Donlan,* 825 F.2d 653, 656 (2d Cir.1987) (noting that
> "Congress clearly intended" that law enforcement officers be able to use
> "untimely sealed conversations in testifying before a judicial officer to obtain an
> arrest or search warrant"). In other words, "the prohibition in subsection
> 2518(8)(a) on derivative use at trial of improperly sealed tapes is not to be
> applied strictly to prohibit use of all evidence that can be connected through a
> chain of causation to a wiretap tainted by improper sealing." *Id.* at 657.
>
> The exclusionary remedy in § 2518(8)(a) applies to the unsealed interceptions
> at issue in this case. As the pager wiretap evidence before us violated the
> recording and sealing requirements, the proper remedy to address those errors
> is the prohibition of the use of those interceptions in ways that would otherwise
> be permitted by § 2517(3). In this regard, the district court did not err in
> concluding that the Government is prohibited from offering testimony—at trial
> or in any other proceeding—regarding the contents of the pager interceptions.
> The remedy of exclusion provided for in § 2518(8)(a) does not, however, apply
> to preclude the use of those interceptions in ways authorized under subsections
> (1) and (2) of § 2517. Accordingly, the Government is not prohibited from
> offering evidence obtained through warrants that were based on the pager
> interceptions. That use of the tainted wiretap evidence does not fall under §
> 2517(3) and, thus, is not affected by the exclusionary remedy in § 2518(8)(a).
> The pager wiretap evidence before us, though inadmissible, was not obtained
> in violation of the Constitution and, therefore, the fruits derived from that
> evidence may not be suppressed.

*United States v. Amanuel*, 615 F.3d 117, 128-129 (2d Cir. 2010).

With the exception of the Second Circuit, few federal courts have addressed or

attempted to resolve the "tension" which exists between §§ 2518(8)(a) and 2517(1) and (2),

although it does not appear that any court has rejected the Second Circuit's approach.  *See*

*e.g., United States v. Martin*, 618 F.3d 705, 713 n.10, 715 n.14 (7th Cir. 2020) (noting that

"[w]ith respect to this derivative evidence, the district court appears to have agreed with the

Government's theory that § 2518 should be applied broadly, as articulated by the United

States Court of Appeals for the Second Circuit in *United States v. Donlan,* 825 F.2d 653 (2d

Cir. 1987). In other words, the district court believed that § 2518 permitted use at trial of

evidence derived from wiretap recordings, as long as the derivation occurred prior to the

violation of the wiretap's sealing obligation"; but finding that resolution of "the propriety of

the district court's application of *Donlan*'s rationale" was unnecessary where the

Government had provided satisfactory explanation for its sealing error); *United States v.*

*Garcia-Guia*, 468 F.App'x 544, 550 (6th Cir. 2012)(citing approvingly to *Amanuel*'s analysis

of § 2518(8)(a) and its statement therein that "the fruits derived from [untimely sealed

wiretaps] may not be suppressed."); *United States v. Saucedo*, 446 F.Supp.2d 824, 827

(N.D.Ill. 2006) (acknowledging that § 2518(8)(a) "prohibits the use of improperly sealed

recordings at trial under § 2517(3), but allows the recordings to be used for investigative

purposes under §§ 2517(1) and § 2517(2)" and thus "the statute leaves open the question

of whether evidence obtained through an investigation that was based upon improperly

sealed recordings is admissible at trial, or should be excluded as evidence derived from the

improperly sealed recordings", and finding persuasive Second Circuit opinions and

reasoning on this issue).  Of particular note, the Third Circuit has never resolved the

"tension" between §§ 2518(8)(a) and 2517(1)-(2) or addressed whether the language of §

14

2518(8)(a) mandates the preclusion at trial of all evidence derived from untimely sealed wiretap recordings, even where the derivation occurred prior to the violation of the wiretap's sealing obligation. *See United States v. Vastola*, 915 F.2d 865, 876 n.19 (3d Cir. 1990) (noting defendants' argument on appeal that if certain tapes were suppressed, admissibility of other wiretap evidence would need to be considered, as information derived from the tapes at issue was used, in part, to establish probable cause for subsequent surveillances, and "acknowled[ging] that different interpretations of the statute are possible and express[ing] no opinion on the issue", citing to *Donlan*); *United States v. Carson*, 969 F.2d 1480, 1500 (3d Cir. 1992) (noting that issue of "what impact, if any," suppression of tapes has on other evidence presented at trial "remains an open question."); *Curry v. United States*, 2015 WL 733274, *6 & n.8 (D.N.J. 2015) (noting that Third Circuit has never held that the fruits of improperly sealed wiretap conversations are subject to suppression under 18 U.S.C. § 2518(8)(a) and finding persuasive the Second Circuit's construction of § 2518(8)(a)).

This Court finds persuasive the Second Circuit's rationale for limiting the scope of the evidence suppressed as a result of untimely sealing, and in the absence of controlling law within the Third Circuit, will apply that reasoning. Here, at the time the search warrant was issued on August 8, 2018, the Rinaldi wiretap order had not yet expired or been terminated by law enforcement, and thus no sealing obligation for that wiretap had arisen. The search warrant for the Lexus was valid and lawfully based, in part, on wiretaps that were only found

to be untimely at a much later point in time and which were not untimely sealed when the search warrant was requested or issued.  "Thus the use of the wiretapped conversations to obtain derivative evidence occurred before a sealing obligation even arose and obviously long before the point at which the delay in meeting that obligation became unjustified." *Donlan*, 825 F.2d at 657-658.  *See also*, *Curry*, 2015 WL 733274, at * 6 n.8 ("All § 2518(8)(a) addresses is the proper procedure for admitting lawfully intercepted recordings, rendering admissible those that are immediately sealed, and rendering inadmissible those whose authenticity may be questioned because they were not properly sealed. But so long as the Government has intercepted the call in conformity with Title III, failing properly to seal that call does not prevent the Government from relying on the information to further its investigation.").

Furthermore, the Court notes that "[t]he primary thrust of § 2518(8)(a) . . . and a congressional purpose embodied in Title III in general, . . . is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *United States v. Ojeda Rios*, 495 U.S. 257, 264 (1990) (internal citations omitted).  The subsection therefore renders inadmissible lawfully intercepted recordings where the authenticity of those recordings may properly be questioned.  Here, where the evidence in question was obtained as a result, in part, of lawful wiretaps whose reliability and integrity were not in question at the time of the issuance of the search warrant, there is no basis to find that the reliability or integrity of the evidence derived from the later untimely sealed wiretaps is in question.  Nor is there a basis to find that the statutory intent of § 2518(8)(a) was to

suppress evidence derived from untimely sealed, but lawful, wiretaps where that evidence's integrity and reliability is not at issue. Rather, Congress specifically intended § 2517(2), evidence of which is not subject to § 2518(8)(a)'s limitation, to allow for the use of the contents of lawfully intercepted communications "to establish probable cause for arrest . . . [and] to establish probable cause to search . . .", S. Rep. No. 90-1097, at 2188 (1968), which is precisely what the wiretaps were used for in this case which led to the issuance of a search warrant, and the subsequent search, of the Lexus.

### III. CONCLUSION

For the afore-discussed reasons, Defendant Rinaldi's "Motion to Suppress" (Doc. 243) will be denied.  A separate Order follows.


Robert D. Mariani
United States District Judge