THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, :
:
v. : 3:18-CR-279
: (JUDGE MARIANI)
MICHAEL RINALDI, :
:
Defendant. :

## MEMORANDUM OPINION

Presently before the Court is Defendant Michael Rinaldi's Motion for "Reconsideration and/or Clarification/Expansion of the Record" (Doc. 444).

Motions for reconsideration may be filed in both civil and criminal cases. *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Specifically, a motion for reconsideration is generally permitted only if (1) there is an intervening change in the controlling law; (2) new evidence becomes available that was not previously available at the time the Court issued its decision; or (3) to correct clear errors of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F.Supp.2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F.Supp.2d 753,

755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Donegan v. Livingston*, 877 F.Supp.2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)).

In the present case, an eight-day jury trial was held in August of 2020. On August 26, 2020, the jury returned a verdict finding Defendant Rinaldi guilty on Count 1 of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically heroin, and guilty on Count 2 of Distribution and Possession with Intent to Distribute Cocaine. (Doc. 397). Defendant thereafter filed a "Motion for a New Trial" (Doc. 402) and "Motion for Judgement of Acquittal" (Doc. 403), both of which the Court denied on March 31, 2021 (*see* Docs. 442, 443).

On April 12, 2021, Defendant timely filed a motion for reconsideration (Doc. 444) raising a number of issues.

Defendant's motion clearly does not rely upon, or reference, any intervening change in the controlling law or any new evidence that was not previously available prior to March 31, 2021. Thus, giving Defendant every benefit, the Court assumes, although not specifically stated by Rinaldi, that he is attempting to rely upon the need to correct clear errors of law of fact or to prevent manifest injustice. However, because Defendant merely reiterates arguments previously raised and fails to set forth any legal or factual basis for a

finding that any clear errors of law or fact exist or that a manifest injustice must be prevented, the Court will only briefly address Defendant's arguments raised in his motion for reconsideration.

Rinaldi first repeats his prior argument that the courtroom was closed to the public during voir dire and jury selection. (Doc. 444, at 2). As the Court previously explained:

> the Court did not issue any order closing the courtroom at any time prior to, or during, the voir dire and jury selection process or take any other affirmative act which did, or could have been interpreted to, close the courtroom or exclude the public from entering. Nor did any party inquire as to whether the courtroom was closed or inform the court of a belief that the public was not being admitted into the courtroom. Furthermore, despite admitting that he was aware of this alleged violation during the jury selection and voir dire process, Rinaldi inexplicably waited until after voir dire and jury selection had concluded and a jury had been empaneled, to bring his concerns to this Court's attention.

(Doc. 442, at 22). Rinaldi specifically acknowledges the correctness of these statements by the Court, but now improperly attempts to argue with the Court by setting forth after-the-fact purported explanations for his inaction. (*See* Doc. 444, at 2-3). Defendant further agrees with the Court's statement in its memorandum opinion that "several people who were not prospective jurors periodically [came] in and out of the courtroom and [sat] in the chairs on the side of the courtroom during this process" (Doc. 442, at 20). (Doc. 444, at 2). However, Rinaldi now incorrectly opines, without support, that these individuals were "[o]nly courtroom staff, marshals or deputies" and not members of the general public. (*Id.*). In support of this unfounded assertion, which the Court knows to be untrue in light of its personal observations of the events of that day, Defendant simply references the same unsworn

3

letter previously submitted to the Court in support of his motion for a new trial, signed by several of Rinaldi's family members and friends who state that they were "turned away" on August 17, 2020 (*see* Doc. 402-1, at 18). Defendant then accuses the Government of "l[ying] and act[ing] as if they were unaware of the closure" and the Marshals and "anyone else who knew" of not "speak[ing] up and tell[ing] the truth" (Doc. 444, at 3). Defendant's *post hoc* rationalizations and groundless accusations provide no basis for the Court to reconsider its prior decision denying his motion for a new trial on the unfounded basis that the courtroom was closed during voir dire and jury selection.

Rinaldi next raises his previous claim that he was denied a unanimous verdict because the jurors may not have unanimously agreed as to whom Rinaldi conspired with. (Doc. 444, at 3-4). Rinaldi's passing argument on this issue very briefly raises the identical point previously set forth in his post-trial motion and rejected by this Court, is devoid of any legal support, and fails to present any clear error of law or fact or demonstrate a manifest injustice. Rinaldi's failure to raise any basis for reconsideration thus presents this Court with no basis to revisit this issue.

With respect to this Court's finding that Rinaldi was not entitled to a new trial due to the absence of Steven Powell as a witness at trial, Defendant admits that he "did mis-represent Mr. Powell's health status" but claims that "any mis-representation was due to Rinaldi being mis-informed by Powell himself" (Doc. 444, at 4). As previously set forth by the Court, the record is replete with evidence as to Powell's medical condition from 2018 to

the date of trial, including Rinaldi's knowledge of this information, as well as Rinaldi's knowledge of Powell's hospitalization "in late July or early August" (*see* Doc. 402, at 6-7). (*See* Doc. 442, at 31-37).[1]

Rinaldi also argues that he "had no reason to believe" that Christopher Peterson, the other individual Rinaldi claims he wanted to call as a witness at trial, "was going to come forward and tell the truth." (Doc. 444, at 4). This argument is entirely repetitive of Defendant's prior assertions in support of his motion for a new trial and has been addressed by the Court (*see* Doc. 442, at 30-32, 37-38). Rinaldi took no measures at any time, either prior to trial or during trial (including after he was provided a copy of a Jencks Addendum related to Peterson), to procure Peterson's attendance or testimony. Defendant has raised no new arguments, legal basis, or evidence, for reconsideration as to the Court's analysis with respect to Peterson.

Defendant next admits that he did not object at trial to the accuracy of "what was said" in the transcripts shown at trial, but contends that he did object to his name being set

---

[1] On March 3, 2021, the Government filed a Certificate of Death for Steven Powell in criminal case number 3:18-cr-280. Upon review, the Court noted in its memorandum opinion denying Rinaldi's motion for a new trial that:
> On December 26, 2020, Powell passed away in the Intensive Care Unit of Centennial Hills Hospital Medical Center in Las Vegas, Nevada, from "Cardiac Arrest due to, or as a consequence of Failure to Thrive due to, or as a consequence of Stage IV Colon Cancer Unknown Cell Type." The Certificate of Death further lists "End Stage Renal Disease" and "Metabolic Acidosis" as "conditions contributing to death, but not resulting in the underlying cause." (3:18-cr-280, Doc. 271, ¶¶ 2, 3(b), 3(c), 3(e), 25).

(Doc. 442, at 34-35).

forth on the transcripts as the identity of the speaker. (Doc. 444, at 6). As this Court previously explained:

> The use of transcripts as a listening aid is a common practice in criminal proceedings and is reviewed for an abuse of discretion, *United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994). Where a district court provides "a clear and precise limiting instruction to the jury in which it state[s] that the transcript [is] not evidence, but merely an aid to assist in viewing the recording", any "confusion that the transcript could have caused [is] cured through the use of this limiting instruction." *United States v. LaBoy*, 505 F.App'x 182, 184 (3d Cir. 2012) (citing *Gov't of V.I. v. Martinez*, 847 F.2d, 128 (3d Cir. 1988) ("approving use of transcript by jury because court provided limiting instructions that 'properly advised the jury as to the limited role to be served by the transcript'")). *See also*, *DiSalvo*, 34 F.3d at 1220 (finding no abuse of discretion in part because Defendant "fails to point out where he has been misidentified" and "the district court carefully warned the jury on several occasions that the transcript was not evidence.").
>
> . . . .
>
> Here, where Rinaldi has not shown any inaccuracies or errors in the transcripts, those transcripts were shown to the jury merely as a listening aid, were not admitted into evidence, and where the jury was clearly instructed that transcripts were not evidence and the jury should rely on what they heard, not read, there was no error by this Court. Nor can it be said that Rinaldi suffered any prejudice as a result of the jury viewing the transcripts contemporaneously with the audio and video recordings.

(Doc. 442, at 41-43). Furthermore, in addition to providing a limiting instruction to the jury at the time the transcripts were shown at trial, the Court reiterated this limiting instruction in the Jury Charge and specifically instructed both orally and in writing that "the transcripts named the speakers. But remember, you must decide who you actually heard speaking in the recording. The names on the transcript were used simply for your convenience" (Trial Tr., Aug. 24, 2020, at 129; Doc. 394, at 12-13). Rinaldi fails to present any legal or factual basis

6

to demonstrate that this Court should reconsider its prior decision with respect to the transcripts being shown at trial.

Defendant additionally reiterates his argument that he should have been permitted to inspect the recording equipment (Doc. 444, at 7) but offers no supporting law, let alone intervening change in the controlling law, or any new evidence not previously available nor does he demonstrate any clear error of law or fact or manifest injustice that has arisen from this Court's opinion on the issue. Instead, Defendant merely argues, again, that Officer Kaluzny "lack[ed] [the] knowledge and experience with the use of the device", an argument thoroughly addressed and rejected by this Court (*see* Doc. 442, at 45-50). Rinaldi further disingenuously asserts that the Bates stamp number assigned to one recording is in some way demonstrative that the recording was altered.[2] Defendant's regurgitated arguments are of no merit.

Finally, Defendant again asserts that he did not receive the search warrant affidavits in 2018, an argument rejected by the Court in its memorandum opinion denying the motion

---

[2] A Bates-stamp number is "[t]he identifying number or mark that is affixed to a document or to the individual pages of a document in sequence, usu. by numerals but sometimes by a combination of letters and numerals. . . The number is typically used to identify documents produced during discovery." *Bates-Stamp Number*, Black's Law Dictionary (11th ed. 2019). The assignment of a Bates-stamp number is a discovery tool that is wholly unrelated to the authenticity or accuracy of the document or recording itself.
    At trial, the Court asked Rinaldi whether he "underst[ood] what a Bates stamp [was]", to which Rinaldi responded in the affirmative. (Trial Tr., Aug. 20, 2020, at 168). To ensure Rinaldi understood, the Court asked him to explain what he believed a Bates-stamp to be. Defendant responded that "[i]t's the stamp on the exhibit." (*Id.*).

for a new trial. (Doc. 444, at 8) (citing Doc. 442, at 53). With respect to this issue, the Court explained in the memorandum opinion:

> On December 10, 2018, Rinaldi filed a "Motion to Suppress and for a Franks Hearing" (Doc. 81). At that time, Rinaldi argued as follows:
>
>> First Rinaldi will address the searches of 143 Blackman Street and 8B Birchwood Court. These searches were unconstitutional cause the affidavits never established probable cause. The Affiant stated that no sales were made from or near the vicinity of these addresses and there was nothing establishing a nexus between these residences and Rinaldi['s] alleged drug operation.
>
> (*Id.* at 1-2). This argument in support of Rinaldi's pre-trial motion is clearly premised on his having seen and reviewed the search warrant affidavits for the two residences prior to the filing of his motion on December 10, 2018. Rinaldi could not assert that these affidavits did not establish probable cause without having first read the affidavits. Nor could Rinaldi set forth what the affiant stated without having actually read the search warrant affidavits for the residences.

(Doc. 442, at 53). Rinaldi now claims that the statement he attributed to the affiant in his motion to suppress was not taken from the search warrant affidavits at issue, but rather from the wiretap affidavits. (Doc. 444, at 8). Defendant carefully does not explain how his argument that the "searches were unconstitutional cause the affidavits never established probable cause" could form one basis for his motion to suppress if he had never, in fact, seen the affidavits at issue. Nor does Rinaldi's Motion to Suppress (Doc. 81) state that he is not in possession of the search warrant affidavits upon which he relies in support of his motion. Similar to each issue raised in his motion for reconsideration, Rinaldi's request for reconsideration on this point amounts to nothing more than an attempt "to reargue matters already argued and disposed of or . . . an attempt to relitigate a point of disagreement

8

between the Court and the litigant", *Donegan,* 877 F.Supp.2d at 226, and is devoid of any legal or factual basis or argument.[3]

For the foregoing reasons, the Court will deny Defendant's Motion for "Reconsideration and/or Clarification/Expansion of the Record" (Doc. 444). A separate Order follows.

                                                           */s/ Robert D. Mariani*
                                                           Robert D. Mariani
                                                           United States District Judge

---

[3] The Court is compelled to note that Rinaldi has sought reconsideration as to a number of opinions issued by this Court (*see e.g.* Docs. 301, 343), including those decisions that were largely favorable to him (*see* Doc. 218). Nonetheless, and despite this Court's repeated legal statements and explanations of the proper grounds for reconsideration, Rinaldi's motion herein again fails to apply, or even recognize, the appropriate standard.