THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL RINALDI,<br>Petitioner | : | |
| v. | : | CASE NO. 3:18-CR-279<br>(RELATED CASE NO. 3:24-CV-274) |
| UNITED STATES OF AMERICA,<br>Respondent | : | (JUDGE MARIANI) |

# MEMORANDUM OPINION

## I. INTRODUCTION AND PROCEDURAL HISTORY

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi, Dwayne Brown, and Andrew Henry in the above-captioned action with one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846. (*See* Doc. 37).

On January 16, 2019, at the request of Defendant Rinaldi to proceed *pro se*, the Court held a hearing in accordance with *Faretta v. California*, 422 U.S. 806 (1975) and *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), wherein it conducted a colloquy with Rinaldi, in the presence of his CJA appointed counsel Joseph Blazosek, to determine whether Defendant understood the responsibilities and consequences of self-representation, was knowingly, voluntarily, and intelligently waiving his right to counsel, and would be permitted to represent herself. Following this colloquy, the Court determined that Rinaldi had knowingly, voluntarily, and intelligently waived the right to counsel and

understood the ramifications and consequences of proceeding *pro se* and therefore granted Rinaldi's request to represent himself. The Court thereafter appointed Attorney Blazosek as stand-by counsel at the request of Defendant.

The Government filed a First Superseding Indictment on January 21, 2020, charging Defendant Rinaldi with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. §§ 841 and 846 (Count 1) and with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (Count 2). (*See* Doc. 220).[1]

An eight-day jury trial was held beginning on August 17, 2020. On August 26, 2020, the jury returned a verdict finding Defendant Rinaldi guilty on Count 1 of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically heroin, and guilty on Count 2 of Distribution and Possession with Intent to Distribute Cocaine. (Doc. 397). The jury found that the charged conspiracy in Count 1 did not involve the controlled substances of cocaine, cocaine base, and marijuana. Following the jury's verdict, the second phase of trial was held wherein, in relevant part, the jury was asked to determine whether Defendant Rinaldi, prior to having committed the offenses charged in the First Superseding Indictment, had a final conviction for a serious drug felony. The jury returned a verdict in the affirmative. (Doc. 399).

[1] Defendants Brown and Henry signed plea agreements and entered guilty pleas before this Court in January of 2020 to Count 1 of the first Indictment and were not charged in the Superseding Indictment.

Following the conclusion of the trial, Rinaldi filed a "Motion for a New Trial" (Doc. 402) and "Motion for Judgement of Acquittal" (Doc. 403), which were denied by this Court on March 31, 2021 (Docs. 442, 443). Rinaldi was thereafter sentenced to a term of imprisonment of 235 months on each count, to run concurrently, to be followed by six years of supervised release.[2]

Rinaldi appealed his conviction and sentence. On appeal, Rinaldi challenged the sufficiency of the evidence presented at trial and argued that the Court erred in (1) giving certain jury instructions; (2) basing his sentence on acquitted conduct; (3) failing to review the record and independently apply the preponderance of the evidence standard in calculating his sentence; (4) applying a two-level enhancement for obstruction of justice; and (5) closing the courtroom during jury selection. *See generally, United States v. Rinaldi*, 2023 WL 3034327 (3d Cir. 2023). On April 21, 2023, the Third Circuit rejected each of Rinaldi's arguments and affirmed his conviction and sentence. *Id*.

Presently before the Court is Michael Rinaldi's timely *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 521). For the reasons set forth herein, the Court will deny Rinaldi's Motion.

---

[2] On February 1, 2024, this Court granted Rinaldi's motion for relief under 18 U.S.C. § 3582(c)(2) based on Amendment 821 of the Sentencing Guidelines Manual and reduced Rinaldi's sentence to 210 months' imprisonment on each count, to be served concurrently. (*See* Docs. 514, 515).

The following year, on January 17, 2025, an Executive Grant of Clemency was signed by President Joseph Biden, commuting Rinaldi's sentence and allowing his sentence to expire on July 16, 2025. (Doc. 537, at 35). As a result, Rinaldi served approximately 82 months of his sentence.

## II. STANDARD OF REVIEW

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b). Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

"The general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). This is because failing to raise an issue on direct appeal will "procedurally default," or bar, that issue from being raised in habeas. *United States v. Garth*, 188 F.3d 99, 106 (3d Cir. 1999). "Where a defendant has

procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 621. It is the defendant's burden to show cause and prejudice or actual innocence to proceed with his claims. *Id. See also*, *Fernandez v. United States*, 608 U.S. --, 146 S.Ct. 1292, 1300 (2026) ("With very narrow exceptions, a prisoner gets only one shot at collateral relief. §§ 2255(h)(1)-(2). Claims that have already been raised and rejected on direct review typically cannot be relitigated in § 2255 motions. . . . And claims *not* raised on direct review are procedurally defaulted unless the prisoner can demonstrate 'cause' and 'prejudice,' or else actual innocence. If the prisoner clears these procedural hurdles, he must demonstrate that the applicable substantive law entitles him to relief.") (internal citations omitted) (italics in original).

To show "cause," the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Some external factors that have been found to constitute "cause" are "interference by officials," "a showing that the factual or legal basis for a claim was not reasonably available to counsel," and "ineffective assistance of counsel." *Id.* at 494. Ultimately, for a petitioner "[t]o show cause, he must explain what prevented him from timely raising the defaulted claim." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 759 (3d Cir. 2018). Once a petitioner has shown "cause" to excuse the procedural default, he must still show "not merely that the errors . . . created a possibility of prejudice, but that

they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Accordingly, the defendant must prove that, if not for the error, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

Section 2255 does not provide a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact only when there is "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). The claimed defect must "present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* (citations omitted).

Allegations are not sufficient to support a motion under § 2255. *Blackledse v. Allison*, 431 U.S. 63, 74 (1977). A petitioner must set forth facts to support his contentions. *Zettlemover v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991). "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000) (citing *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988)).

If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the

judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d 542, 545-546 (3d Cir. 2005).

## III. Analysis

Michael Rinaldi raises eight grounds in support of his § 2255 motion. The Court will address each ground in turn.

### *A. Ground One*

Rinaldi first asserts that he was "denied his right to self-representation" at his arraignment hearing. (Doc. 521-1, at 1). As a result of not being permitted to represent himself as of the date of that hearing, Rinaldi claims he was prejudiced because "he would have entered a guilty plea at the arraignment [which] would have resulted in acceptance of responsibility points and would have negated an obstruction of justice enhancement" and he would "never have filed any request for extensions of time to file pre-trial motions [which] would have changed the outcome of [his] speedy trial motion [and] would have also resulted in an earlier trial date where the government would not have had as much preparation." (*Id.*).

On September 5, 2018, Rinaldi appeared for his arraignment in the above-captioned action before then-Magistrate Judge Joseph Saporito. At that time, Judge Saporito asked Rinaldi a series of questions, Rinaldi denied understanding the purpose of the proceeding and denied that he was the Michael Rinaldi named in the indictment, and Rinaldi's court-appointed counsel subsequently advised the Court that Rinaldi did not wish to enter a plea at that time and enumerated a number of issues, which would require the filing of formal motions, which Rinaldi believed should be raised on his behalf. (*See generally*, Doc. 251).

At no time during his arraignment did Rinaldi request to proceed *pro se* or indicate any desire to do so.

Rather, Rinaldi's present argument appears to be a reference to his arraignment in a related criminal case, docketed at 3:18-cr-280, wherein he was arraigned on October 3, 2018.[3] Although Rinaldi did twice request to represent himself "for the purpose of *today's* proceedings" (3:18-cr-280, Doc. 223, at 7, 8) (emphasis added), he never referenced the above-captioned action or stated a desire to proceed *pro se* in the present action. Rinaldi's comments were confined to "today's proceedings" in criminal case 3:18-cr-280. Where Rinaldi did not request that Judge Saporito allow him to proceed *pro se* in the present action, and where criminal action 3:18-cr-280 was dismissed with prejudice in 2021, Rinaldi's motion for relief on the basis that he was not permitted to proceed *pro se* in criminal action 3:18-cr-280 on the date of his arraignment in that case is meritless.

Further, Rinaldi's assertion that, had Judge Saporito permitted him to proceed pro se *in a separate criminal action*, Rinaldi would have succeeded on his speedy trial motion and would have had an earlier trial date is also entirely without merit. As this Court noted in its memorandum opinion denying Rinaldi's motion to dismiss on the basis of a speedy trial

[3] On August 21, 2018, the same day that the federal grand jury returned an indictment in the above-captioned action, the grand jury also returned an indictment charging Defendants Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846. (*See* 3:18-cr-280, Doc. 1). As a result of the Government filing a superseding indictment in the above-captioned action on January 21, 2020, and the subsequent trial in August of 2020, on May 6, 2021, upon motion by the Government, the indictment in criminal case 3:18-cr-280 was dismissed with prejudice. (*See* 3:18-cr-280, Doc. 275).

violation, the time period from August 21, 2018, when Rinaldi was indicted, to October 1, 2018, when co-defendant Brown filed a motion for extension of time to file pre-trial motions was not excludable and thus 41 days of non-excludable time was counted towards the speedy trial deadline in the above-captioned action. (Doc. 298, at 12-13). However, on September 27, 2018, while still represented by counsel, Rinaldi filed a "Motion to Dismiss Pursuant to F.R. Crim. P 12(B)." (Doc. 57). The Court dismissed the *pro se* motion on the basis that Defendant was represented by counsel. (Doc. 60). Had Rinaldi been *pro se* at that time, the motion would have operated to stop the speedy trial clock on September 27, 2018, not October 1, 2018, thus resulting in only 38 days of non-excludable time. With respect to Rinaldi's contention that he would have had an earlier trial date had he been *pro se* as of his October 3, 2018, arraignment, Rinaldi fails to identify anything that would have caused his trial to commence prior to August 17, 2020, if he had been permitted to proceed *pro se* in October instead of in January of 2019.[4]

---

[4] The record also belies Rinaldi's contention that he would have gone to trial earlier if he had been permitted to proceed *pro se* in October of 2018 instead of three months later. As noted by this Court in evaluating the third *Barker* factor when denying Rinaldi's motion to dismiss on the basis of a speedy trial violation,

> . . . Defendant did assert his right to a speedy trial on multiple occasions, particularly if certain letters filed by Defendant are liberally construed. (*See e.g.* Docs. 88, 139, 198, 227). *See Battis,* 589 F.3d at 681 ("When a defendant is proceeding *pro se,* he 'does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a reasonable assertion of the right so as to put authorities on notice of his Sixth Amendment claim.'")(quoting *Douglas v. Cathel,* 456 F.3d 403, 418 (3d Cir. 2006)).
>
> Nonetheless, the genuineness of Defendant's assertions of his rights are undercut by Defendant's repeated successful attempts to further prolong the commencement of his trial by filing new pre-trial motions. For example, in a letter to the Court filed December 18, 2018,

Finally, Rinaldi's argument that, had he been permitted to proceed *pro se*, he would have entered a plea of guilty at his arraignment and he would have not received "an obstruction of justice enhancement" (Doc. 521-1, at 1) is fatuous. At the hearing to address Defendant's Objections to the PSR, the Court concluded that the obstruction of justice enhancement was appropriate because: (1) Rinaldi attempted to coerce the Assistant U.S. Attorney "into an unlawful quid pro quo, meaning, that if the Government granted Mr. Rinaldi's Motion for Release and granted his Motion to Suppress, he would not take the

---

> Defendant stated that he had "a right to a quick & speedy trial and [he would] prefer a quick and speedy trial rather than counsel." (Doc. 88). Nonetheless, having already filed six pre-trial motions one-week prior to this letter, he thereafter filed at least eight additional pre-trial motions in January and February of 2019. Almost immediately thereafter, in March, 2019, Defendant filed a letter informing the Court of a number of issues, and stating that he "want[ed] to get to trial as soon as possible. . . ." (Doc. 139). However, in June, 2019, Defendant filed an additional pre-trial motion (Doc. 155). Then, that same month, Rinaldi informed the Court that he "may want to amend or supplement [his] pre-trial motions once [he has been] provided with . . . additional discovery" while also arguing that the Government had failed to timely turn over certain discovery and that he was being deprived of his right to a "quick and speedy trial." (Doc. 157). On July 10, 2019, Rinaldi filed a "supplemental motion", which requested that the wiretaps be suppressed due to untimely sealing. (Doc. 161). In September, 2019, Defendant filed a motion for production, requesting additional information that he may use to support his previously filed motion to suppress. (Doc. 197). Several days later, Rinaldi requested that the Court hold a hearing on his pre-trial motions and set a trial date. (Doc. 198; *see also,* Doc. 203 (asserting that his right to a speedy trial is being violated)). Nonetheless, the Court having ruled on the majority of Rinaldi's pre-trial motions in December, 2019, Rinaldi immediately moved for reconsideration (Doc. 218) in January, 2020, of the Court's order granting in part and denying in part his motion to suppress. Although Rinaldi thereafter withdrew any pending pre-trial motions – with the exception of his motion for reconsideration – purportedly so that he could proceed to trial, within days of the Court scheduling trial in Rinaldi's case on January 31, 2020 (Docs. 240, 241), Defendant filed a motion to dismiss and another motion to suppress (Docs. 243, 245), and ten days later, the present motion to dismiss due to speedy trial violations (Doc. 259). Thus, despite Defendant's statements asserting his right to a speedy trial, he repeatedly engaged in actions designed to thwart a speedy resolution of this case.

(Doc. 298, at 35-37).

threatened action" of filing "some sort of legal action", including filing an ethics complaint, civil suit, and/or contacting the media and civil rights organizations such as the ACLU and NAACP; (2) Rinaldi filed an affidavit on the record publicly identifying a confidential informant as Christopher Peterson, "in an attempt to discredit him and intimidate or otherwise dissuade him from testifying", and that informant thereafter refused to appear to testify at trial, despite being under subpoena by the Government; and (3) Rinaldi repeatedly denied that he was the Michael Rinaldi named in the indictment, including during his initial arraignment. (Doc. 470, at 97-100). The three bases for the Court's finding of an obstruction of justice were all squarely within the control of the defendant. Rinaldi's claim that he would not have engaged in such conduct but for the fact that he was not allowed to proceed *pro se* in his companion case on October 3, 2018, is the equivalent of insisting that it was this Court's responsibility to save Rinaldi from his own purposeful and calculated wrongdoings.

For the afore-discussed reasons, Ground One of Rinaldi's motion pursuant to § 2255 fails to set forth any Constitutional violation or demonstrate any fundamental defect which inherently resulted in a miscarriage of justice.

### *B. Ground Two*

Rinaldi next asserts that then-Magistrate Judge Karoline Mehalchick "abused her discretion when she rejected his guilty plea" at his arraignment on the Superseding Indictment on January 30, 2020, "for no reason." (Doc. 521-1, at 2). Rinaldi argues that this "left [him] to believe that his only option was to go to trial and left [him] without the option to argue for two acceptance of responsibility points as well as for an additional one point based on this early acceptance of responsibility for pleading guilty at the arraignment." (*Id.*).

At Rinaldi's arraignment on January 30, 2020, Judge Mehalchick began by confirming that Rinaldi understood that he had been charged in a superseding indictment with felony offenses and that he wished to continue to proceed *pro se* with stand-by counsel. (Doc. 247, at 2). Following the Government's recitation of the charges against him and the associated penalties, the following exchange occurred:

> THE COURT: Thank you, counsel. Mr. Rinaldi, do you understand the charges against you in the superseding indictment and the penalties associated with those charges?
>
> THE DEFENDANT: No.
>
> THE COURT: You don't understand them?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you understand what you heard today, what those charges are, not necessarily what they mean, in terms of whether they're true or not, but that there are allegations against you? Do you understand that?
>
> THE DEFENDANT: To an extent.

THE COURT: Okay.

THE DEFENDANT: Look, you seem like a nice lady, so I don't want to give you a hard time or waste your time or nothing.

THE COURT: You're not wasting my time.

THE DEFENDANT: My issue with it is, one, is the name. Michael Rinaldi. You know, it's still my contention that that's a corporate entity.

THE COURT: I understand.

THE DEFENDANT: And that's not me. And I'm here today, as counsel in the case, because I'm here as his representative, but I'm not here as the Michael Rinaldi that's charged, so I take the position that I am not the true Defendant in this matter.

THE COURT: Okay.

THE DEFENDANT: So it's hard for me to understand. So this is why I'm having a hard time understanding why I'm even here.

THE COURT: Do you understand the charges brought against Michael Rinaldi, as they are stated in the document before you?

THE DEFENDANT: As against the corporation, against the corporate entity known as Michael Rinaldi.

THE COURT: Do you understand what those charges are?

THE DEFENDANT: Actually, I'm having a hard time understanding that, also, because it says, conspiracy, and from my understanding, conspiracy is an agreement between two or more people, but it only names one person, and nowhere in here does it name a second person. So I don't see how -- I don't understand how it's a conspiracy.

THE COURT: And that would be a matter that goes to the merits of the charge against you, but for purposes of today, do you understand that there is a conspiracy charge alleged against Michael Rinaldi?

> THE DEFENDANT: As long as we agree that, in no way, shape or form am I acknowledging or agreeing that I'm the Defendant in this matter or I'm the Michael Rinaldi that the conspiracy charge is lodged against.

(Doc. 247, at 4-5). Rinaldi subsequently asked the Government to restate the penalties he faced for Count 1:

> [AUSA] CAMONI: . . The maximum potential penalty is life, there's a mandatory 10-year minimum prison term, maximum potential fine is $8 million, supervised release term, there's an eight-year minimum mandatory, and that goes up to a life term, and there's a 100-dollar special assessment.
>
> THE DEFENDANT: Is the penalty and/or a fine or -- is it imprisonment and/or or?
>
> MR. CAMONI: Yes. The maximum potential prison term is life, the maximum potential fine is $8 million. The Court would decide, after conviction, whether you're assessed the fine, and prison time, whether it's just prison time or whether it's just a fine, but it's and/or.
>
> THE DEFENDANT: So it can be punishable by just a fine and no prison time, because it is and/or?
>
> MR. CAMONI: If that's what the Court decides, that's what the Court decides -- actually, no, I'm sorry, I take that back. There's a 10-year mandatory-minimum prison term in this case, so it would have to be, at least, a 10-year mandatory term of imprisonment. There's no minimum mandatory fine, but the Court can assess a fine within its discretion.
>
> THE DEFENDANT: All right, because my reading of it, it says, and/or a fine, so, to me, that's why -- that's why I'm also having a hard time understanding that, because, in plain English, and/or means that it's one or the other or it could be both. Now, I'm being told it can't be one or the other, that no matter what, that it is imprisonment.
>
> THE COURT: . . . Any argument about the reading of the statute and what sentence would apply will come later before Judge Mariani, after a conviction in this case, if a conviction occurs.

> THE DEFENDANT: See, this affects my decision today of whether or not to plead guilty or not guilty, because if it's or [*sic*] a fine, I'm definitely going to plead guilty and take the fine.
>
> THE COURT: But what Mr. Camoni has indicated and what the statute says is there is, at least, a 10-year minimum in prison sentence, and then, possibly, a fine, as well. So that's what the statute says.
>
> The other thing is, when it comes to a plea, whether you can plead guilty or not, I'm going to tell you right now, as a Magistrate Judge presiding over your initial appearance and arraignment in this matter, I can't accept a guilty plea at this juncture. So entering a guilty plea today is not a possibility.
>
> THE DEFENDANT: But that was actually the plea I wanted to enter.
>
> THE COURT: I understand, but I can't do that. If that's something you want to do, you're going to have to proceed -- that doesn't happen today. That's not going to be able to happen today.

(*Id*. at 6-8). When the Government attempted to read the applicable statute to Rinaldi and explain to him why he was not subject only to a fine, Rinaldi responded that: "My position is, like I said, person doesn't apply, because this indictment is actually against a corporate entity, so this is my position that, actually, the second part of the statute, which is the fine, is the part that's applicable." (*Id*. at 10).

Judge Mehalchick thereafter informed Rinaldi that she was entering a plea of not guilty of his behalf, which Rinaldi stated he understood. At that time, the Government offered:

> [AUSA] CAMONI: Your Honor, the Government would be amenable to setting a change of plea hearing with the District Court, if Mr. Rinaldi wishes to enter a guilty plea. The Government is available at his desire and at the Court's discretion.

> THE COURT: Well, we will let Judge Mariani's chambers know that that has been stated by the Government, and Mr. Rinaldi, if you wish to schedule -- enter a guilty plea to these charges, I'm sure that you can be in contact with the Assistant U.S. Attorney on this matter, and that can be scheduled before the District Court at the Court's convenience.
>
> THE DEFENDANT: Yes

(*Id.* at 11).

The record reflects the absurdity of Rinaldi's argument that he was prevented from entering a guilty plea at the arraignment because he was informed by Judge Mehalchick that he, as charged, faced both imprisonment and the prospect of a fine, so that he believed "his only option was to go to trial", and was therefore later unable to argue that he was entitled to acceptance of responsibility points at sentencing. Preliminarily, Rinaldi consistently represented that the Superseding Indictment had been brought against a corporation, and not a person. He denied being "Michael Rinaldi", and feigned confusion about how Count 1 charged a conspiracy. He further repeatedly professed a lack of understanding as to the type, and extent, of penalties he faced if pleading guilty. Rinaldi's offer to plead guilty was not an offer to plead guilty at all, unless it was to a fine. (*See* Doc. 247, at 7-8 ("if it's or [*sic*] a fine, I'm definitely going to plead guilty and take the fine")). However, Judge Mehalchick and AUSA Camoni both informed Rinaldi that he was subject to a 10-year mandatory minimum sentence *and* the possibility of a fine. For Rinaldi to argue, as he has done, that he was prevented from entering a guilty plea at his arraignment where his offer was premised on his willingness to pay a fine only lacks the slightest basis in

law where he faced a 10-year mandatory minimum term of incarceration on the charges against him, a fact of which he was fully informed at the arraignment.

Furthermore, the Government informed Rinaldi and Judge Mehalchick that it "would be amenable to setting a change of plea hearing with the District Court" and Judge Mehalchick directly informed Rinaldi that if he wanted to enter a guilty plea to the charges, he could contact the AUSA and a change of plea hearing could be scheduled by the District Court. Rinaldi's current assertion that he believed he had no choice but to proceed to trial is belied by the record and a contrived attempt to impede the legal proceedings applicable to him as one charged with multiple felonies.

For these reasons, Ground Two of Rinaldi's § 2255 motion will be rejected.

### *C. Ground Three*

Ground Three of Rinaldi's motion claims that then-Magistrate Judge Mehalchick "advised Rinaldi of the wrong statutory maximum and the District Court used the wrong statutory maximum sentence at sentencing." (Doc. 521-1, at 3). Rinaldi's motion is devoid of any support for his assertion that the statutory maximum for Count 1 "should have been 5 years – which is the statutory maximum for marijuana." (*Id.*). Rinaldi nonetheless asserts that his sentence "exceeds this 5 year statutory maximum and his sentence should be vacated and Rinaldi should be resentenced." (*Id.*).

Rinaldi's nonsensical argument fails on the merits for a number of reasons, as correctly set forth by the Government in its brief in opposition to Rinaldi's § 2255 motion

(*see* Doc. 531, at 23-25). Nonetheless, the Court need not address the merits of this claim where the claim is now moot. Ground Three does not challenge Rinaldi's conviction, but rather only his sentence. As previously explained, on January 17, 2025, an Executive Grant of Clemency was signed by President Biden, commuting Rinaldi's sentence and allowing his sentence to expire on July 16, 2025. (Doc. 537, at 35). As a result, Rinaldi was released in July of 2025, having served approximately 82 months of his sentence. Rinaldi's request to be resentenced on Count 1 cannot be effectuated where he has already been released from prison. Nor has Rinaldi alleged any continuing adverse consequences that could be remedied by this present request. *See e.g. King v. United States*, 2025 WL 2237669, * 12 (D.N.J. 2025) ("Petitioner seeks resentencing without the level increase, which would result in a reduction of his sentence, and immediate release from incarceration. If Petitioner's claim was challenging his conviction, then that would satisfy the case and controversy requirement as continuing adverse consequences are presumed. However, Petitioner is not challenging his conviction in this claim. Rather, he is challenging only the part of the sentence he already completed, so this presumption does not apply. Petitioner fails to point to any continuing adverse consequence. Plaintiff's claim for immediate release from prison would not be redressed by a favorable decision here, as he has already been released from prison. Petitioner's claim is dismissed as moot based on his release from federal custody.") (internal citations omitted).

As a result, the Court will deny Ground Three of Rinaldi's § 2255 motion as moot.

### *D. Ground Four*

Rinaldi next argues that he "was denied his right to a public trial when the Court was closed to the public during jury selection." (Doc. 521-1, at 3). As Rinaldi acknowledges, he raised this issue both in his post-trial motion before this Court and on appeal before the Third Circuit (*id.*), and it has been twice rejected. Rinaldi attempts to circumvent the findings of this Court and the Circuit Court by arguing that he is not "asking for his conviction to be vacated", but instead only requesting an evidentiary hearing "so the record can be expanded first" in an attempt for him to find evidence to support his claim of courtroom closure (*id*. at 3-4).

In its memorandum opinion denying Rinaldi's motion for a new trial, this Court addressed his argument that "during jury selection and voir dire process . . . the Court was closed to the public and this was a violation of Rinaldi's rights" (Doc. 402, at 1). (Doc. 442, at 19-23). In rejecting Rinaldi's contention that the courtroom was closed as "baseless" (*id.* at 23 n. 8), the Court explained, in part, that the courtroom was not closed during voir dire and jury selection, at no point "did the Court state, or imply in any way, that the courtroom was, or would be, closed to the public or that the chairs to the side of the courtroom, which were specifically in excess of those needed for the prospective jurors, could not be used by any member of the public or person who so chose", and that "this Court observed several people who were not prospective jurors periodically come in and out of the courtroom and sit in the chairs on the side of the courtroom during this process." (*Id*. at 20, 23). On

appeal, the Third Circuit deemed Rinaldi's argument that the District Court erred in closing the courtroom during jury selection as "specious" and "not merit[ing] discussion". *Rinaldi*, 2023 WL 3034327, at * 1 n. 2.

Rinaldi is not entitled to an evidentiary hearing where the underlying fact remains unchanged: the courtroom was not closed during jury selection. This Court never, orally or in writing, directed the closure of the courtroom and this Court personally observed members of the public freely entering and exiting the courtroom during the voir dire and jury selection process. An evidentiary hearing cannot change these fundamental facts. Where, in this case, Petitioner's "allegations [are] contradicted conclusively by the record" and his "allegations [are] patently frivolous," *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001), an evidentiary hearing is not warranted.

### *E. Ground Five*

Although Rinaldi's fifth argument asserts that he had "two missing witnesses during trial": Steven Powell and Christopher Peterson (Doc. 521-1, at 4), he does not explain how he was prejudiced or set forth any basis for relief as the result of these "missing witnesses."

With respect to Powell, Rinaldi acknowledges that he knew Powell, who was residing in Nevada at the time of the trial, had cancer and was sick, but argues that he "was not fully aware of the extent of his sickness" and believed that Powell would "make a full recovery."

Doc. 521-1, at 4).[5] He further asserts that he "requested a subpoena be served" on Powell and therefore "took the appropriate steps to have his witness' presence secured." (*Id.* at 4-5).[6] The brief statements in Rinaldi's motion constitute the entirety of Rinaldi's assertions as to Powell's absence at trial, do not request any relief as a result of Powell's absence, and contain no assertion that Rinaldi was prejudiced by Powell's failure to testify at trial.

---

[5] Steven Powell passed away on December 26, 2020, four months after the conclusion of Rinaldi's trial, after suffering from an advanced form of cancer since 2018 and from COVID in July-August of 2020. As previously explained, for the reasons set forth in the Court's memorandum opinion denying Rinaldi's motion for a new trial, it is evident that Rinaldi's assertions that he was unaware of the extent of Powell's illness and believed Powell would fully recover are patently false and clearly contradicted by the record. (*See* Doc. 442, at 33-37).

[6] Although Rinaldi states that he "took all the appropriate steps to secure Mr. Powell as a witness" (Doc. 521, at 4), including requesting, and receiving, a subpoena for Powell, Rinaldi ignores that he failed to actually serve Powell. As noted by the Court on August 24, 2020, at the conclusion of Rinaldi's trial presentation of witnesses and evidence:

> You have known from the outset that Mr. Powell might be someone you would call as a witness, you have long known Mr. Powell is suffering from cancer and undergoing treatment, you have long known that he resides in Las Vegas, Nevada, you have long known that Mr. Powell was an unindicted co-conspirator in this case.
>
> On July 17, 2020, you filed a motion requesting issuance of a subpoena to Powell, and in support of that motion, you asserted that Mr. Powell could testify that he did not enter into the charged conspiracy, and he did not instruct you to meet with the confidential source Christopher Peterson.
>
> Again, I granted your Motion for the Issuance of Subpoena, and I did that on July 22, over a month ago. Now, you tell me you're unable to procure Mr. Powell's attendance.
>
> This is what it boils down to. You've had more than ample time to procure Mr. Powell's appearance. In addition, when you knew you were unable to obtain Mr. Powell's appearance, you could have invoked Federal Rule of Criminal Procedure 15 well before the beginning of this trial by moving that Mr. Powell be deposed, in order to preserve his testimony for trial.

(Trial Tr., Aug. 24, 2020, at 14-15).

Rinaldi also, correctly, claims that Christopher Peterson did not testify at trial. (Doc. 521-1, at 4-6). However, once again, Rinaldi ignores that Peterson's absence was the result of Rinaldi's own actions throughout this case.

Rinaldi argues that he did not subpoena Peterson, despite believing that Peterson had exculpatory evidence, because he expected Peterson to lie on the stand. (*Id*. at 5). This explanation does not excuse Rinaldi, who was admittedly aware of Peterson's involvement in this action in 2018 and of the purportedly exculpatory evidence he possessed, from requesting a subpoena for Peterson prior to trial in case he ultimately decided to call Peterson to the stand. Furthermore, on August 17, 2020, Rinaldi was informed by AUSA Camoni that Peterson had given statements substantially contrary to those previously provided to the Government. Rinaldi nonetheless at no time thereafter attempted to subpoena Peterson, despite this Court instructing him that he could do so.

Here, the Government did subpoena Peterson prior to trial, but Peterson did not appear. Rinaldi now asserts that "Peterson [was] allowed to defy a subpoena with no consequences" and that the "government did not want Peterson to show up and testify because they knew his testimony could exonerate Rinaldi" and accuses the Government of knowing how to "contact" Peterson "but lied when they acted as if they didn't know where he was." (Doc. 521-1, at 5-6). Rinaldi therefore requests "a hearing where Peterson and the government agents can explain." (*Id*. at 6). However, Rinaldi's bald accusations that the Government lied about their lack of knowledge as to Peterson's whereabouts are without

any foundation and the request for a hearing consists of nothing more than a fishing expedition. There is nothing in the record to support a claim that the Government was aware of Peterson's whereabouts after August 18, 2020 or to suggest that the Assistant U.S. Attorney or agents of the Government lied about their knowledge of Peterson's location.[7] Rather, as this Court found in applying an obstruction of justice enhancement at

---

[7] At trial on August 21, 2020, Agent Kaluzny was asked on direct examination about the Government's efforts to locate Peterson:

Q. Did you attempt to contact him over the last couple days?

A. Yes.

Q. Did he answer the phone?

A. No, he did not.

Q. Do you have any idea where he is?

A. No, I don't.

Q. Was he issued a subpoena?

A. Yes, he was.

Q. Is his subpoena a document that compels testimony?

A. That's correct.

Q. So the Government did take a step to try to compel his testimony; correct?

A. Yes.

Q. And if you ignore a subpoena and don't show up, you can be arrested; correct?

A. That is correct.

Q. But in order to be arrested, you have to know where someone is; correct?

A. That's correct.

sentencing, Rinaldi's affidavit, filed December 10, 2018, publicly identifying Peterson as a confidential informant, was "an attempt to discredit [Peterson] and intimidate or otherwise dissuade him from testifying" (Doc. 470, at 98) and, during the trial, Task Force Officer Thomas Kaluzny twice testified that Peterson "refused to testify because he's afraid of you [Rinaldi]". (Trial Tr., Aug. 21, 2020, at 45, 95).

Furthermore, as argued by the Government in its brief in opposition to Rinaldi's present motion, "to the extent that Rinaldi might claim [Powell and Peterson] could have exculpated him, that point is moot, as he has recently admitted to the Court that he is, in fact, guilty of what he was convicted of." (Doc. 531, at 28). In support of this statement, the Government cites to Rinaldi's "18 U.S.C. 3582 Letter/Motion" (Doc. 511) wherein he admits that he committed a "serious" offense, "cho[se] the streets and the street life", that "being in the streets and spending all my life around drug users or drug dealers normalized this behavior for me and made it difficult for me to see the wrong or harm of selling drugs", and that

> [s]elling drugs at times can be just as addictive as using them. Just as the user can get high and in this intoxicated state can make terrible decisions. The same can happen to the person who sells the drugs. Your thoughts can become clouded and you might use bad judgments. When you get away from

---

> Q. So Christopher Peterson did not comply with the Government's subpoena to come here and testify today; correct?
>
> A. That's correct.

(Trial Tr., Aug. 21, 2020, at 96-97).

> this life style, that is when you can see the overall picture and realize the damage that was or is caused by drugs and that is what it took for me.

(Doc. 511, at 5-8). (*See also*, Doc. 530 (Rinaldi's Reply brief addressing his motion for compassionate release stating that "my decision not to cooperate does not make me less remorseful than my codefendants. I understood my actions and the fact that th[ere] could be consequences. So I know there should be a punishment and I am deserving of it.")). In his Reply Brief to the § 2255 motion, Rinaldi does not address the Government's assertion that he has admitted guilt to the crimes for which he was convicted or deny that he made prior statements, post-trial, admitting his guilt.

Finally, for the reasons addressed in this section, any prejudice which Rinaldi may have suffered due to the absence of Powell and Peterson as witnesses at trial was entirely due to Rinaldi's own conduct. Despite knowing Powell resided in Nevada and was very ill, Rinaldi did not serve a subpoena on Powell or file a motion to take Powell's deposition for trial purposes pursuant to Federal Rule of Criminal Procedure 15. Rinaldi also made no effort to attempt to procure Peterson's attendance at trial by subpoena or otherwise either prior to, or during, the trial. A defendant cannot now complain of an issue at trial of his own creation and for which he is solely responsible. In particular where a defendant intelligently and voluntarily chooses to represent himself *pro se*, to find otherwise would impermissibly reward misconduct and deliberate decisions to take, or not take, certain actions by a defendant at trial and encourage a defendant to engage in such actions, omissions, or

misconduct as a means of later obtaining a new trial or successfully vacating his conviction should he be found guilty at trial.

For the afore-stated reasons, Ground Five of Rinaldi's § 2255 motion is baseless.

### *F. Ground Six*

In Ground Six, Rinaldi asserts that "he was not given exculpatory information in violation of Brady." (Doc. 521-1, at 6). Specifically, Rinaldi identifies five individuals whom he claims were interviewed by Government agents but for whom no, or not all, records were provided to him: Derrix Smith; Amy Janoski; Reggie Taylor; Andrew Wilson; and Dwayne Brown. (*See id.* at 6-8).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court identified a duty on the part of the Government under the Due Process Clause to ensure that criminal trials are fair by disclosing evidence favorable to the defendant so long as it is "material either to guilt or punishment," *id.* at 87. The Supreme Court extended the *Brady* rule in *Giglio v. United States*, 405 U.S. 150 (1972), requiring the Government to disclose evidence that goes to the credibility of prosecution witnesses.

> A Brady violation has three components: the evidence at issue must be favorable to the defendant; it must be material; and it must have been suppressed by the prosecution. *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir.2005); *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir.1991). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Material evidence can include evidence that may be used to impeach a witness. *Id.* at 676, 105 S.Ct. 3375; *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

*United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008). *See also*, *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the [prosecution] suppressed the evidence, either willfully or inadvertently; and (3) prejudice ... ensued.") (internal quotation marks omitted).

"Pure speculation that exculpatory information might exist is insufficient to sustain a *Brady* claim." *United States v. Georgiou*, 777 F.3d 125, 141 (3d Cir. 2015). Furthermore, it is a "well-established principle that 'the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.'" *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005), *as amended* (Mar. 8, 2005) (quoting *United States v. Starusko,* 729 F.2d 256, 262 (3d Cir. 1984)).

Here, the Government asserts that it "provided all discoverable materials to Rinaldi in advance of trial" and that none "of the individuals [Rinaldi] names in the petition provided any exculpatory statements. . ." (Doc. 531, at 29).

The alleged *Brady* violations as to three of the five individuals named by Rinaldi are, on their face, without merit. Rinaldi admits that Derrix Smith informed him that "he didn't have any" information on Rinaldi and Steven Powell. (Doc. 521-1, at 6). At the same time, Rinaldi offers not the slightest basis to support his *Brady* claim that Smith had exculpatory information that he conveyed to the Government. In addition, Rinaldi's vague statement

that Reggie Taylor and Andrew Wilson "made statements which contradicted the statements made by [co-conspirator] Dwayne Brown" lacks the necessary specificity and is entirely unsupported by any factual allegations or explanation.

With respect to Amy Janoski, Rinaldi contends, without support, that Janoski "denied" transporting marijuana on behalf of Rinaldi "and made exculpatory statements which were not turned over in discovery." (Doc. 521-1, at 6). Once again, Rinaldi fails to identify even the most general content of these other alleged "exculpatory statements". Furthermore, while not giving any credence to Rinaldi's assertion that Janoski denied selling marijuana to Rinaldi when she spoke with Government agents, even assuming the truth of this statement, Rinaldi cannot establish that he was prejudiced in any way by this omission. Rather, in finding Rinaldi guilty of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count 1), the jury specifically found that the conspiracy *did not* include marijuana. (*See* Doc. 397, at 2).

Rinaldi's assertion of a *Brady* violation with respect to statements made by co-conspirator Dwayne Brown are equally without merit. Rinaldi does not allege that Brown made any statements to the Government which were not turned over to him. (*See generally*, Doc. 521-1, at 6-7). Instead, Rinaldi speculates, without providing any basis, that Brown was informed by unnamed Government agents that Rinaldi "was the only defendant the government really wanted" due to a "vendetta" that Assistant U.S. Attorney John Gurganus had against Rinaldi. (*Id.* at 6-7). However, Rinaldi fails to explain both why he

believes that Brown would have been told that Rinaldi was the Government's target and the basis for his belief that AUSA Gurganus, who was not of record in this case, had a "vendetta" against him.[8] Rinaldi further challenges any assertion by Brown that he was not "specifically promised anything" in return for his cooperation. (*Id*. at 7). Once again, Rinaldi has come forward with no evidence, other than his own speculative belief based on Brown's ultimate sentence of incarceration, that Brown was made any promise(s) by the Government.[9]

Because Rinaldi cannot establish any cognizable claim under § 2255 as a result of his allegations of *Brady* violations and a "vendetta" against him, Ground Six of Rinaldi's § 2255 motion will be denied.

---

[8] Further undermining Rinadi's argument is the Government's accurate statement, in support of its denial of any vendetta against Rinaldi, that: "As the government made clear during the trial, agents were not even targeting Rinaldi. They attempted to purchase heroin from Stephen Powell, but instead, unexpectedly, Michael Rinaldi showed up and delivered cocaine." (Doc. 531, at 30).

[9] Dwayne Brown pleaded guilty to Count 1 of the Indictment on January 13, 2020, pursuant to a written plea agreement. The plea agreement specifically informed Brown that the Court was not bound by the Plea Agreement or the recommendations of the parties (Doc. 164, at 15-16) and the Court colloquied Brown as to this portion of the Agreement at the change of plea hearing. Subsequently, at Rinaldi's trial, Brown testified that no promises had been made to him about what sentence the Government would recommend at sentencing, what sentence he would receive, and that no one made him any promises about potential leniency as a result of his cooperation and testimony. (Trial Tr., Aug. 18, 2020, at 58, 61, 62). To the extent that Rinaldi is asserting that Brown was promised a reduced sentence by the Government in return for his cooperation, or simply to further a "vendetta" against Rinaldi, there is no evidence to support such a claim, nor did the Government have the power to ensure that Brown would receive a reduced sentence.

### *G. Ground Seven*

Ground Seven of Rinaldi's motion initially asserts that this Court "violated the witness Advocate Rule when it instructed the jury that a time and date stamp on one of the government['s] exhibits was a Bates stamp"[10] (Doc. 521-1, at 8) but devolves into a litany of his prior assertions, that have been addressed and rejected by this Court both at trial and in its post-trial memorandum opinion (*see* Doc. 442, at 45-50; Doc. 450, at 7), that the video at issue was tampered with and Agent Kaluzny was not capable of properly using the recording equipment.

At trial, the Government played Exhibit 11.1 for the jury. In response, the following exchange occurred:

> MR. RINALDI: Your Honor, I'd like to renew my objection. This is not an authentic copy of this CD, the authentic copy had the date on it, and now they covered up the date. It was a date stamp on the copy they turned over to [stand-by counsel] Mr. Blazosek, and the date is no longer on there.
>
> THE COURT: What's the date of this recording?
>
> THE WITNESS [AGENT KALUZNY]: May 14th, 2018.
>
> THE COURT: You're saying this wasn't May 14th?
>
> MR. RINALDI: This says 3/14 on it, that's why they covered it up.
>
> THE COURT: Did you cover something up?

[10] Of note, the Court did not "instruct" the jury that the "time and date stamp on" the Government's exhibit was a Bates stamp, but rather, following its receipt of information provided by both Rinaldi and the Government, explained to Rinaldi that the purported "time and date stamp" was a Bates stamp file name and confirmed that he understood what this was. (Trial Tr., Aug. 20, 2020, at 168).

> AUSA CAMONI: I did not. I asked the trial tech to marry up the transcript with the video, I can go back to the raw video and look at it, and if that did happen -- I don't remember a time stamp -- but if there was one, I'll certainly bring it back and make it available. If Mr. Rinaldi has it, he can play it. If that happened, it was inadvertent. I don't remember a time stamp.

(Trial Tr., Aug. 20, 2020, at 164). When asked by the Court what Rinaldi was contending, Rinaldi stated that the video "has been tampered with" because the "copy that they showed [in discovery] has a date on it, and the date said 3/14, which is March 14th", not May 14. (*Id.* at 165). Following further testimony by Agent Kaluzny as to this issue, and statements made by Rinaldi and AUSA Camoni to the Court, the Court ordered a recess to determine whether Rinaldi had been provided with a copy of the exhibit prior to trial that contained a date stamp. (*Id.* at 165-167). Following the recess, the Government explained:

> Your Honor, I've reviewed the original recording, there is no time stamp on the recording, the recording that was played here today was not cropped or covered or changed, in any way. The copy that was provided to Mr. Rinaldi as discovery was Bates stamped in the file name, so the file was produced as an AVI file, which is a type of video file.
>
> The file name was Powell_Rinaldi 3/14/18. That Bates stamp file name was applied by a legal assistant, in the course of providing discovery, who had no knowledge of the investigation.

(*Id.* at 168). When the Court questioned Rinaldi as to whether he understood what a Bates stamp was, he responded that "[i]t's the stamp on the exhibit". (*Id.*).

Rinaldi's attempts to claim that the video was "tampered with" fail. As explained by the AUSA, the video itself did not contain a date and time stamp, but rather was erroneously titled, when given a file name, with the date 3/14/18. Rinaldi, who necessarily was in

possession of the video provided to him during discovery, has not presented any evidence to place at issue the Government's explanation that only the file name (titled by a legal assistant during the course of discovery), and not the video itself, contained the March 14th date. Nor, despite being able to do so, did Rinaldi move, or attempt, to provide the Court with his copy of the video in an effort to show that the Government was misrepresenting the actual content of the video or "covering up" a date and time stamp on the video exhibit.

Ground Seven of Rinaldi's motion is thus entirely without merit, fails to raise a cognizable § 2255 issue, and will be rejected.

### *H. Ground Eight*

Finally, Rinaldi asserts that his "appellate counsel was ineffective for not presenting these meritorious issues on direct appeal and this should be cause as to why these issues were not waived. . . ." (Doc. 521-1, at 10).

"Precedent has long recognized that a § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel. . . And that is especially so for a claim of ineffective assistance of appellate counsel because in representing a prisoner on direct appeal, counsel cannot be expected to advocate against his or her own effectiveness." *United States v. Braddy*, 837 F.App'x 112, 115-116 (3d Cir. 2020) (internal citations and quotation marks omitted). *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth two-prong ineffective assistance of counsel claim: deficient performance and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 535-36,

(1986) (applying *Strickland* to appellate counsel); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) ("The two-prong standard of *Strickland v. Washington* . . . applies to a defendant's claim that his appellate counsel was ineffective.").

However, "[t]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro*, 538 U.S. at 504. Thus, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 621. "[C]laims *not* raised on direct review are procedurally defaulted unless the prisoner can demonstrate 'cause' and 'prejudice,' or else actual innocence. If the prisoner clears these procedural hurdles, he must demonstrate that the applicable substantive law entitles him to relief." *Fernandez*, 146 S.Ct. at 1300 (internal citations omitted) (italics in original).

Here, appellate counsel did raise the issue of the claimed courtroom closure – which was summarily rejected by the Third Circuit. Even assuming *arguendo* that Rinaldi has shown cause such that one or more of his other grounds for relief set forth in his present habeas motion should not be deemed waived, he is not entitled to relief. As explained herein, none of the issues raised by Rinaldi in support of his § 2255 motion have merit, nor has he demonstrated how he was prejudiced by one or more of the purported errors, or demonstrated any "fundamental defect which inherently results in a complete miscarriage of

justice [or] an omission inconsistent with the rudimentary demands of fair procedure," *Hill*, 368 U.S. at 428. Where the underlying issues are without merit, appellate counsel cannot be deemed ineffective for failing to raise those issues on appeal. *See United States v. Scripps*, 961 F.3d 626, 630 (3d Cir. 2020) ("counsel cannot be ineffective for failing to raise an issue on appeal where there was no underlying error. . .").[11]

Thus, Ground Eight of Rinaldi's § 2255 motion does not entitle him to any relief.

## IV. Evidentiary Hearing

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

---

[11] In addition to conducting a *Strickland* analysis, to wit, whether counsel's representation fell below an objective standard of reasonableness and whether the defendant suffered prejudice as a result, the Third Circuit has also explained two additional principles that are relevant to an inquiry into the reasonableness of counsel's conduct:

> First, in a criminal defense, certain litigation decisions are considered "fundamental" and are for the client to make. These include decisions on whether to plead guilty, whether to testify, and whether to take an appeal. After consultation with the client, all other decisions fall within the professional responsibility of counsel. . . . In particular, it is a well established principle that counsel decides which issues to pursue on appeal, . . . and there is no duty to raise every possible claim. . . . An exercise of professional judgment is required. Appealing losing issues runs the risk of burying good arguments in a verbal mound made up of strong and weak contentions. . . . Indeed, the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. . . . Thus, as a general matter, it is not inappropriate for counsel, after consultation with the client, to override the wishes of the client when exercising professional judgment regarding non-fundamental issues.

*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (internal citations and quotation marks omitted). Here, this Court has found that none of Rinaldi's issues raised in his § 2255 motion are meritorious. It is thus evident that, despite Rinaldi's assertion that he requested appellate counsel to raise these issues on appeal, counsel acted within her professional judgment, her representation did not fall below an objective standard of reasonableness, and counsel was not ineffective for failing to raise the enumerated issues.

thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (M.D.Pa. 2022) (internal quotations and citations omitted)).

## V. Certificate of Appealability

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on any of Rinaldi's claims because the Court finds that reasonable jurists would not find this Court's the resolution of Rinaldi's constitutional claims debatable or wrong.

## VI. Conclusion

For the afore-stated reasons, the Court will deny Rinaldi's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 521). A separate Order will follow.

Robert D. Mariani
United States District Judge